No. 25-1251

_____

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

_____


UNITED STATES,

*Appellee,*

v.

SPINEFRONTIER, INC.,

*Defendant-Appellant.*


_____

On Appeal from the United States District Court
for the District of Massachusetts (Talwani, J.)

_____

**BRIEF OF DEFENDANT-APPELLANT**

_____


Robert L. Peabody (#45090)
Husch Blackwell LLP
One Congress Street, Suite 3102
Boston, MA  02108
(617) 733-1376
robert.peabody@huschblackwell.com

*Counsel for SpineFrontier, Inc.*

# TABLE OF CONTENTS

Table of Authorities ................................................................. iii

Jurisdictional Statement ............................................................ 1

Issue Presented ...................................................................... 3

Statement of the Case ............................................................... 4

    A.    The Evolving Criminal Charges ............................................ 4

    B.    The Corporate Attorney-Client Privilege Issue ...................... 6

    C.    The Interlocutory Appeal .................................................. 17

Summary of the Argument ...................................................... 17

Argument .............................................................................. 20

I.    Standard of Appellate Review ....................................... 20

II.    The District Court erred in ruling that Mr. Humad's notice of his intent to elicit evidence and make arguments at trial about corporate counsel's presence and involvement in SpineFrontier's consulting program implicitly effected a blanket waiver of the company's attorney-client privilege. ............................................... 21

    A.    As one of SpineFrontier's officers, Humad cannot unilaterally waive SpineFrontier's privilege over the company's objection and for his own personal benefit. ........................................... 21

    B.    By eliciting evidence or arguing about the presence or involvement of corporate counsel, without disclosing any confidential legal communications with counsel, Humad's defense would not impliedly waive SpineFrontier's privilege. ........................................................................... 26

    C.    A blanket waiver of SpineFrontier's privilege is not needed to avoid the potential risk that Humad's defense might mislead or confuse the jury. .......................................................... 35

Conclusion ............................................................................... 42

Certification of Compliance ...................................................... 44

Certificate of Service .............................................................. 45

Addendum .............................................................................. 46

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Any v. United States,*
    1995 U.S. App. LEXIS 4028 (1st Cir. Mar. 2, 1995)......................33

*Ap-Fonden v. GE,*
    2024 U.S. Dist. LEXIS 168886 (Sept. 18, 2024) ......................37, 44

*Cavallaro v. United States,*
    284 F.3d 236 (1st Cir. 2002)..........................................................26

*CFTC v. Weintraub,*
    471 U.S. 343 (1985) ................................................................28, 30

*Crawford v. Washington,*
    541 U.S. 36 (2004) ........................................................................28

*Davis v. Alaska,*
    415 U.S. 308 (1974) ......................................................................28

*Gamer v. Wolfinbarger,*
    430 F.2d 1093 (5th Cir. 1970) ......................................................30

*Herring v. New York,*
    422 U.S. 853 (1975) ......................................................................28

*In re Skat Tax Refund Litigation,*
    2024 U.S. Dist. LEXIS 202726 (S.D.N.Y. Nov. 6, 2024)..........37, 42

*In re Grand Jury Proceedings,*
    219 F.3d 175 (2d Cir. 2000)..........................................................30

*In re Grand Jury Proceedings,*
    469 F.3d 24 (1st Cir. 2006)......................................................28, 29

*In re Grand Jury Subpoena*,
    274 F.3d 563 (1st Cir. 2001) .................................................. 28, 30

*In re Grand Jury Subpoenas*,
    123 F.3d 695 (1st Cir. 1997) ...................................................... 7, 22

*In re Seagate Technologies, LLC*,
    497 F.3d 1360 (Fed. Cir. 2007) (*en banc*) ...................................... 27

*In re Von Bulow*,
    828 F.2d 94 (2d Cir. 1987) ............................................................ 28

*In re Winship*,
    397 U.S. 358 (1970) .............................................................. 28, 35

*Kevlik v. Goldstein*,
    724 F.2d 844 (1st Cir. 1984) ......................................................... 27

*Liss v. United States*,
    915 F.2d 287 (7th Cir. 1990) ........................................................ 33

*Murdoch v. Castro*,
    365 F.3d 699 (9th Cir. 2004) ........................................................ 45

*Perlman v. United States*,
    247 U.S. 7 (1918) ...................................................................... 7, 8

*SEC v. Present*,
    2017 U.S. Dist. LEXIS 120351 (D. Mass. July 31, 2017) ........ 36, 44

*Swidler & Berlin v. United States*,
    524 U.S. 399 (1998) .................................................................... 27

*Transamerica Computer Co., Inc. v. IBM Corp.*,
    573 F.2d 646 (9th Cir. 1978) ........................................................ 46

*United States v. Bankman-Fried*,
    2024 U.S. Dist. LEXIS 21662 (S.D.N.Y. Feb. 7, 2024) .................. 43

iv

*United States v. Batista-Polanco,*
     927 F.2d 14 (1st Cir. 1991) ........................................................... 38

*United States v. Beech-Nut Nutrition Corp.,*
     871 F.2d 1181 (2d Cir. 1989) ........................................................ 33

*United States v. Bilzerian,*
     926 F.2d 1285 (2d Cir. 1991) .................................................. 31, 33

*United States v. Gilmer,*
     534 F.3d 696 (7th Cir. 2008) ........................................................ 38

*United States v. Glantz,*
     847 F.2d 1 (1st Cir. 1988) ............................................................. 44

*United States v. Gorski,*
     36 F. Supp. 3d 256 (D. Mass. 2014) ....................................... 33, 34

*United States v. Gorski,*
     807 F.3d 451 (1st Cir. 2015) ................................................. 7, 8, 26

*United States v. Herrell,*
     2024 U.S. Dist. LEXIS 104397 (E.D. Ky. June 12, 2024) ............. 47

*United States v. Liberty,*
     2020 U.S. Dist. LEXIS 202243 (D. Me. Oct. 30, 2020) ...... 13, 39, 40

*United States v. Mix,*
     2012 U.S. Dist. LEXIS 88044 (E.D. La. June 26, 2012) .......... 47, 48

*United States v. Moore,*
     2024 U.S. Dist. LEXIS 220431 (W.D. Va. Dec. 5, 2024) ............... 47

*United States v. Munyenyezi,*
     781 F.3d 532 (1st Cir. 2015) ......................................................... 44

*United States v. Ortiz,*
     966 F.2d 707 (1st Cir. 1992) ......................................................... 38

*United States v. Pacheco*,
794 F.2d 7 (1st Cir. 1986)................................................................38

*United States v. Rainone*,
32 F.3d 1203 (7th Cir. 1994) ........................................................45

*United States v. Scheffer*,
523 U.S. 303 (1998) ......................................................................45

*United States v. Staten*,
581 F.2d 878 (D.C. Cir. 1978)........................................................38

*United States v. W.R. Grace*,
439 F. Supp. 2d 1125 (D. Mont. 2006) ....................................32, 46

*United States v. Weinstein*,
2025 U.S. Dist. LEXIS 22905 (D.N.J. Feb. 9, 2025)................37, 43

*United States v. Wells Fargo Bank N.A.*,
2015 U.S. Dist. LEXIS 84602 (S.D.N.Y. June 30, 2015) .........32, 46

*United States v. White*,
887 F.2d 267 (D.C. Cir. 1989)...................................................34, 35

*Upjohn Co. v. United States*,
449 U.S. 383 (1981) ......................................................................27

*XYZ Corp. v. United States*,
348 F.3d 16 (1st Cir. 2003)........................................... 13, 31, 33, 41

## <u>Statutes and Rules</u>

18 U.S.C. § 1001 ...............................................................................11

18 U.S.C. § 1956(h)...........................................................................10

42 U.S.C. § 1320a-7b(b)(2) ..............................................................10

Fed. R. Crim. P. 17 ...........................................................................14

# JURISDICTIONAL STATEMENT

This Court has jurisdiction over this interlocutory appeal, which arises from a discovery order in a pending criminal matter, *United States v. Chin*, No. 1:21-cr-10256-IT (D. Mass.), ADD19, A399,[1] because that order "presents a classic *Perlman* situation." *United States v. Gorski*, 807 F.3d 451, 459 (1st Cir. 2015) (citing *Perlman v. United States*, 247 U.S. 7 (1918)); *see also In re Grand Jury Subpoenas*, 123 F.3d 695, 699 (1st Cir. 1997) (adopting "the *Perlman* exception" which provides appellate jurisdiction for "those cases wherein a client seeks immediate appeal of an order compelling production of a client's records from his attorney").

Strong & Hanni PC, which has never been a party to the criminal case, served as corporate counsel to SpineFrontier, Inc., which is no longer a party to that case.[2] Strong & Hanni advised SpineFrontier about the legality of a consulting program, pursuant to which the company paid consulting fees to surgeons who evaluated existing products and

---

[1] "ADD" refers to the Addendum, and "A" refers to the Appendix.

[2] Although the caption identifies SpineFrontier as "Defendant – Appellant," the company is *not* currently a defendant in the criminal case. The government moved to dismiss all charges against SpineFrontier, A353, and the District Court allowed that motion, A355.

developed new ones. The government contends that the consulting program was a "sham" and that it was used to "bribe" doctors to utilize company products in violation of the Anti-Kickback Statute.

With permission from the District Court, the government served a subpoena on Strong & Hanni for documents concerning its confidential legal advice to SpineFrontier. In response, Strong & Hanni produced responsive documents to the District Court. SpineFrontier claims many of those documents are protected by the attorney-client privilege, and the company has not waived its privilege. Nevertheless, the District Court ordered the documents to be disclosed to the government, because Aditya Humad, the only remaining defendant in the criminal case who has pleaded not guilty, intends to elicit evidence and argue at his trial that the presence or involvement of SpineFrontier's corporate counsel in the consulting program negates the element of his *mens rea*, *i.e.*, that Humad willfully violated the AKS or conspired to do so. ADD19, A399.

SpineFrontier would be "powerless to avert the mischief of the order," if this Court could not apply the *Perlman* exception [to the final order doctrine] and take appellate jurisdiction" over this interlocutory appeal. *See Gorski*, 807 F.3d at 459 (quoting *Perlman*, 247 U.S. at 13).

## ISSUE PRESENTED

This interlocutory appeal presents an issue of first impression for this Court: whether the District Court erred in ruling that, although Appellant SpineFrontier has consistently maintained its attorney-client privilege concerning its confidential communications with corporate counsel about the legality of a consulting program that the government alleges was used to pay "bribes" to surgeons in violation of the Anti-Kickback Statute ("AKS"), the corporate privilege was impliedly waived by Aditya Humad, a corporate officer of SpineFrontier, because in his own personal defense against pending criminal charges, Humad intends to present evidence and make arguments that the presence or involvement of corporate counsel in the consulting program tends to negate his *mens rea*—that is, to rebut any proof that he willfully violated the AKS—even though Humad does not intend to disclose, or claim to have relied on, any confidential legal advice from corporate counsel.

## STATEMENT OF THE CASE

At all relevant times, SpineFrontier, Inc., was a medical device company that designed and manufactured innovative products for spine surgeries. Dr. Kingsley Chin was SpineFrontier's founder and CEO, and Mr. Humad was its CFO.

### A.     The Evolving Criminal Charges

On August 30, 2021, the grand jury returned an eight-count indictment that charged Chin, Humad, and SpineFrontier with conspiring to violate the Anti-Kickback Statute ("AKS") (18 U.S.C. § 371), violating the AKS (42 U.S.C. § 1320a-7b(b)(2)) by paying alleged "bribes" to six specific surgeons, and conspiring to commit money laundering (18 U.S.C. § 1956(h)). A51.

On January 26, 2024, Defendants moved to dismiss all charges in the indictment, A71, A92, and on July 3, 2024, the District Court allowed that motion in part, dismissing the money laundering conspiracy charge (Count 8), A322.

On January 25, 2025, the prosecution moved to dismiss specific counts of the indictment, including all remaining counts (Counts 1 through 7) against SpineFrontier. A353. It also moved to dismiss two

counts (Counts 6 and 7) against Chin and Humad, which charged them with violating the AKS by paying alleged "bribes" to two surgeons. *Id*. On January 21, 2025, the District Court allowed that motion. A355.

Then, on February 26, 2025, the prosecution moved to dismiss yet another count (Count 4), which charged Chin and Humad with violating the AKS by paying alleged "bribes" to another surgeon. A372. On March 7, 2025, the District Court allowed that motion. A402.

On April 1, 2025, the grand jury returned a four-count Superseding Indictment, charging Chin and Humad—but not SpineFrontier—with conspiring to violate the AKS (Count 1) and violating the AKS by paying alleged "bribes" to three surgeons (Counts 2 through 4). A407.

On May 15, 2025, pursuant to a plea agreement, A425, Chin entered a guilty plea to a one-count Superseding Information that charged him with making a false statement to the government (18 U.S.C. § 1001). A421. In exchange, the prosecution agreed to dismiss all other charges against Chin, including all charges that he violated the AKS or conspired with Humad (or anyone else) to do so. A425.

Humad is the only remaining defendant in the criminal case who has pleaded not guilty, and his trial is set for January 12, 2026. A431.

**B.** **The Corporate Attorney-Client Privilege Issue**

On January 26, 2024, before SpineFrontier was dismissed from the criminal case and Chin pleaded guilty to making a single false statement, the prosecution asked the District Court to find that SpineFrontier had waived the attorney-client privilege "over the subject matter of opinion letters" in which Strong & Hanni stated that the surgeon-consulting program complied with the AKS. A119. Alternatively, it asked the District Court to set a deadline for all three Defendants to advise the court whether they "will rely on advice-of-counsel or involvement-of-counsel." A136. Defendants opposed that motion. A186.

On June 7, 2024, the District Court rejected the prosecution's request for a finding that SpineFrontier had impliedly waived its corporate privilege. ADD1, A292 ("June 7, 2024 Order"). It ruled that SpineFrontier's "pre-indictment, extrajudicial disclosures" of Strong & Hanni's opinion letters—which were intended, *ab initio*, to be shared with surgeon-consultants and their own counsel—were "not themselves a sufficient basis upon which to infer waiver of the attorney-client privilege as to all communications related to the subject matter of those

Letters." ADD4, A295 (citing *XYZ Corp. v. United States*, 348 F.3d 16, 24-25 (1st Cir. 2003)).

Nevertheless, looking ahead to trial, which was then scheduled to begin on October 7, 2024, the District Court also ruled that, if Defendants "seek to argue or introduce evidence of their attorneys' involvement to negate the *mens rea* the government must prove," that "defense" might waive SpineFrontier's attorney-client privilege, and the prosecution would be "entitled to probe the communications" between SpineFrontier and Strong & Hanni. ADD5, A296 (citing *United States v. Liberty*, No. 2:19-cr-00030-GZS, 2020 U.S. Dist. LEXIS 202243, at *7-9 (D. Me. Oct. 30, 2020)); *see* ADD6, A297 (ruling that, because "Defendants have not yet confirmed their intent to introduce any such argument or . . . potential evidence at trial, . . . the government's request for immediate, broad subject-matter waiver is premature").

In so ruling, the District Court rejected any distinction between advice-of-counsel, on the one hand, and presence- or involvement-of counsel, on the other.

> Defendants argue here further that "even absent any advice of counsel, the role and presence of attorneys permit other exculpatory inferences concerning the defendants' *mens rea*." D.E. 155 at

16. To the extent that Defendants seek to draw an
exculpatory inference based only on the presence
or involvement of other persons (without regard to
their professions), there would not be a waiver of
attorney-client privilege. *See id.* at 17 (and cases
cited therein). But if Defendants point out to the
jury not only "the presence of many innocent
bystanders, but [the] many *lawyers* 'in the room,'"
*id.* (emphasis added), either the jury will be
instructed that no exculpatory inference may be
drawn from the fact that those individuals were
lawyers, or the attorney-client privilege will be
deemed waived.

ADD5-6, A296-97. In other words, the District Court ruled that

Defendants would be barred from offering any evidence or making any

arguments from the undisputed facts that many attorneys—outside and

in-house corporate counsel—were actively involved in the consulting

program and that any such "defense" would effect an implied waiver of

SpineFrontier's corporate privilege, even if Defendants did not disclose

any confidential legal communications.

"In an effort to balance the competing interests on both sides," the

District Court permitted the prosecution to serve subpoenas, pursuant to

Fed. R. Crim. P. 17, related to "SpineFrontier/IME's communications

with Strong & Hanni and its attorneys related to the subject matter of

the opinion letters" that the firm provided to the company and that the

8

company distributed to surgeon-consultants and their own counsel. ADD6, A297. The District Court ordered that (1) responsive documents from any subpoenaed parties would be returnable to the deputy clerk; (2) SpineFrontier could assert privilege claims as to any responsive documents; and (3) in that case, SpineFrontier would be required to provide a privilege log. *Id.* The District Court also ordered Defendants to provide "notice of their intent to raise an advice/involvement-of-counsel defense by September 29, 2024," *id.*, which was one week before trial was then scheduled to start on October 7, 2024.

On July 29, 2024, Chin and Humad moved for reconsideration of the District Court's June 7, 2024 Order. A299. Chin and Humad objected to the ruling that, "if Defendants point out to the jury . . . the presence of [the] many *lawyers* 'in the room,'" the District Court would "instruct the jury that 'no exculpatory inference may be drawn from the fact that those individuals were lawyers, or the attorney-client privilege will be deemed waived.'" *Id.* (quoting A186). The prosecution opposed the motion for reconsideration. A314

Meanwhile, pursuant to the June 7, 2024 Order, the prosecution served a subpoena for documents on Strong & Hanni. A334. In response,

on October 10, 2024, Strong & Hanni produced nearly 1,000 pages of documents under seal to the District Court with a privilege log. A351.

As noted above, on January 17, 2025, while the motion for reconsideration of the June 7, 2024 Order remained pending, the prosecution dismissed all charges against SpineFrontier as a defendant. A353. Then, as a non-party to the criminal case, SpineFrontier advised District Court that it had not waived, nor agreed to waive, its attorney-client privilege. A358. Rather SpineFrontier stated: "To be clear, SpineFrontier maintains its objections to any finding of waiver of SpineFrontier's privilege as a result of actions by the remaining individual defendants [*i.e.*, Chin and Humad], in the absence of any defense that reveals the contents or substance of its privileged attorney-client communications." *Id.*

On February 18, 2025, the District Court granted in part and denied in part Chin and Humad's motion for reconsideration. ADD8, A361 ("February 18, 2025 Order"). It "clarifie[d]" the June 7, 2024 Order in two respects. First, the possible waiver of SpineFrontier's privilege would only result if Chin and Humad elicited evidence or made arguments about "lawyers as to whom Defendants are asserting an

attorney-client privilege," but not "'lawyers for the surgeon-consultants at issue, who helped negotiate the consulting agreements and reviewed the structure of those relationships.'" ADD11, A364 (quoting A304); *see* ADD16, A369 ("Defendants may seek to draw an exculpatory inference based on the presence of attorneys as to whom they are not claiming an attorney-client privilege."). Second, the District Court's "warning" about waiver did not apply "[t]o the extent that lawyers' presence is being highlighted only for a purpose not related to *mens rea*." *Id.*

Otherwise, however, the District Court declined to reconsider its June 7, 2024 Order, ruling that "fairness" required a finding that Humad's or Chin's presence- or involvement-of-counsel "defense" would trigger an implied waiver of SpineFrontier's corporate privilege. ADD12, A365. The District Court expressed concern that if Chin or Humad made "reference to their own lawyers in the room, while both preserving attorney-client privilege *and* allowing the jury to draw an exculpatory inference as to *mens rea*," the jury might be misled. *Id.*; *see* ADD13, A366 (identifying "main prejudice at issue" as "very real risk" of jury confusion); *see* ADD14, A367 (discussing "risk of misleading the jury").

In addition, in its February 18, 2025 Order, the District Court rejected the argument that only SpineFrontier, as the privilege holder, could waive that privilege. ADD15, A368. Citing a Business Entity Summary from the Secretary of the Commonwealth of Massachusetts, the District Court ruled that Chin or Humad, as "controlling officers of SpineFrontier," could waive the company's privilege. *Id.*; A435. The District Court also ruled that "no case law" permitted Chin or Humad to "use the corporate form as a shield," by referring to the presence or involvement of counsel to draw an exculpatory inference as to their own *mens rea*, while SpineFrontier was asserting that communications between counsel and the company—many of which took place through Chin and Humad—were privileged. ADD15, A368.

In response to the February 18, 2025 Order, as well as the June 7, 2024 Order, Humad provided notice on March 3, 2025[3], that at trial, which was then-scheduled to start on March 17, 2025, he intended:

> to elicit evidence concerning the presence or
> involvement of SpineFrontier's counsel in the

---

[3] When trial was scheduled for October 7, 2024, the District Court ordered Defendants to provide notice of their intent to present an "advice/involvement of counsel defense" by September 29, 2024. When the trial was continued to March 17, 2025, the corresponding deadline for pretrial notice moved to March 3, 2025.

> company's consulting program, which the
> prosecution has alleged to be a "sham," and to
> argue that the presence or involvement of such
> attorneys, whom the prosecution has never
> identified as unindicted co-conspirators, tends to
> show that Mr. Humad acted in good faith—that is,
> without, any intent to violate the Anti-Kickback
> Statute or engage[] in any unlawful conduct.

A374. Humad made clear, however, that he did "not intend to disclose

any specific advice from counsel for SpineFrontier or to make arguments

about such legal advice," but "only to ask the jury to draw exculpatory

inferences about his *mens rea* from the presence or involvement of

counsel." *Id.*[4]

At the same time, Humad recognized "the attorney-client privilege

at issue belongs to SpineFrontier," not Humad himself, and that the

company was "no longer a party to this case." A375. He conceded that,

"as an individual defendant, who had no ownership interest in or

ultimate control over SpineFrontier, he cannot waive the corporate

privilege for his personal benefit." *Id.*

---

[4] As illustrative examples, Humad noted it would be "less likely" for
a corporate executive to knowingly and intentionally implement a brazen
bribery scheme in the presence of corporate counsel" or for such an
executive "[to] believe that a consulting program in which corporate
counsel was heavily involved as an unlawful sham." A374-75.

For his part, on March 3, 2025, Chin submitted a notice that stated he did "*not* intend to raise a reliance on counsel defense and did "*not* intend to rebut *mens rea* with reference to exculpatory involvement of lawyers as to whom he is asserting a privilege." A376.

On the following day, the prosecution filed a "response" to the notices from Humad and Chin. A379. Because Humad intended to elicit evidence and argue about the presence or involvement of counsel (without disclosing any advice of counsel), but Chin did not, the prosecution proposed that the District Court sever "the trial of the two defendants," proceed first with Chin and then with Humad. A381.

The District Court ordered Humad to "promptly clarify whether he intends his communications with counsel for SpineFrontier, Inc. are protected by the attorney-client privilege." A383 (electronic order). Later that day, Humad stated that "he understands his confidential communications, as a corporate officer of SpineFrontier, Inc., with counsel for SpineFrontier, Inc., are protected by SpineFrontier, Inc.'s attorney-client privilege" and that, "at trial, he does not intend to disclose any of his confidential communications with SpineFrontier, Inc.'s counsel." A385.

On March 5, 2025, the District Court issued an order addressing the issues of privilege and severance. A387 (electronic order). First, based on Humad's notice of his intent to present evidence and make arguments at trial about the presence or involvement of SpineFrontier's counsel in the company's consulting program, the District Court ruled that it "intends to allow inquiry at Humad's trial into communications between Defendant Humad and SpineFrontier's counsel and, following *in camera* review, to provide the United States with documents produced to the court by Strong & Hanni PC that constitute communications between Defendant Humad and counsel." *Id.* Second, it ordered SpineFrontier to provide any relevant authority, if the company were to claim that Humad should be barred from "raising this defense (with the resulting waiver)." *Id.* Third, it ordered Chin and Humad to respond to the prosecution's severance proposal. *Id.*

On March 6, 2026, SpineFrontier submitted its response in which it continued to maintain its objection to any finding of an "implicit waiver by Humad" of the company's privilege, noting that Humad had "stated that he does not intend to disclose any confidential advice from counsel for SpineFrontier or make arguments about such advice." A395.

SpineFrontier conceded that the company had "no right to limit Humad's effort to defend himself with non-privileged facts" and, at the same time, insisted that "Humad lacks the power/authority to reveal SpineFrontier's privilege information or to waive SpineFrontier's privilege." A396. SpineFrontier also sought the opportunity for "an immediate interlocutory appeal should the Court order a production of privilege materials." *Id.* (citing *In re Grand Jury Subpoena*, 123 F.3d 695, 698 (1st Cir. 1997)).

On March 7, 2025, the District Court issued a pretrial order that finally brought to a head the long-simmering corporate privilege issue.

> The court finds no basis to bar Humad from raising this defense [*i.e.*, to present evidence or make argument that the presence or involvement of corporate counsel negates any proof that he "willfully" violated the AKS] and, as previously explained, finds that Humad's raising of this defense *waives the privilege* as to his communications with Strong & Hanni PC. Accordingly, the documents produced by Strong & Hanni PC will be reviewed by the court *in camera*, and the communications between Humad and Strong & Hanni PC attorneys *will be produced* to the government.

ADD21, A401 ("March 7, 2025 Order") (emphases added).

### C.     The Interlocutory Appeal

To allow an immediate interlocutory appeal by SpineFrontier of the ruling that Humad's anticipated "defense" had impliedly waived the company's attorney-client privilege and the order that the company's privileged communications "will be produced to the government," the District Court stayed its March 7, 2025 Order. ADD19, A399.

On March 11, 2025, SpineFrontier noticed its appeal to this Court of the March 7, 2025 Order. A405.

After this Court issued its briefing schedule, the District Court rescheduled the trial against Humad for January 12, 2026, in the hope that this Court may be able to resolve this interlocutory appeal before that date. A431.

## SUMMARY OF THE ARGUMENT

This appeal arises from the prosecution of Aditya Humad for allegedly violating and conspiring to violate the Anti-Kickback Statute. At the relevant times, Humad was the CFO of Appellant SpineFrontier, Inc., a medical device company. The prosecution contends that SpineFrontier operated a "sham" consulting program and that Humad (along with Kingsley Chin, the CEO) used that program to "bribe"

surgeons, who allegedly provided no consulting services, to utilize SpineFrontier products. Although the prosecution initially charged SpineFrontier, it later dismissed all charges against the company.

In connection with its consulting program, SpineFrontier engaged and consulted with Strong & Hanni PC, a law firm that had expertise in compliance with the AKS. Among other legal services, Strong & Hanni provided opinion letters to SpineFrontier in which it concluded that the consulting program complied with all applicable laws, including the AKS. SpineFrontier distributed the opinion letters to prospective surgeon-consultants and their own counsel. Apart from the opinion letters themselves, all other confidential legal communications between SpineFrontier and Strong & Hanni concerning the development, operation, and legality of the company's consulting program remained confidential and protected by its attorney-client privilege.

Nevertheless, the District Court ruled that Humad impliedly waived SpineFrontier's privilege when he provided pre-trial notice of his intent to elicit evidence and make arguments about the presence and involvement of SpineFrontier's counsel in the consulting program, even though Humad made clear that he does not intend to disclose any advice

18

from or communications with Strong & Hanni. Accordingly, the District Court ordered that all privileged communications between Humad and Strong & Hanni, which the law firm produced to the Clerk in response to a Rule 17 subpoena from the government, be disclosed to the government.

For several reasons, the District Court erred in ruling that Humad impliedly waived SpineFrontier's privilege and in ordering the Clerk to disclose the company's privileged communications to the government. First, the corporate privilege belongs to SpineFrontier, and as the client, only the company can waive it. As a corporate officer, Humad cannot unilaterally waive SpineFrontier's privilege over the company's objection and for his own personal benefit—that is, to exculpate himself, not the company, from the pending criminal charges.

Moreover, by eliciting evidence or making arguments in his own defense about the presence or involvement of corporate counsel, without disclosing any communications with counsel, there can be no implied waiver. Humad does not intend to present a traditional "advice of counsel" defense, but only to rebut the element of willfulness that the government must prove to secure a conviction under the AKS. Because Humad and SpineFrontier are separate parties, with conflicting

19

interests, there is no concern that Humad's limited defense would unfairly use SpineFrontier's privilege as both "a sword and shield."

Finally, even if fairness may require the disclosure of certain privileged materials from SpineFrontier, a blanket waiver of the corporate privilege as to all communications between Humad, as SpineFrontier's officer, and SpineFrontier's counsel about the consulting program would be unnecessary and inappropriate. Like other courts that have faced similar situations, the District Court should have taken a narrower, more measured approach that respected, to the greatest extent possible, both SpineFrontier's strong interest in its attorney-client privilege and Humad's constitutional right to present his defense at trial.

## ARGUMENT

## I.    Standard of Appellate Review

In interlocutory appeals from discovery orders that implicate privilege claims, this Court reviews questions of law *de novo*, factual findings for clear error, and discretionary judgments for an abuse of discretion. *See Gorski*, 807 F.3d at 459-60 (citing *Cavallaro v. United States*, 284 F.3d 236, 245 (1st Cir. 2002)).

II. **The District Court erred in ruling that Mr. Humad's notice of his intent to elicit evidence and make arguments at trial about corporate counsel's presence or involvement in SpineFrontier's consulting program implicitly effected a blanket waiver of the company's attorney-client privilege.**

A. **As one of SpineFrontier's officers, Humad cannot unilaterally waive SpineFrontier's privilege over the company's objection and for his own personal benefit.**

The attorney-client privilege, which "applies when the client is a corporation," is "the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981); *see also Swidler & Berlin v. United States*, 524 U.S. 399, 403 (1998). It encourages "full and frank communication between attorneys and their clients and thereby promote[s] broader public interests in the observance of law and the administration of justice." *Upjohn Co.*, 449 U.S. at 389.

Because the attorney-client privilege belongs to the client, only the client may waive its protection. *See Kevlik v. Goldstein*, 724 F.2d 844, 850 (1st Cir. 1984) ("The privilege belongs to and may be waived only by the former client."); *see also In re Seagate Tech., LLC*, 497 F.3d 1360, 1372 (Fed. Cir. 2007) (*en banc*) ("[The attorney-client privilege] belongs to the client, who alone may waive it."); *In re Von Bulow*, 828 F.2d 94, 100 (2d

Cir. 1987) ("Of course, the privilege belongs solely to the client and may only be waived by him or her [or it].").

In the context of a corporation's attorney-client privilege, only the corporation's "current management" may waive the privilege. *In re Grand Jury Subpoena*, 274 F.3d 563, 571 (1st Cir. 2001) (citing *CFTC v. Weintraub*, 471 U.S. 343, 349 (1985)); *see In re Grand Jury Proceedings*, 469 F.3d 24, 26 (1st Cir. 2006) (dismissing appeal by corporate officer and holding "quite clearly, appellant, in his personal capacity, lacks standing to assert the *corporation*'s interest" (emphasis in original)). Here, the District Court erroneously characterized Humad as a "controlling officer[]," and it mistakenly assumed that, in that capacity, he could unilaterally waive SpineFrontier's privilege. ADD15, A368. He cannot and, as such, that ruling was incorrect, for several reasons.[5]

---

[5] SpineFrontier recognizes that Humad, who faces criminal charges, has certain constitutional rights, including to require proof beyond a reasonable doubt for any conviction, *see In re Winship*, 397 U.S. 358 (1970); to confront any witness that the prosecution calls or evidence that it presents, *see Crawford v. Washington*, 541 U.S. 36 (2004); to challenge the credibility of any witness, *see Davis v. Alaska*, 415 U.S. 308 (1974); to make arguments that ask the jury to draw exculpatory inferences from the evidence, *see Herring v. New York*, 422 U.S. 853 (1975); and even to testify in his own defense, *see Rock v. Arkansas*, 483 U.S. 44 (1987). Although Humad is entitled to elicit evidence and argue about the presence or involvement of corporate counsel, A396, he has no

First, in finding that Humad was a "controlling officer," the District Court relied solely on a Business Entity Summary from the Secretary of the Commonwealth that lists Humad as "Treasurer," "Secretary," and "CFO" of SpineFrontier. *Id.*; A435.[6]   Without more, however, the Business Entity Summary did not establish that, in any of his various capacities, Humad had the corporate authority to unilaterally waive SpineFrontier's privilege—or that he constituted "management" for that critical business purpose. And the District Court had no other relevant evidence before it (*e.g.*, SpineFrontier's by-laws or operating agreements).

Second, it makes no sense to say that Humad has the authority to speak for SpineFrontier on this matter, when the company has already spoken for itself through its counsel. *See In re Grand Jury Proceedings*, 469 F.3d at 26 (holding "to permit an individual corporate officer—even an individual with authority to act on behalf of the corporation—to assert the corporation's interests in his personal capacity would be to invite an intolerable conflict of interest"). Even as a "controlling officer," Humad

_____

authority to impliedly waive the corporation's privilege concerning all relevant legal advice that it solicited or received, *id*.

[6] The Business Entity Summary lists Kingsley Chin as "President" and "CEO" of the company and its only "Director." A435.

cannot unilaterally waive SpineFrontier's privilege over the company's clear objection. Here, through its counsel, SpineFrontier has repeatedly made clear that it has not waived, and will not waive, its privilege. A358 ("SpineFrontier maintains its objection to any finding of waiver of SpineFrontier's privilege as a result of actions by the remaining individual defendants."); A395-96 ("SpineFrontier's position is that . . . Humad lacks the power/authority to reveal SpineFrontier's privileged information or to waive SpineFrontier's privilege.").

Third, as to decisions about protecting or waiving a corporation's privilege, a corporation's officers are not "independent actors," because they owe fiduciary duties to the corporation, and thus, the officer's interests must "yield" to the corporation's interests. *See In re Grand Jury Subpoena*, 274 F.3d at 573 (citing *Gamer v. Wolfinbarger*, 430 F.2d 1093, 1101-04 (5th Cir. 1970)); *Weintraub*, 471 U.S. at 348-49 (holding that, with respect to corporation's attorney-client privilege, "managers, of course, must exercise the privilege in a manner consistent with their fiduciary duty to act in the best interests of the corporation and not of themselves as individuals"); *In re Grand Jury Proceedings*, 219 F.3d 175, 188 (2d Cir. 2000) (distinguishing between a corporate officer's "reference

to the attorney's advice" to exculpate the corporation "as opposed to [an] effort to exculpate himself personally").

For that reason, even if there may be extraordinary circumstances in which Humad could unilaterally waive SpineFrontier's privilege over its objection, he cannot do so here. By eliciting evidence and making arguments about the presence or involvement of SpineFrontier's counsel in the company's consulting program, Humad would serve only his own personal interests, not SpineFrontier's corporate interests. Because Humad seeks only to exculpate himself, not SpineFrontier (which the government dismissed from the case and which faces no pending criminal charges), he cannot act in his capacity as a corporate officer to waive the corporate privilege.

Finally, the familiar notion that the attorney-client privilege cannot be used as a "sword and shield," which the District Court embraced, ADD3, A294 (citing *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991)); *see also* ADD9, 15, A362, 368, does not apply here. *See XYZ Corp.*, 348 F.3d at 24 ("Implying a subject matter waiver in such a case ensures fairness because it disables litigants from using the attorney-client privilege as both a sword and a shield."). Such fairness concerns

arise in cases where the same party seeks to assert an advice-of-counsel defense and, at the same time, to maintain its attorney-client privilege. But in this case, "the sword and shield are wielded by different parties." *United States v. W.R. Grace*, 439 F. Supp. 2d 1125, 1144 (D. Mont. 2006). Because "separate parties"—SpineFrontier and Humad—are "pursuing their own interests" and have "take[n] incompatible positions," "the need to prohibit tactical behavior" by either party is absent. *Id.*; *see also United States v. Wells Fargo Bank N.A.*, No. 12-cv-7527 (JMF), 2015 U.S. Dist. LEXIS 84602, at *7 (S.D.N.Y. June 30, 2015) (following *W.R. Grace* and ruling the "sword and shield" principle has "no application" when employee asserts advice-of-counsel and company maintains attorney-client privilege).

**B.  By eliciting evidence or arguing about the presence or involvement of corporate counsel, without disclosing any confidential legal communications with counsel, Humad's defense would not impliedly waive SpineFrontier's privilege.**

As its name suggests, the "advice of counsel" defense necessarily depends on *advice* that a defendant solicited, an attorney provided, and the defendant then followed. The "thrust" of the defense is that "the defendant, on the basis of counsel's advice, believed his conduct to be

26

lawful and, thus, could not be found to have had unlawful intent." *United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1194 (2d Cir. 1989).

"When such a defense is raised," the defendant "puts the nature of [the] lawyer's *advice* squarely in issue, and, thus, *communications* embodying the subject matter of the advice typically lose protection." *XYZ Corp.*, 348 F.3d at 24 (emphases added) (citing *Bilzerian*, 926 F.2d at 1292); *see also Any v. United States*, No. 93-2281, No. 94-1340, 1995 U.S. App. LEXIS 4028, at *11-12 (1st Cir. Mar. 2, 1995)) (citing *Liss v. United States*, 915 F.2d 287, 291 (7th Cir. 1990), as stating the elements of an "advice of counsel" defense, which include that the defendant "sought the advice of [his] attorney" and "acted strictly in accordance with the advice of his attorney").

In *United States v. Gorski*, 36 F. Supp. 3d 256 (D. Mass. 2014), *aff'd in relevant part on other grounds*, 807 F.3d 451 (1st Cir. 2015), the court distinguished between the "specific, relatively narrow meaning" of the advice-of-counsel defense and the "broader, somewhat more colloquial, meaning." *Id.* at 267. In the first situation, if a defendant satisfies the "burden of production to establish a *prima facie* defense of advice of

counsel," the defendant is entitled to a jury instruction. *Id.* (citing *Any* and quoting *Liss* on the elements of an advice-of-counsel defense).

In the "second, and broader" circumstance, however, a defendant may "introduce evidence, or argue to the jury, that the advice or involvement of a lawyer tend to negate his *mens rea, even if the defendant could not establish all of the elements of the formal defense.*" *Id.* at 268 (emphasis added). Such evidence or argument, however helpful to the defense, would not entitle the defendant to a jury instruction. Whether the broader "defense" waives the attorney-client privilege "necessarily depends on the facts and circumstances of the case," focusing on "fairness" to the parties as "[t]he touchstone" of that analysis. *Id.* at 268.

In distinguishing between presenting an "advice of counsel" defense and rebutting evidence of *mens rea*, *Gorski* relied on *United States v. White*, 887 F.2d 267 (D.C. Cir. 1989) (Ginsburg, J.) (reversing fraud convictions because trial court improperly found implied waiver and admitted privileged communications), which held "acknowledgement that one's attorney was present during a conversation is not equivalent to affirmative reliance on his advice that one's action is legal." *Id.* at 270; *see id.* (explaining advice of counsel is "an assertion more positive and

28

specific than a general denial of criminal intent" because it requires "evidence of communications to and from [an attorney]"). In *White*, the court cautioned that a rule requiring waiver of the attorney-client privilege based only on evidence or argument about the presence or involvement of counsel would "cut short both" the privilege and due process. *Id.* As to the former, "[a] rule . . . forfeiting the privilege upon denial of *mens rea* would deter individuals from consulting with their lawyers to ascertain the legality of contemplated actions," which is "the animating purpose" of the attorney-client privilege. *Id.* Regarding the latter, "to be acquitted for lack of criminal intent," a defendant "need not . . . present[] any evidence" but may exercise "the constitutional right to put the government to its proof on all the elements of the offense." *Id.* (citing *In re Winship*, 397 U.S. at 364).

The critical distinction that *Gorski* drew reflects common sense. There is a significant difference between a defendant claiming, "I did not willfully break the law because I relied on what my lawyer told me," and another arguing, "I would not have willfully broken the law with my lawyer in the room." In the latter case, the defendant does not disclose what the lawyer may have said, but the jury can draw an exculpatory

inference (if it so chooses) from the relevant circumstances. *See White*, 887 F.2d at 271 ("An averment that lawyers have looked into a matter does not imply an intent to reveal the substance of the lawyers' advice.").

In *SEC v. Present*, No. 14-cv-14692-LTS, 2017 U.S. Dist. LEXIS 120351 (D. Mass. July 31, 2017), the court acknowledged that evidence of a lawyer's involvement (as opposed to advice) may be relevant to the defendant's "good faith." The SEC moved in limine to exclude certain evidence that "lawyers reviewed and approved [the company]'s advertising and marketing materials, . . . unless [the defendant] c[ould] make out the elements of an advice of counsel defense." *Id.* at *2. In response, the defendant advised the court that he did not intend to establish a traditional advice-of-counsel defense, but only to "present evidence that he engaged top counsel to ensure compliance with the legal requirements, including specifically regarding the marketing" of the company's products. *Id.* The court denied the motion, ruling "such evidence is admissible to the extent it is relevant to whether Defendant acted in good faith and/or with due care in making the alleged misrepresentation." *Id.* at *2-3; *see also id.* at *4 (ruling "such evidence is relevant to whether Defendant acted with scienter or negligence").

Other district courts have reached the same sensible conclusion and permitted defendants, in criminal and civil cases, to offer evidence of the involvement or presence of counsel. *See, e.g., United States v. Weinstein*, No. 24-cr-128 (MAS), 2025 U.S. Dist. LEXIS 22905, at \*26 (D.N.J. Feb. 9, 2025) (ruling "the presence of an attorney could be probative of [the defendant]'s state of mind without becoming a 'back-door' advice of counsel defense"); *In re Customs & Tax Admin. of the Kingdom of Denmark (Skat) Tax Refund Litig.*, No. 18-md-2865 (LAK), 2024 U.S. Dist. LEXIS 202726, at \*13-14 (S.D.N.Y. Nov. 6, 2024) (ruling "defendants are not necessarily precluded from introducing evidence or argument concerning the impact of the advice of counsel or involvement of counsel on their good faith simply because they do not satisfy each of the *Williamson* factors required of the so-called advice-of-counsel defense" and "such evidence remains subject to Rules 401 and 403"); *Ap-Fonden v. GE*, No. 17-cv-8457 (JMF), 2024 U.S. Dist. LEXIS 168886, at \*6 (Sept. 18, 2024) (denying motion to exclude "all references to counsel's involvement in disclosure decisions").

In other contexts, this Court has long held that an exculpatory inference may be drawn from the mere presence, much less the active

involvement, of an innocent third party in alleged criminal activity. Indeed, this Court has "frequently recognize[d]" that the factfinder may fairly infer . . . that it runs counter to human experience to suppose that criminal conspirators would welcome innocent nonparticipants as witnesses to their crimes." *United States v. Batista-Polanco*, 927 F.2d 14, 18 (1st Cir. 1991) (citing *United States v. Pacheco*, 794 F.2d 7, 11 (1st Cir. 1986) (noting that criminal conduct "by its nature is kept secret from outsiders")); *see United States v. Ortiz*, 966 F.2d 707, 712 (1st Cir. 1992) ("Jurors can be assumed to know that criminals rarely welcome innocent persons as witnesses to serious crimes and rarely seek to perpetrate felonies before large-than-necessary audiences."); *see also United States v. Gilmer*, 534 F.3d 696, 703-04 (7th Cir. 2008); *United States v. Staten*, 581 F.2d 878, 885 (D.C. Cir. 1978)).

That reasonable inference is even more powerful when the innocent bystander holds a position or plays a role vis-à-vis the defendant that makes his or her presence or involvement especially significant to the element of *mens rea*. For example, a reasonable jury might conclude that a person would be less likely to intentionally engage in criminal conduct under the watchful eye of a police officer, his priest, or her parent. The

same is true, in the corporate context, for a business executive who works alongside corporate counsel. Given counsel's role and responsibilities, such an attorney would be expected to recognize potential wrongdoing and report it. Thus, it strains credulity that a corporate officer, like Humad, would have willfully engaged in an unlawful kickback scheme and flouted the AKS, not only in the presence of many innocent bystanders, but with so many "lawyers in the room." At trial, Humad is entitled to elicit evidence and argue that the jury should infer that the presence or involvement of SpineFrontier's corporate counsel rebuts his *mens rea*, and his doing so would not impliedly waive SpineFrontier's privilege, so long as Humad is careful not to disclose his communications with the company's counsel or claim that he relied on their advice.

In refusing to acknowledge the difference between proof of the reliance on advice of counsel and drawing an inference from the presence or involvement of counsel, the District Court relied heavily on *United States v. Liberty*, No. 2:19-cr-00030-GZS, 2020 U.S. Dist. LEXIS 202243 (D. Me. Oct. 30, 2020), an outlier decision that does not bind this Court and which contrasts sharply with this one. The fraud indictment against Liberty charged Hess, a business partner, as a co-defendant and also

identified Marcus, an attorney, as an unindicted co-conspirator. It
alleged that Marcus played a central role in the offenses that his client,
Liberty, committed.

> In the pending Indictment, Attorney Marcus
> figures prominently as an unindicted co-
> conspirator in Counts One and Seven.
> Additionally, the IOLTA account controlled by
> Attorney Marcus and his firm play a prominent
> role in Counts Eight, Nine, and Ten. Given the
> unique factual allegations of this Indictment, the
> Court initially concludes that the Indictment itself
> provides sufficient basis for concluding that that
> Liberty intended to facilitate his alleged criminal
> activity via his communications with Marcus and
> his use of the Marcus Clegg IOLTA account during
> the time period covered by the indictment.

*Id.* at *9-10; *see also id.* at *6 (noting "the prominent role that Attorney
Marcus plays in the indictment"). In that context, it made sense for the
court to rule that Liberty could not try to hide behind the "involvement
of [his] counsel," when he had conspired with Attorney Marcus to defraud
the victims and used Attorney Marcus (and his law firm) to perpetrate
the fraudulent scheme. In contrast, here, the Superseding Indictment
does not even mention Strong & Hanni, and the prosecution has never
identified corporate counsel for SpineFrontier as an unindicted co-
conspirator of Humad, accused any attorney of wrongdoing, or sought to

apply the crime-fraud exception to any communications between Humad and corporate counsel.

### C. A blanket waiver of SpineFrontier's privilege is not needed to avoid the potential risk that Humad's defense might mislead or confuse the jury.

The District Court ruled that Humad's defense about the presence or involvement of SpineFrontier's counsel was tantamount to a traditional defense based on the advice of counsel and, as a result, required a blanket waiver of the corporate privilege. The stated concern motivating that ruling—and the March 7, 2025 Order—was the potential risk that the jury would be misled or confused by incomplete evidence or argument. ADD12, A365 ("Allowing Defendants to make such a reference to their own lawyers in the room, while both preserving attorney-client privilege *and* allowing the jury to draw an exculpatory inference as to *mens rea*, risks misleading the jury.") (emphasis in original).

As explained above, that concern was misplaced. As this Court has explained, "the likelihood of prejudice looms once a litigant puts *the legal advice given to him* at issue." *XYZ Corp.*, 348 F.3d at 24 (emphasis added). Here, however, Humad has made clear that he does not intend to

disclose confidential communications with Strong & Hanni or claim to have relied on "legal advice" that corporate counsel gave to him. A374.

Regardless, the District Court could have adequately addressed that potential jury issue—and ensured fairness to the government at trial—by adopting other procedural measures that did not involve finding an implied blanket waiver of SpineFrontier's attorney-client privilege.

As an initial matter, the District Court could have used the evidentiary rules to prevent any hypothetical danger of jury confusion. Other courts have concluded that those rules suffice for these purposes. In *Skat Tax Refund Litigation*, the court rejected an all-or-nothing approach; it ruled that "defendants are not necessarily precluded from introducing evidence or argument concerning the impact of the advice of counsel or involvement of counsel on their good faith simply because they do not satisfy each . . . factor[] required of the so-called advice-of-counsel defense." 2024 U.S. Dist. LEXIS 202726, at *14. It further explained that using Rules 401 and 403 to address such evidence at trial "has the merit of recognizing that evidence of counsel's advice or involvement might have some probative value despite not being raised in furtherance of a so-called formal advice-of-counsel 'defense' while also guarding against

the dangers of unfair prejudice and confusion that sometimes attend such evidence." *Id.*; *see also United States v. Bankman-Fried*, No. S5 22-cr-0673 (LAK), 2024 U.S. Dist. LEXIS 21662, at *6 (S.D.N.Y. Feb. 7, 2024) ("[T]he issue before the Court was not whether the defendant adduced evidence satisfying the elements of a formal advice-of-counsel defense, but rather whether the testimony he sought to give would have satisfied Rules 401 and 403."). Here, in contrast, the District Court erroneously concluded both that Humad's defense poses a risk of unfair prejudice and that the risk substantially outweighed the probative value of his evidence, which goes to the crux of the pending criminal charges—whether Humad "willfully" violated the AKS or conspired to do so.

Moreover, in addition to the evidentiary rules, the District Court had procedural tools at its disposal—other than an implied waiver of SpineFrontier's privilege—to minimize any risk that the jury might be misled or confused. *See, e.g.*, *Weinstein*, 2025 U.S. Dist. LEXIS 22905, at *26-27 (finding evidence about "the presence of an attorney is relevant" and denying the government's motion to exclude such evidence but "caution[ing] [the defendant] not to put undue focus on the attorney's presence or otherwise suggest that [the defendant] relied on counsel's

advice"); *Ap-Fonden*, 2024 U.S. Dist. LEXIS 168886, at *6 (adopting a similar nuanced approach).

For example, at trial, the District Court will undoubtedly give the standard instruction that argument is not evidence, and more to the point, it could also instruct the jury not to assume, in the absence of any evidence, what any attorney may or may not have advised Humad. That is what the court suggested in *SEC v. Present*, No. 14-cv-14692-LTS, 2017 U.S. Dist. LEXIS 120351 (D. Mass. July 31, 2017), when it refused to keep relevant evidence from the jury and expressed its confidence that "appropriate instruction will prevent undue prejudice and guide the juror's consideration of this and all other evidence." *Id.* at *3. This Court "normally assumes that juries follow instructions." *United States v. Munyenyezi*, 781 F.3d 532, 542 (1st Cir. 2015); *cf. United States v. Glantz*, 847 F.2d 1, 10 (1st Cir. 1988) (holding appropriate instructions are "one way to avoid unfair prejudice" at trial). Yet the District Court did not discuss (and may not have considered) whether appropriate jury instructions would prevent the potential for jury confusion, without finding a waiver of SpineFrontier's privilege (or limiting Humad's ability to present his defense and rebut the government's proof of *mens rea*).

Finally, even if fairness dictates the disclosure of certain privileged communications, the District Court should not have found a blanket waiver of the corporate privilege as to all communications between Humad and Strong & Hanni. In similar circumstances, rather than find broad waivers, other courts have taken more careful, measured approaches; they have ruled that depending on the actual evidence at trial and specific communications at issue, a company's privilege (like the evidentiary rules) may need to "yield" to a defendant's constitutional rights to present his or her defense. *See, e.g.*, *United States v. Scheffer*, 523 U.S. 303, 315 (1998) (holding evidentiary rules must yield to Sixth Amendment rights where those rules would "significantly undermine[] fundamental elements of the defendant's defense"); *Murdoch v. Castro*, 365 F.3d 699, 702 (9th Cir. 2004) (holding "evidentiary privileges . . . must yield if necessary to ensure the level of cross-examination to ensure the level of cross-examination demanded by the Sixth Amendment"); *United States v. Rainone*, 32 F.3d 1203, 1206 (7th Cir. 1994) ("Even the attorney-client privilege . . . hallowed as it is, yet not found in the Constitution, might have to yield in a particular case if the right of confrontation would be violated by enforcing the privilege.").

In *United States v. W.R. Grace*, 439 F. Supp. 2d 1125 (D. Mont. 2006), the court addressed a conflict between W.R. Grace, which asserted its "legitimate corporate interest" in protecting its privileged communications from disclosure, and the rights of several individual defendants, current and former employees, who wanted to use evidence of Grace's privileged communications in efforts to exculpate themselves. *Id.* at 1142. The court concluded: "the law requires that the privilege yield where its invocation is incompatible with a criminal defendant's Sixth Amendment rights." *Id.* at 1145. Nevertheless, in reaching that conclusion, it did not find that the individuals' defenses could effect a blanket waiver of the company's privilege. Instead, it ruled that, "[i]n any instance in which privileged communications are admitted [at trial]," it would "make clear that the privilege is abrogated over Grace's objection and that *the compelled trial disclosure does not constitute a blanket waiver of Grace's attorney-client . . .* privilege[]." *Id.* (emphasis added) (citing *Transamerica Computer Co., Inc. v. IBM Corp.*, 573 F.2d 646, 651 (9th Cir. 1978) (stating the generally accepted principle that "waiver cannot result from compelled production")). Other courts have adopted that same deliberate "approach," ordering limited disclosure while

avoiding any implied waiver. *United States v. Moore*, No. 5:21-cr-23, 2024 U.S. Dist. LEXIS 220431, at *12-14 (W.D. Va. Dec. 5, 2024) (following *W.R. Grace*); *United States v. Herrell*, No. 6:21-cr-00013-GFVT, 2024 U.S. Dist. LEXIS 104397, at *6-12 (E.D. Ky. June 12, 2024) (same).

Notably, in these cases, courts often use the language that corporate privileges must "yield" or "bend," or that they must be "sacrificed" or "pierced," to vindicate the constitutional rights of individual defendants. They do not talk about the implied waiver of the corporate privilege. Nor do they find that blanket waivers are necessary or appropriate to balance the conflicting interests at stake. To the contrary, most courts have gone out of their way to protect, to the greatest extent possible, the corporate privilege. In *United States v. Mix*, No. 12-cr-171, 2012 U.S. Dist. LEXIS 88044 (E.D. La. June 26, 2012), the court confronted a conflict between BP, which asserted its corporate privilege over certain evidence, and Mix, a former employee who faced charges that he had obstructed the investigation of the Deepwater Horizon oil spill. Mix argued that his communications with BP's corporate counsel would confirm that he did not act with the requisite *mens rea* ("corruptly"). The court granted in part and denied in part Mix's pre-trial motion to permit

him to introduce "exculpatory privileged information (EPI)," and in doing so, the court took various steps to maintain BP's privilege, including by ordering that "Mix's use and disclosure of the EPI does not vitiate the attorney-client privilege that the privilege holder has over the EPI and the privilege-holder shall not be considered as having waived its attorney-client privilege for the EPI or any other privileged information" and that the government "shall not use the EPI outside of its litigation with Mix" or "in any investigation or litigation against the privilege holder." *Id.* at \*9. Here, in finding that Humad's defense impliedly waived SpineFrontier's privilege, the District Court did not take any similar steps to minimize the significant prejudice to SpineFrontier, as a non-party to the criminal case.

## CONCLUSION

For the foregoing reasons, Appellant SpineFrontier, Inc., respectfully requests that this Court vacate the District Court's March 7, 2025 Order and hold that by eliciting evidence or making arguments in his pending criminal case about the presence or involvement of corporate counsel in the consulting program to rebut the element of his *mens rea*, Aditya Humad would not impliedly waive the corporate privilege.

Respectfully submitted,

**SPINEFRONTIER, INC**

By its attorney,

*/s/ Robert L. Peabody*
Robert L. Peabody (#45090)
Husch Blackwell LLP
One Congress Street, Suite 3102
Boston, MA  02108
(617) 733-1376
robert.peabody@huschblackwell.com

*Counsel for SpineFrontier, Inc.*

Dated: June 23, 2025

## CERTIFICATE OF COMPLIANCE

I, Robert L. Peabody, Esq., counsel for Defendant-Appellant SpineFrontier, Inc., certify that this Brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts exempted by Fed. R. App. 32(f), it contains 8,446 words and, also, with the type-face and type-style requirements of Fed. R. App. P. 32(a)(5)-(6), because it has been prepared in a proportionally spaced type-face using 14-point Century Schoolbook in Microsoft Word 2016.

*/s/ Robert L. Peabody*
Robert L. Peabody

## CERTIFICATE OF SERVICE

I, Robert L. Peabody, counsel for Defendant-Appellant SpineFrontier, Inc., certify that, on June 23, 2025, I caused this Brief, and the accompanying Addendum, to be served electronically through the ECF system on the registered participants as identified on the Notice of Electronic Filing.

*/s/ Robert L. Peabody*
Robert L. Peabody

# ADDENDUM

Order (June 7, 2024) ........................................................................ADD1

Order (Feb. 18, 2025) ......................................................................ADD8

Order (Mar. 7, 2025)........................................................................ADD19

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | Criminal Action No. 1:21-cr-10256-IT |
| | * | |
| KINGSLEY R. CHIN, ADITYA HUMAD, | * | |
| and SPINEFRONTIER, INC., | * | |
| | * | |
| Defendants. | * | |

MEMORANDUM & ORDER

June 7, 2024

TALWANI, D.J.

Pending before the court is the government's Motion for a Finding of Waiver of the

Attorney-Client Privilege [Doc. No. 152]. The government asserts that Defendant SpineFrontier,

Inc. ("SpineFrontier") and its affiliated entity, Impartial Medical Experts ("IME"), sent letters

they obtained from outside counsel Strong & Hanni PC to surgeon-consultants that Defendants

enrolled or sought to enroll in the alleged unlawful kickback scheme charged here. The

government contends that by representing to these doctors and others that their conduct was legal

based on advice of counsel, SpineFrontier and IME have waived the attorney-client privilege

regarding the subject matter of these letters. The government seeks an immediate finding of

waiver; in the alternative, the government requests that Defendants provide 60 days' notice of

their intent to raise an advice of counsel or involvement-of-counsel defense so that the

government can begin discovery at that point. Defendants oppose. For the reasons set forth

herein, the government's Motion is DENIED, but the court is adopting procedures set forth

below to avoid unnecessary delay or prejudice.

## I.    Background

In 2021, Defendants SpineFrontier, Kingsley Chin (SpineFrontier's founder, President, and CEO), and Aditya Humad (SpineFrontier's Vice President and CFO) were each indicted on one count of conspiracy to violate the Anti-Kickback Statute, 18 U.S.C. § 371, six counts of violations of the Anti-Kickback Statute, 42 U.S.C. §§ 1320a-7b(b)(1)(B) and (b)(2)(B), and one count of conspiracy to commit concealment money laundering, 18 U.S.C. § 1956(h). Indictment [Doc. No. 1].

The Indictment alleges that Defendants paid bribes disguised as sham consulting fees to surgeons in exchange for their use of SpineFrontier's products. Id. ¶¶ 29–30. Further, Defendants allegedly held out IME, which was owned by Chin and operated by Humad, as an independent company through which surgeons would be hired and paid as consultants. Id. ¶¶ 4, 37.

Defendants obtained opinion letters from the Strong & Hanni law firm representing that SpineFrontier and IME's consulting arrangements complied with relevant federal laws. Gov't Mem. ISO Mot. for Waiver, Ex. A [Doc. No. 153-1] (February 26, 2014 Strong & Hanni Letter written on behalf of IME); Id., Ex. B [Doc. No. 153-2] (September 26, 2013 Strong & Hanni Letter written on behalf of IME); Id., Ex. C [Doc. No. 153-3] (February 4, 2013 Strong & Hanni Letter written on behalf of SpineFrontier); Id., Ex. E [Doc. No. 153-5] (recruitment letter from IME). The letters represented that counsel had reviewed the suggested arrangement between IME and the potential surgeon-consultants, and concluded: "We are of the view that the [Consulting] Agreement, as drafted . . . complies with 42 U.S.C. 1395nn(a)(1) (i.e. the Stark Law), [and] 42 U.S.C. 1320a-7b(b) (i.e. the Anti-Kickback Statute) . . . ." The government states that these opinion letters were distributed to potential surgeon-consultants as part of the information package IME provided. See Gov't Mem. ISO Mot. for Waiver 1 [Doc. No. 153].

## II.    Standard of Review

"By safeguarding communications between client and lawyer, the [attorney-client] privilege encourages full and free discussion, better enabling the client to conform his conduct to the dictates of the law and to present legitimate claims and defenses if litigation ensues." In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.), 348 F.3d 16, 22 (1st Cir. 2003) (hereinafter "In re XYZ Corp."). This privilege is "narrowly construed" and "protects only those communications that are confidential and are made for the purpose of seeking legal advice." Id.

But "the attorney-client privilege cannot at once be used as a shield and a sword." United States v. Bilzerian, 926 F.2d 1285, 1292 (2d Cir. 1991). The privilege may be expressly or implicitly waived where "a party asserting the privilege place[s] protected information in issue for personal benefit through some affirmative act," because "allow[ing] the privilege to protect against disclosure of that information would [be] unfair to the opposing party." In re XYZ Corp., 348 F.3d at 24; see United States v. Gorski, 36 F. Supp. 3d 256, 268 (D. Mass. 2014) ("[A] defendant cannot put his attorney's advice or involvement at issue in a case and then claim a privilege as to the details of that advice or involvement.").

## III.    Discussion

### A.    *The Attorney-Client Privilege as to All Communications Relating to the Subject Matter of the Letters Has Not Yet Been Waived*

The government contends that by sending the Strong & Hanni Opinion Letters to surgeons as part of the attempt to recruit them as consultants, Defendant SpineFrontier and IME waived the Letters' confidentiality and "made representations to these doctors and to the world at large that—relying on the advice of counsel—the course of conduct was legal." Gov't Mem. ISO Mot. for Waiver 1 [Doc. No. 153]. As a result, says the government, the companies have

3

implicitly waived not only any privilege attached to the letter itself, but "over all
communications between SpineFrontier/IME and Strong & Hanni relating to the subject matter
of those letters, including communications concerning whether the consulting program complied
with the AKS[.]" Id. at 5.

But Defendants' disclosures of the Letters to third parties did not occur during this
prosecution and that matters. See In re XYZ Corp., 348 F.3d at 24–25 ("There is a qualitative
difference between offering testimony at trial or asserting an advice of counsel defense in
litigation, on the one hand, and engaging in [pre-litigation business communications], on the
other hand . . .  Where a party has not thrust a partial disclosure into ongoing litigation, fairness
concerns neither require nor permit massive breaching of the attorney-client privilege."); see also
United States v. White, 887 F.2d 267, 271 (D.C. Cir. 1989) ("Where a defendant neither reveals
substantive information, nor prejudices the government's case, nor misleads a court by relying
on an incomplete disclosure, fairness and consistency do not require the inference of waiver.").
The First Circuit has thus concluded that "the extrajudicial disclosure of attorney-client
communications, not thereafter used by the client to gain adversarial advantage in judicial
proceedings, cannot work an implied waiver of all confidential communications on the same
subject matter." In re XYZ Corp., 348 F.3d at 24.

Accordingly, the court finds that the pre-indictment, extrajudicial disclosures are not
themselves a sufficient basis upon which to infer waiver of the attorney-client privilege as to all
communications relating to the subject matter of those Letters.

B.    *The Attorney-Client Privilege as to All Communications Relating to the Subject
      Matter of the Letters May Be Waived During this Prosecution*

"[T]he likelihood of prejudice looms," however, "once a litigant puts the legal advice
given to him at issue[.]" Id. In that event, "only the revelation of all related exchanges will allow

4

the truth-seeking process to function unimpeded," id., and for this reason "the opposing party should be entitled to all the information on that same subject regardless of when it was compiled," id. at 25.

Based on the Defendants' opposition papers, it appears that Defendants may seek to argue or introduce evidence of their attorneys' involvement to negate the *mens rea* the government must prove. See Defs.' Opp'n 15–16 [Doc. No. 155]. Defendants argue that using their attorneys' involvement in this manner does not amount to an advice-of-counsel defense and waiver of the privilege. The advice-of-counsel defense "has a specific, relatively narrow meaning and a broader, somewhat more colloquial, meaning." United States v. Gorski, 36 F. Supp. 3d at 267. The court considers here the broader sense, which "arises when a criminal defendant seeks to introduce evidence, or argue to the jury, that the advice or involvement of a lawyer tended to negate his *mens rea*, even if the defendant could not establish all the elements of the formal defense." Id. at 268. Even under this "more basic lack-of-mens-rea defense[,] a defendant's decision to raise the advice or involvement of counsel may serve as a waiver of the attorney-client privilege." Id. If "Defendants propose to use the mere involvement of . . . counsel as a[n] inferential sword with respect to intent[,]" then "[t]o counter such an inference, the Government [will be] entitled to probe the communications between these attorneys and Defendant." United States v. Liberty, 2020 WL 6386388, at *3 (D. Me. Oct. 30, 2020); see also id. (rejecting defendant's attempt to "thread the needle" of invoking the presence of counsel as a *mens rea* defense without implicating waiver).[1]

---

[1] Defendants argue here further that "even absent any advice of counsel, the role and presence of attorneys permit other exculpatory inferences concerning the defendants' *mens rea*." Defs.' Opp'n 16 [Doc. No. 155]. To the extent that Defendants seek to draw an exculpatory inference based only on the presence or involvement of other persons (without regard to their professions), there would not be a waiver of attorney-client privilege. See id. at 17 (and cases cited therein).

5

To reiterate, however: Defendants have not yet confirmed their intent to introduce any such argument or the above-cited potential evidence at trial. Therefore, the government's request for immediate, broad subject-matter waiver is premature. See id.; see also in re XYZ Corp., 348 F.3d at 25 ("a prospective waiver will very rarely be warranted in extrajudicial disclosure cases").

C.    *Avoiding Prejudice from Late Disclosure*

The government asks in the alternative that Defendants be ordered to provide 60 days' notice of Defendants' plan to raise an advice/involvement-of-counsel argument. Defendants concede that the court has authority to impose notice and disclosure requirements but asserts that there is no compelling reason for the 60-day pretrial notice, and that they should be afforded the right to determine whether to present a defense only after the government rests. Defs.' Opp'n 14 [Doc. No. 155] (citing Brooks v. Tennessee, 406 U.S. 605, 612 (1972) (due process prohibits forcing defendants' hands regarding "tactical decision[s]" based on "the actual worth of their evidence")).

In an effort to balance the competing interests on both sides, the court will permit the government to serve subpoenas pursuant to Federal Rule of Criminal Procedure 17 related to SpineFrontier/IME's communications with Strong & Hanni and its attorneys related to the subject matter of the opinion letters. The Defendants or subpoenaed party may assert the attorney-client or work product privilege but shall provide counsel a privilege log identifying each document for which a privilege is asserted. Responsive documents shall be returnable to the

---

But if Defendants point out to the jury not only "the presence of many innocent bystanders, but [the] many lawyers 'in the room,'" id. (emphasis added), either the jury will be instructed that no exculpatory inference may be drawn from the fact that those individuals were lawyers, or the attorney-client privilege will be deemed waived.

deputy clerk for this session, with those as to which a privilege is asserted (submitted under seal) and will be maintained under seal pending further court order.

Defendants shall provide notice of their intent to raise an advice/involvement-of-counsel defense by September 29, 2024, that is, at the time of their other disclosures under the court's Amended Pretrial Order [Doc. No. 167]. The court anticipates that if Defendants invoke an advice/involvement-of-counsel defense at that time (or during the course of trial), the court will refer review of the sealed documents produced in response to any such subpoena to the magistrate judge assigned to this matter for *in camera* review, unseal those documents relating to the subject matter of the Letters, and order them produced to the government.

## IV.    Conclusion

For the foregoing reasons, the government's Motion for a Finding of Waiver of the Attorney-Client Privilege is DENIED. The government and Defendants shall follow the procedures set forth above.

IT IS SO ORDERED

June 7, 2024                                                    /s/      Indira Talwani
                                                                        United States District Judge

ADD7

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA　　　　　*
　　　　　　　　　　　　　　　　　　　*
　　　　　　　v.　　　　　　　　　　　*
　　　　　　　　　　　　　　　　　　　*
KINGSLEY R. CHIN and ADITYA　　　　*　　Criminal Action No. 1:21-cr-10256-IT
HUMAD,　　　　　　　　　　　　　　*
　　　　　　　　　　　　　　　　　　　*
　　　　　Defendants.　　　　　　　　*

MEMORANDUM & ORDER

February 18, 2025

TALWANI, D.J.

　　　　Pending before the court is Defendants Kingsley Chin and Aditya Humad's Motion to

Reconsider the Court's June 7, 2024 Order Re: Attorney-Client Privilege and Potential Trial

Defenses ("Motion for Reconsideration") [Doc. No. 191]. For the following reasons, the Motion

for Reconsideration is GRANTED in part and DENIED in part.

**I.　　　　Background**

　　　　In the underlying Motion for a Finding of Waiver of the Attorney-Client Privilege [Doc.

No. 152], the government sought an immediate finding that SpineFrontier, Inc.

("SpineFrontier"),[1] and its affiliated entity Impartial Medical Experts ("IME"), had waived the

attorney-client privilege as to the subject matter of opinion letters that SpineFrontier and IME

obtained from an outside law firm, Strong & Hanni. In the alternative, the government sought an

order requiring Defendants to provide 60 days' notice of their decision to raise the advice or

---

[1] SpineFrontier was named in the Indictment [Doc. No. 1] and was still a defendant when the
government filed the underlying Motion [Doc. No. 152] and Defendants filed the instant Motion
for Reconsideration [Doc. No. 191]. The government has recently dismissed the charges against
SpineFrontier. See Gov't Mot. to Dismiss [Doc. No. 225]; Elec. Order [Doc. No. 226].

involvement of counsel as a defense. See Gov't Mem. ISO Mot. for Waiver at 1-2 [Doc. No. 153].

In the June 7, 2024 Memorandum and Order [Doc. No. 179] denying both requests, the court explained that the Defendants' pre-indictment, extrajudicial disclosures of opinion letters from counsel were not a sufficient basis for inferring a waiver of privilege as to communications regarding the subject matter of those letters and that Defendants had not yet made the opinion letters an issue in this ongoing litigation. See Mem. & Order at 4 [Doc. No 179]. The court recognized, however, that Defendants' argument or introduction of evidence of their attorneys' involvement to negate the *mens rea* the government must prove might provide a sufficient basis for inferring a waiver of privilege. Accordingly, although the court declined to require Defendants to give early notice of their decision to raise an advice- or involvement-of-counsel defense, see id. at 6, the court cautioned Defendants that introducing evidence of their attorneys' involvement to raise an exculpatory inference as to Defendants' *mens rea* could serve as a waiver of attorney-client privilege, as defendants are not permitted to use privilege as both a shield and a sword by placing protected information in issue for the defendants' benefit while nevertheless seeking protection of the privilege. See id. at 3-5.

In the context of that warning, the court addressed Defendants' specific suggestion that they might use the role and presence of their own lawyers, including SpineFrontier's General Counsel, Associate General Counsel, and outside counsel, see Defs.' Opp'n at 15-16 [Doc. No. 155], to raise an exculpatory inference as to *mens rea*:

> To the extent that Defendants seek to draw an exculpatory inference based only on the presence or involvement of other persons (without regard to their professions), there would not be a waiver of attorney-client privilege. See id. at 17 (and cases cited therein). But if Defendants point out to the jury not only "the presence of many innocent bystanders, but [the] many lawyers 'in the room,'" id. (emphasis added), either the jury will be instructed that no exculpatory inference

2

<u>may be drawn from the fact that those individuals were lawyers, or the attorney-client privilege will be deemed waived</u>.

<u>See</u> Mem. & Order at 5 n.1 [Doc. No. 179] (emphasis added).

Though the court denied the government's request that Defendants be ordered to provide 60 days' pretrial notice of an intent to raise an advice- or involvement-of-counsel argument, <u>see id.</u> at 6, in an effort to balance the interests of the parties, the court ordered that the government would be permitted to serve subpoenas concerning SpineFrontier/IME's communications with Strong & Hanni and its attorneys related to the subject matter of the opinion letters, that Defendants or the subpoenaed party would be permitted to assert privilege but would be required to provide counsel a privilege log, and that responsive documents would be returnable to the deputy clerk for this session, with those allegedly privileged documents to be maintained under seal pending further court order, <u>see id.</u> at 6-7. The court ordered that if Defendants provided notice of their intent to raise an advice/involvement-of-counsel defense at the time their other disclosures were due, or during the course of trial, the court would refer review of any sealed documents to the magistrate judge for *in camera* review, unseal documents relating to the subject matter of the letters, and order them produced to the government. <u>See id.</u> at 7.

In their pending <u>Motion for Reconsideration</u> [Doc. No. 191], Defendants seek reconsideration of the statement regarding "lawyers in the room" quoted above. Defendants argue that: (1) pointing to a lawyers' presence at an alleged crime scene and suggesting an exculpatory inference does not waive attorney-client privilege; and (2) SpineFrontier controls the relevant privilege and thus Chin and Humad cannot waive this privilege or compel SpineFrontier to forfeit the privilege. Defendants also object that the procedures suggested by this court for resolving privilege issues are impracticable.

## II.    Standard of Review

"[M]otions for reconsideration are appropriate only in a limited number of circumstances: if the moving party presents newly discovered evidence, if there has been an intervening change in the law, or if the movant can demonstrate that the original decision was based on a manifest error of law or was clearly unjust." United States v. Allen, 573 F.3d 42, 53 (1st Cir. 2009) (citing Marie v. Allied Home Mortgage Corp., 402 F.3d 1, 7 n. 2 (1st Cir. 2005)). Pointing to no newly discovered evidence or intervening change in the law, Defendants argue only that the interests of justice warrant reconsideration of this court's decision. See Mot. for Reconsideration at 2 [Doc. No. 191].

## III.    Discussion

A.    *The Court's Warning Does Not Apply to References to Lawyers Whose Communications with Defendants Are Not Protected by the Attorney-Client Privilege and Is Directed to References Made to Rebut* Mens Rea*.*

Defendants point out that the lawyers "in the room" include "lawyers for the surgeon-consultants at issue, who helped negotiate the consulting agreements and reviewed the structure of those relationships." See Mot. for Reconsideration at 5 [Doc. No. 191]. If Defendants are not claiming that their communications with those lawyers are protected by the attorney-client privilege, there is no concern about misleading the jury by incomplete evidence (and no attorney-client privilege to waive). To avoid any confusion here, the court clarifies that its earlier statement only concerns lawyers as to whom Defendants are asserting an attorney-client privilege.

The court's reference to pointing to lawyers "in the room" was also made in a specific context, namely, where Defendants are pointing to the lawyers to rebut *mens rea.* To the extent that lawyers' presence is being highlighted only for a purpose not related to *mens rea*, the warning does not apply.

B.  *Defendants' Request to Use "Lawyers in the Room" to Rebut Mens Rea*

Whether a Defendants' reference to the advice of or involvement with counsel triggers a waiver of attorney-client privilege depends on the facts and circumstances of each case. The basic touchstone for making that determination is fairness. See United States v. Gorski, 36 F. Supp. 3d 256, 268 (D. Mass. 2014).

Defendants argue that a person would not have engaged in "a brazen bribery scheme with lawyers watching, for the same common-sense reason that a person would be less likely to commit a serious crime in the presence of his mother, minister, or member of law enforcement, regardless of whether the person ever discussed his conduct with any bystander, much less solicited advice about it." See Mot. for Reconsideration at 7 [Doc. No. 191]. As this court previously stated, Defendants are free to refer to the presence of other individuals in the room, without regard to their professions, without waiving privilege. And as the court has clarified, Defendants may also refer to the presence of lawyers with whom they are not asserting an attorney-client relationship, as there is no privilege to waive.

But Defendants wish to go further and refer to the presence of their own lawyers in the room while protecting their prior communications with the same lawyers. In Defendants' construct, the jury would be free to draw an inference that Defendants' lawyers sanctioned the conduct, thereby negating the necessary *mens rea*, without the government being permitted to ask those lawyers whether the lawyers' approval was based on a full disclosure of the facts by their clients. Allowing Defendants to make such a reference to their own lawyers in the room, while both preserving attorney-client privilege *and* allowing the jury to draw an exculpatory inference as to *mens rea*, risks misleading the jury.

In their Motion for Reconsideration, Defendants again argue that the presence of counsel could be exculpatory as to *mens rea* because "lay people [on a jury] would naturally expect that a

5

lawyer would be more likely to spot potential legal misconduct and may be more inclined to stop it or report it." Id. But this argument does not address the main prejudice at issue—that without permitting cross-examination about the communications between the Defendants and those lawyers, there is a very real risk that the jury will make exactly the inference Defendants request, when the true facts may be that the lawyers' failure to spot potential misconduct was the result of inaccurate or incomplete information provided by the Defendants to the lawyers or of some similar reason.

Neither side has cited binding authority addressing this issue. Defendants rely on United States v. White, in which the D.C. Circuit held that a criminal defendant's attorney-client privilege could not be waived by defending on the ground of lack of criminal intent. 887 F.2d 267, 270 (D.C. Cir. 1989). The court in White was rightly concerned by the district court's suggestion that a criminal defendant could be found to waive privilege merely by "put[ting] the government to its proof on" *mens rea*. Id. Noting that White "mentioned that [his attorney] and others were present [at a meeting with White's co-defendant]," the D.C. Circuit stated that "acknowledgement that one's attorney was present during a conversation is not equivalent to affirmative reliance on his advice that one's action is legal." Id. The court also noted, however, that White "carefully refrained from relying on any statements of counsel"; instead, his defense was that he believed the arrangement was legal because his co-defendant claimed to have obtained permission from his superiors to engage in the transaction. Id.

Thus, unlike Defendants here, White was not seeking to use the lawyer's presence to draw an exculpatory inference as to *mens rea* or, more specifically, to show that a "lawyer would be more likely to spot potential legal misconduct and may be more inclined to stop it or report it." If Defendants make such a suggestion, then depending on the exact circumstances, the

6

government should be able to inquire into potentially inculpatory attorney-client communications or, at a minimum, the court will instruct the jury that no exculpatory inference may be drawn from the fact that those individuals were lawyers.

The district court in <u>White</u> had also concluded that a co-defendant's introduction of a non-privileged communication at a morning meeting "opened the door" to the introduction of privileged communications between the attorney and White that took place later that afternoon. <u>Id.</u> at 269. The Court of Appeals rejected that suggestion, explaining that "[t]he prosecution may not gain, through the device of a joint trial, admission against one defendant of otherwise inadmissible evidence on the happenstance that the door to admitting the evidence has been opened by a co-defendant." <u>Id.</u> at 270. But the Court of Appeals did not endorse the view endorsed by Defendants, namely, that evidence of a lawyer's presence or involvement should be permitted even at the risk of misleading the jury. Instead, the Court of Appeals instructed that "[i]f the district court believed that the evidence of the morning conversation, while crucial to [the co-defendant's] defense, would mislead the jury in White's favor unless clarified by the later conversation, the court should have severed the trials." <u>Id.</u> at 270. Here, Chin and Humad have not suggested that their defenses or claims of attorney-client privilege would differ, such that severance of the trial would be appropriate, or that the evidence that they seek to introduce is so crucial that the court should allow it in without a waiver of the privilege, despite the potential misleading of the jury.[2]

_____

[2] This court is similarly unpersuaded by Defendants' reliance on <u>United States v. Gasparik</u>, 141 F. Supp. 2d 361 (S.D.N.Y. 2001). In <u>Gasparik</u>, the court held that a criminal defendant had not waived attorney-client privilege by averring in his opening statement that he wanted to be "guided by his attorney" and "do things legally." <u>Gasparik</u>, 141 F. Supp. 2d at 371. But the court found no waiver of the attorney-client privilege where Gasparik's attorney had not referenced a particular conversation with the counsel and had only made a general statement. Here, depending

7

C.       *Defendants' Claim that Only SpineFrontier May Waive the Privilege*

Defendants further argue that Chin and Humad cannot waive the attorney-client privilege as to communications with corporate counsel because SpineFrontier controls that privilege. <u>See</u> Mot. for Reconsideration at 8 [Doc. No. 191]. Defendants cite numerous cases stating that "[t]he privilege belongs solely to the client," <u>see id.</u> at 8, but such cases speak only to the fact that the client, <u>rather than the attorney</u>, can waive attorney-client privilege. The issue they do not address is whether the controlling officers of SpineFrontier, Defendants Chin and Humad,[3] can waive that privilege. Defendants seem to be suggesting that they should be permitted to refer to the presence of counsel to draw an exculpatory inference as to Chin's and Humad's *mens rea*, even as SpineFrontier continues to assert that communications between such counsel and SpineFrontier—many of which possibly took place through Chin and Humad—are privileged. Defendants cite no case law that would justify allowing Defendants Chin and Humad to use the corporate form as a shield in this way.

D.       *Defendants' Claim That the Procedures Ordered by the Court Are Unfair or Unworkable*

Defendants argue that preventing them from addressing the presence of lawyers in the room unless they waive privilege would cause confusion and delay. <u>See</u> Mot. for Reconsideration at 10 [Doc. No. 191]. Defendants argue that the jury will "inevitably" hear

---

on what is said, the court may similarly find a stray remark in an opening statement does not warrant a waiver of the attorney-client privilege. But Defendants' attempt to use the attorneys' presence as a sword without inquiry into those attorney-client communications will not be permitted.

[3] <u>See</u> Business Entity Summary for SpineFrontier, Inc., Secretary of the Commonwealth of Massachusetts, https://corp.sec.state.ma.us/CorpWeb/CorpSearch/CorpSummary.aspx?sysvalue=1i0C1SLmAxQ ef.oN4xaQpymXZOqemp5qGELFEGiPSig- (last accessed February 14, 2025).

8

about "the extensive involvement of legal counsel and compliance officers in the consulting program," which Defendants argue makes it unfair and unworkable for Defendants' attorney-client privilege to be waived if Defendants point out to the jury that "lawyers or compliance personnel participated in the activities[.]" Id.[4]

As a preliminary matter, Defendants' argument misconstrues what the court ordered; Defendants may reference attorneys in the room so long as Defendants do not seek to draw an exculpatory inference based only on their lawyers' presence or involvement. And as the court has now clarified, Defendants may seek to draw an exculpatory inference based on the presence of attorneys as to whom they are not claiming an attorney-client relationship. But as to those attorneys with whom they are claiming a privilege, the court will either instruct the jury that it may not draw an exculpatory inference from their presence, or deem the privilege waived.

Regardless, Defendants' argument about unworkability fails. Defendants state that "[p]resumably, at trial, the prosecution will seek to introduce" letters that Defendants allegedly obtained from the Strong & Hanni law firm concerning the legality of the consulting agreements with surgeons, see id., which the government previously argued the Defendants used "as a means to provide a veneer of legitimacy to their illegal kickback scheme." See Gov't Mem. ISO Mot. for Waiver at 1 [Doc. No. 153]. But the government's introduction of these letters would not waive Defendants' privilege and would not preclude Defendants from addressing these letters for purposes other than *mens rea*. The court addressed instead the possibility that "Defendants may seek to argue or introduce evidence of their attorneys' involvement to negate the *mens rea* the government must prove." See Mem. & Order at 5 [Doc. No. 179] (emphasis added). The court's

----

[4] Defendants have not elaborated on what privilege they contend applies regarding "compliance personnel" who are not attorneys.

caution to the Defendants was that they may waive the privilege or an instruction may be required if <u>Defendants</u> seek to use their attorneys' involvement to negate Defendants' *mens rea*. <u>See</u> <u>id.</u> at 4-6.

Defendants also point to Lesley Olson, former Associate General Counsel of SpineFrontier, whom the government interviewed as part of the investigation and who Defendants state "engaged in exculpatory non-privileged activity" related to, for instance, SpineFrontier's Sunshine Act disclosures. <u>See</u> Mot. for Reconsideration at 11-12 [Doc. No. 191]. Defendants leave ambiguous whether Defendants expect the government to introduce evidence of Olson's involvement or whether Defendants may do so themselves. Again, however, introduction of her non-privileged activity would not require a waiver of privilege or instruction to the jury unless Defendants are using her actions as a lawyer for the company to negate *mens rea* while simultaneously asserting a privilege as to the communications informing those activities.[5]

### IV.    Conclusion

For the foregoing reasons, Defendant's <u>Motion to Reconsider the Court's June 7, 2024 Order Re: Attorney-Client Privilege and Potential Trial Defenses</u> [Doc. No. 191] is GRANTED in part and DENIED in part. The court has clarified that its warning does not concern lawyers as to whom the Defendants are not asserting an attorney-client privilege, and that the warning concerns Defendants' references to lawyers for the purpose of rebutting *mens rea*. If Defendants

---

[5] Defendants also raised concerns that the government had not yet subpoenaed certain communications. <u>See</u> Mot. for Reconsideration at 2-3 [Doc. No. 191]. As set forth in an October 10, 2024 letter copied to counsel, Strong & Hanni has responded to the government's subpoena and sent documents to the court, <u>see</u> Strong & Hanni and Peter J. Baxter's Response to Subpoena [Doc. No. 222], where they remain under seal.

ADD17

point out to the jury the presence of lawyers "in the room" to draw such an exculpatory inference then, depending on the circumstances, either the jury will be instructed that no exculpatory inference may be drawn as to Defendants' *mens rea* from the fact that those individuals were lawyers, or the attorney-client privilege will be deemed waived.

IT IS SO ORDERED.

February 18, 2025                         /s/ Indira Talwani
                                          United States District Judge

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | |
| | * | Criminal Action No. 1:21-cr-10256-IT |
| ADITYA HUMAD, | * | |
| | * | |
| Defendant. | * | |

MEMORANDUM & ORDER

March 7, 2025

TALWANI, D.J.

Defendant Aditya Humad is charged with multiple violations of the federal Anti-Kickback statute, 42 U.S.C. § 1320a-7b(b)(2), and with conspiracy to violate that statute, in violation of 18 U.S.C. § 371. The government previously argued that Humad and his co-Defendants, including SpineFrontier, Inc. ("SpineFrontier"), waived the attorney-client privilege by sending letters they obtained from outside counsel Strong & Hanni PC to surgeon-consultants that Defendants enrolled or sought to enroll in the alleged unlawful kickback scheme charged here. See Gov't Mot. for a Finding of Waiver of the Attorney-Client Privilege [Doc. No. 152]. The court found that the pre-indictment, extrajudicial disclosures were not themselves a sufficient basis upon which to infer waiver of the attorney-client privilege as to all communications relating to the subject matter of those letters, but that the attorney-client privilege might be waived by Defendants seeking to argue or introduce evidence at trial of their attorneys' involvement to negate the *mens rea* the government must prove. See Mem. & Order 4-5 [Doc. No. 179]. To avoid prejudice from a late disclosure, the court permitted the government to serve subpoenas on Strong & Hanni related to the subject matter of the opinion letters, with responsive documents returnable to the court under seal pending further court order. Id. at 6. As

set forth in an October 10, 2024 letter copied to counsel, Strong & Hanni responded to the

government's subpoena and sent documents to the court, see Strong & Hanni and Peter J.

Baxter's Response to Subpoena [Doc. No. 222], where they remain under seal.

Humad and his co-Defendants[1] filed a Motion to Reconsider the Court's June 7, 2024

Order Re: Attorney-Client Privilege and Potential Trial Defenses ("Motion for Reconsideration")

[Doc. No. 191], which the court granted in part and denied in part:

> The court has clarified that its warning does not concern lawyers as to whom the
> Defendants are not asserting an attorney-client privilege, and that the warning
> concerns Defendants' references to lawyers for the purpose of rebutting *mens rea*.
> If Defendants point out to the jury the presence of lawyers "in the room" to draw
> such an exculpatory inference then, depending on the circumstances, either the
> jury will be instructed that no exculpatory inference may be drawn as to
> Defendants' *mens rea* from the fact that those individuals were lawyers, or the
> attorney-client privilege will be deemed waived.

Mem. & Order at 11 [Doc. No. 247].

On March 3, 2025, Humad filed a notice with this court stating that he "intends to elicit

evidence concerning the presence or involvement of SpineFrontier's counsel in the company's

consulting program . . . and to argue that the presence or involvement of such attorneys . . . tends

to show that Mr. Humad acted in good faith—that is, without any intent to violate the Anti-

Kickback Statute or engaged in any unlawful conduct." Humad's Notice at 1 [Doc. No. 277].

After this court sought clarification, Humad filed a subsequent notice, on March 4, stating that he

understands his confidential communications, as a corporate officer of SpineFrontier, to be

protected by SpineFrontier's attorney-client privilege. See Notice at 1 [Doc. No. 283]. The

---

[1] SpineFrontier was still a defendant when Defendants filed the Motion for Reconsideration
[Doc. No. 191]. The government has since dismissed the charges against SpineFrontier. See
Gov't Mot. to Dismiss [Doc. No. 225]; Elec. Order [Doc. No. 226].

government responded requesting, *inter alia*, that the court provide the government with the documents produced by SpineFrontier's counsel. <u>See</u> Gov't Response at 3 [Doc. No. 281].

On review of these filings, the court advised the parties that it intended to allow inquiry at Humad's trial into communications between Humad and SpineFrontier's counsel and that, following *in camera* review, the court would provide the United States with documents produced by Strong & Hanni PC that constitute communications between Defendant Humad and counsel. <u>See</u> Elec. Order [Doc. No. 290]. The court also provided notice to SpineFrontier that "[t]o the extent that SpineFrontier claims that Humad is barred from raising this defense (with the resultant waiver), it shall . . . provide any authority for that position." <u>Id.</u> On March 6, SpineFrontier filed a <u>Response</u> objecting to the court's finding of waiver by Humad. <u>See</u> SpineFrontier Response [Doc. No. 296].

The court finds no basis to bar Humad from raising this defense and, as previously explained, finds that Humad's raising of this defense waives the privilege as to his communications with Strong & Hanni PC. Accordingly, the documents produced by Strong & Hanni PC will be reviewed by the court *in camera*, and the communications between Humad and Strong & Hanni PC attorneys will be produced to the government.

SpineFrontier's <u>Response</u> stated that it sought to preserve its objections to allow an immediate interlocutory appeal "should the Court order a production of privileged materials." <u>Id.</u> at 2. Accordingly, to accommodate review of the privilege issue, this order is stayed to allow SpineFrontier's "immediate interlocutory appeal." <u>Id.</u>

IT IS SO ORDERED.

March 7, 2025                                    /s/ Indira Talwani
                                                        United States District Judge

3