No. 25-1251

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

————————

UNITED STATES OF AMERICA,
APPELLEE

v.

SPINEFRONTIER, INC.,
INTERESTED PARTY – APPELLANT

ADITYA HUMAD,
DEFENDANT

————————

ON APPEAL FROM AN INTERLOCUTORY ORDER
ENTERED IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

————————

BRIEF FOR THE UNITED STATES

————————

LEAH B. FOLEY
UNITED STATES ATTORNEY

KAREN L. EISENSTADT
ASSISTANT U.S. ATTORNEY
JOHN JOSEPH MOAKLEY U.S. COURTHOUSE
1 COURTHOUSE WAY
SUITE 9200
BOSTON, MASSACHUSETTS 02210
(617) 748-3412

# **<u>TABLE OF CONTENTS</u>**

TABLE OF AUTHORITIES ...................................................................... iii

STATEMENT OF JURISDICTION........................................................1

STATEMENT OF THE ISSUE...............................................................1

STATEMENT OF THE CASE.................................................................2

     A.    Offense Allegations.............................................................2

     B.    Relevant Procedural History ................................................4

          1.    The Government's Motion Regarding the Involvement-of-Counsel Defense and Waiver of the Attorney-Client Privilege .......................................................................4

          2.    Chin and Humad's Motion for Reconsideration and the Court's February 18 Order.........................................5

          3.    Chin and Humad's Notices of their Intended Defenses at Trial and the Government's Response.........................7

          4.    The Court's Ruling that Humad's Involvement-of-Counsel Defense Requires a Waiver (the "March 5 Fairness Order")...................................................9

          5.    The Court's Ruling that Humad Has the Ability to Waive SpineFrontier's Privilege (the "March 7 Discovery Order") .......................................................................9

          6.    The Last-Minute Severance of Chin and Humad's Trials and Chin's Failed Attempt to Join this Appeal.........................10

SUMMARY OF ARGUMENT ...............................................................11

ARGUMENT ........................................................................................11

i

I.   The District Court Did Not Abuse Its Discretion In Entering the Discovery Order..................................................................................11

    A.   Standard of Review ..............................................................12

    B.   Legal Framework: The Attorney-Client Privilege .............................12

    C.   The March 5 Fairness Order Was Not an Abuse of Discretion ..........15

        1.   SpineFrontier Has Not Met Its Burden of Establishing the Court's Jurisdiction Over the March 5 Fairness Order.............15

        2.   The March 5 Fairness Order Correctly Found that Humad's Involvement-of-Counsel Defense Requires a Waiver ....................................................................................19

    D.   The March 7 Discovery Order Was Not an Abuse of Discretion .......29

        1.   The March 7 Discovery Order Correctly Found that Humad, as a Controlling Officer, Has the Ability to Waive SpineFrontier's Privilege ........................................................29

        2.   Should the Court Disagree with the Above, It May Affirm the Order on the Alternative Ground that Humad's Right to Present a Defense Supersedes SpineFrontier's Privilege .........38

CONCLUSION.....................................................................................45

CERTIFICATE OF COMPLIANCE......................................................46

CERTIFICATE OF SERVICE ..............................................................47

# TABLE OF AUTHORITIES

## CASES

*Ap-Fonden v. GE*,
No. 17-CV-8457, 2024 U.S. Dist. LEXIS 168886 (S.D.N.Y. Sep. 18, 2024) ....24

*Bittaker v. Woodford*,
331 F.3d 715 (9th Cir. 2003) .................................................................23

*Caribbean Mgmt. Grp., Inc. v. Erikon LLC*,
966 F.3d 35 (1st Cir. 2020)...................................................................19

*Cohen v. Beneficial Industrial Loan Corp.*,
337 U.S. 541 (1949).............................................................................17

*Commodity Futures Trading Comm'n v. Weintraub*,
471 U.S. 343 (1985)........................................................... 14-15, 32, 36

*F.D.I.C. v. Ogden Corp.*,
202 F.3d 454 (1st Cir. 2000).................................................. 13, 17-18

*Fisher v. United States,*
425 U.S. 391 (1976)..............................................................................13

*Gonpo v. Sonam's Stonewalls & Art, LLC*,
41 F.4th 1 (1st Cir. 2022) ....................................................................18

*Gonzalez v. Thaler*,
565 U.S. 134 (2012)..............................................................................15

*Green Earth Energy Photovoltaic Corp. v. KeyBank Nat'l Ass'n*,
51 F.4th 383 (1st Cir. 2022).................................................................15

*Holmes v. South Carolina*,
547 U.S. 319 (2006).............................................................................39

*In re Cnty. of Erie*,
546 F.3d 222 (2d Cir. 2008)................................................................23

*In re Customs & Tax Admin. of the Kingdom of Denmark (Skat) Tax Refund Litig.*,
18-md-2865, 2024 U.S. Dist. LEXIS 202726 (S.D.N.Y. Nov. 6, 2024).............24

*In re Grand Jury 2021 Subpoenas*,
    87 F.4th 229 (4th Cir. 2023) ................................................................18

*In Re Grand Jury Proc.*,
    219 F.3d 175 (2d Cir. 2000) ....................................................... *passim*

*In re Grand Jury Proc.*,
    469 F.3d 24 (1st Cir. 2006).................................................................36

*In re Grand Jury Subpoena (Newparent, Inc.)*,
    274 F.3d 563 (1st Cir. 2001)................................................... 6, 12, 36

*In re Keeper of the Records (Grand Jury Subpoena Addressed to* XYZ Corp.*)*,
    348 F.3d 16 (1st Cir. 2003)......................................................... *passim*

*Moskowitz v. Lopp*,
    128 F.R.D. 624 (E.D. Pa. 1989)..........................................................30

*Murdoch v. Castro*,
    365 F.3d 699 (9th Cir. 2004), *vacated and decided en banc on different
    grounds*, 609 F.3d 983 (9th Cir. 2010) ........................................ 41-42

*Murdoch v. Castro*,
    609 F.3d 983 (9th Cir. 2010) (en banc) .............................................39

*Newton v. Kemna*,
    354 F.3d 776 (8th Cir. 2004) ..............................................................39

*Perlman v. United States*,
    247 U.S. 7 (1918)................................................................... 1, 15-18

*Ross v. City of Memphis*,
    423 F.3d 596 (6th Cir. 2005) ..............................................................42

*S.E.C. v. Mapp*,
    No. 4:16-CV-00246, 2017 WL 8780604 (E.D. Tex. Dec. 4, 2017) ...................22

*S.E.C. v. Present*,
    Civ. No. 14-14692-LTS, 2015 WL 9294164 (D. Mass. Dec. 21, 2015) ...... 24, 44

*Santiago v. O'Brien*,
    628 F.3d 30 (1st Cir. 2010).......................................................... 39-40

*Sedco Int'l, S.A. v. Cory*,
   683 F.2d 1201 (8th Cir. 1982) ...............................................................21

*Swidler & Berlin v. United States*,
   524 U.S. 399 (1998) ............................................... 12, 38-40, 43

*United States ex rel. Blackwell v. Franzen*,
   688 F.2d 496 (7th Cir. 1982) .............................................................41

*United States v. 15 Bosworth St.*,
   236 F.3d 50 (1st Cir. 2001) ...............................................................35

*United States v. Abu-Jihaad*,
   630 F.3d 102 (2d Cir. 2010) ..............................................................40

*United States v. Acevedo-Hernández*,
   898 F.3d 150 (1st Cir. 2018) ...................................................... 40, 44

*United States v. Bankman-Fried*,
   No. 22-cr-0673, 2024 WL 477043 (S.D.N.Y. Feb. 7, 2024) ..............21

*United States v. Bilzerian*,
   926 F.2d 1285 (2d Cir. 1991) ............................................................23

*United States v. Brown*,
   634 F.2d 819 (5th Cir. 1981) .............................................................40

*United States v. Centeno-González*,
   989 F.3d 36 (1st Cir. 2021) ...............................................................39

*United States v. Facteau*,
   89 F.4th 1 (1st Cir. 2023) ..................................................................26

*United States v. George*,
   886 F.3d 31 (1st Cir. 2018) ...............................................................42

*United States v. Gorski*,
   36 F. Supp. 3d 256 (D. Mass. 2014) ........................................... 20-21

*United States v. Gorski*,
   807 F.3d 451 (1st Cir. 2015) .................................................. 1, 12, 16-17

*United States v. Greenspan*,
    923 F.3d 138 (3d Cir. 2019) ................................................................20

*United States v. Herrell*,
    No. 6:21-CR-00013-GFVT, 2024 WL 2954408 (E.D. Ky. June 12, 2024) ........41

*United States v. Householder*,
    137 F.4th 454 (6th Cir. 2025) ..............................................................21

*United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen &
    Helpers of Am., AFL-CIO*,
    119 F.3d 210 (2d Cir. 1997) ................................................................13

*United States v. Joseph*,
    26 F.4th 528 (1st Cir. 2022) ................................................................17

*United States v. Liberty*,
    No. 19-cr-00030, 2020 WL 6386388 (D. Me. Oct. 30, 2020) ..................... 20-22

*United States v. Lindstrom*,
    698 F.2d 1154 (11th Cir. 1983) ............................................................40

*United States v. Mass. Inst. of Tech.*,
    129 F.3d 681 (1st Cir. 1997) ................................................................14

*United States v. Mercado*,
    412 F.3d 243 (1st Cir. 2005) ................................................................26

*United States v. Mix*,
    No. CRIM.A. 12-171, 2012 WL 2420016 (E.D. La. June 26, 2012) ........... 28, 41

*United States v. Moore*,
    No. 5:21-CR-23, 2024 WL 4993388 (W.D. Va. Dec. 5, 2024) ................... 28, 41

*United States v. Nixon*,
    418 U.S. 683 (1974) ..........................................................................40

*United States v. Pabon*,
    819 F.3d 26 (1st Cir. 2016) ................................................................26

*United States v. Perez*,
    299 F.3d 1 (1st Cir. 2002) ..................................................................40

*United States v. Rabb*,
    5 F.4th 95 (1st Cir. 2021) ............................................................... 26-27

*United States v. Rainone*,
    32 F.3d 1203 (7th Cir. 1994) ................................................................41

*United States v. Reeder*,
    170 F.3d 93 (1st Cir. 1999)...................................................................13

*United States v. Renzi*,
    No. CR08-212 TUC DCB BPV, 2010 WL 582100 (D. Ariz. Feb. 18, 2010).....41

*United States v. Scheffer*,
    523 U.S. 303 (1998)............................................................................40

*United States v. Taylor*,
    284 F.3d 95 (1st Cir. 2002)..................................................................12

*United States v. W.R. Grace*,
    439 F. Supp. 2d 1125 (D. Mont. 2006).......................................... 38, 41

*United States v. Weinstein*,
    No. 24-128, 2025 U.S. Dist. LEXIS 22905 (D.N.J. Feb. 9, 2025).....................24

*United States v. Wenger*,
    427 F.3d 840 (10th Cir. 2005) .............................................................20

*United States v. White*,
    887 F.2d 267 (D.C. Cir. 1989)...................................................... 24-25

*United States v. Woods*,
    210 F.3d 70 (1st Cir. 2000)..................................................................19

*Valdez v. Winans*,
    738 F.2d 1087 (10th Cir. 1984) ...........................................................42

*Velsicol Chem. Corp. v. Parsons*,
    561 F.2d 671 (7th Cir. 1977) ...................................................... 30-31, 34

*Weil v. Investment/Indicators, Research and Management, Inc.*,
    647 F.2d 18 (9th Cir. 1981) .................................................................30

## STATUTES

18 U.S.C. § 3231 ..................................................................................1

42 U.S.C. § 1320a-7b(b)(2) .............................................................. 3-4

Fed. R. App. P. 3(c)(4)......................................................................18

Fed. R. Evid. 502(d)..........................................................................28

## OTHER AUTHORITIES

*Attorney-Client Privilege in the United States* § 9:6 (2024-2025 ed.) ...................44

## STATEMENT OF JURISDICTION

The district court (Talwani, J.) had subject matter jurisdiction over the case because the indictment charged the defendant, Aditya Humad, with an offense against the United States.  18 U.S.C. § 3231.  On March 7, 2025, the court ordered the disclosure of communications between Humad and outside counsel for SpineFrontier, Inc. ("SpineFrontier") over which SpineFrontier asserts the attorney-client privilege.  [D.297].[1]  SpineFrontier filed a timely notice of appeal on March 11, 2025.  [D.302].

This Court has jurisdiction over SpineFrontier's interlocutory appeal pursuant to the *Perlman* exception to the final judgment rule, as subject to the principles discussed in Section I.C.1, *infra*.  *See United States v. Gorski*, 807 F.3d 451, 459 (1st Cir. 2015) (citing *Perlman v. United States*, 247 U.S. 7 (1918)).

## STATEMENT OF THE ISSUE

1.    The district court did not abuse its discretion in entering the discovery order.

---

[1]  Citations are as follows: "[D.__]" refers to a docket entry; "[Br.__]" refers to SpineFrontier's opening brief; and "[A.__]" refers to the Appendix.

1

## STATEMENT OF THE CASE

### A.    Offense Allegations[2]

SpineFrontier, Inc. is a closely held corporation with a principal place of business in Massachusetts. [A.407]. SpineFrontier designs, manufactures, markets, and sells medical devices that surgeons can use in spinal surgeries. [A.407-08]. At all relevant times, Kingsley R. Chin was the President, Chief Executive Officer, Director, and principal owner of SpineFrontier, and Aditya Humad was its Chief Financial Officer and Vice President of Business Development. [A.407].

As officers of SpineFrontier, Chin and Humad designed a consulting program for spinal surgeons, under which the surgeons would enter "consulting agreements" with SpineFrontier—and later, another Chin-owned entity called Impartial Medical Experts, LLC (IME) that Humad operated as a vehicle for administering the SpineFrontier consulting program. [A.408, 411, 413-14]. The agreements provided on their face that SpineFrontier[3] would pay surgeons for consulting services, such as providing technical feedback on SpineFrontier's products, at hourly rates. [A.142-47, 412, 416].

---

[2] The government draws these factual allegations from the Superseding Indictment and the exhibits attached to the government's January 26, 2024 motion.

[3] No one has suggested any relevant distinction between SpineFrontier and IME for purposes of the issues on appeal, so for the sake of simplicity, the government refers to the two companies collectively throughout this brief as "SpineFrontier."

To encourage surgeon participation, SpineFrontier obtained an opinion letter from an outside law firm, Strong & Hanni P.C. ("Strong & Hanni"), to the effect that SpineFrontier's form consulting contracts complied with the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b)(2).  [A.140, 153].  The letter stated that Strong & Hanni's opinion was premised on the assumption that any compensation paid would be "for bona fide services by the Consultant consistent with fair market value, arms'-length transactions" and "the compensation agreed upon and actually paid to the Consultant by IME will not be determined in a manner that takes into account the volume or value or any referrals or business."  [A.140].  Humad shared this opinion letter with SpineFrontier's prospective surgeon-consultants.  [A.139].

In reality, SpineFrontier's consulting program was designed to funnel bribes to surgeons to induce and reward their use of SpineFrontier products.  [A.412]. Overall, Chin, Humad, and their co-conspirators paid and directed the payment of hundreds of thousands of dollars to surgeons based on claims the surgeons had spent hundreds of hours evaluating products, discussing industry trends, and educating medical residents, which they had not done.  [A.412].  Instead, Humad determined the amount SpineFrontier would pay by reviewing the number of surgeries the surgeons had performed using SpineFrontier's products and how much revenue those surgeries generated for the company.  [A.412, 414-15].

3

B.     **Relevant Procedural History**

On August 30, 2021, a federal grand jury returned an indictment charging Chin, Humad, and SpineFrontier with, *inter alia*, violations of the Anti-Kickback Statute.  [A.51-70].  The Anti-Kickback Statute applies to anyone who "knowingly and willfully offers or pays any remuneration (including any kickback, bribe, or rebate)" to induce referrals for services or items payable by a federal health care program.  42 U.S.C. § 1320a-7b(b)(2).[4]

### 1.     *The Government's Motion Regarding the Involvement-of-Counsel Defense and Waiver of the Attorney-Client Privilege*

On January 26, 2024, the government asked the district court to set a deadline for the defendants to give notice whether they intended to rely on an advice-of-counsel or involvement-of-counsel defense at trial based on Strong & Hanni's work on SpineFrontier's consulting program.[5]  The government noted the defendants had indicated they might make such arguments and argued that any such defense would trigger a waiver of the attorney-client privilege.  The government therefore requested

---

[4]  On April 1, 2025, the grand jury issued a superseding indictment charging Chin and Humad with one count of conspiracy to violate the Anti-Kickback Statute and three substantive Anti-Kickback violations, which is now the operative indictment as to Humad.  [A.407-20].  The privilege issues addressed herein are unaffected by the difference between the original and superseding indictments.

[5]  The government alternatively asked the court to find that SpineFrontier waived any privilege as to the subject matter of the Strong & Hanni opinion letter by sharing the letter with prospective surgeon-consultants.  [A.124-30].  The court rejected that request, and it is not pertinent to this appeal.  [A.294-95].

pre-trial notice and, as appropriate, disclosure of the relevant communications to avoid unnecessary disruptions at trial.  [A.130-37].

On February 16, 2024, Chin, Humad, and SpineFrontier jointly opposed the government's motion, arguing that because they could argue a lack of mens rea based on counsel being "in the room" regarding the consulting program without disclosing counsel's advice, such a defense would not trigger a privilege waiver. They also opposed any notice requirement.  [A.197-204].

On June 7, 2024, the court ruled that if the defendants used "the mere involvement of . . . counsel as a[n] inferential sword with respect to intent" (as described in their opposition filing), then fairness would require allowing the government "to probe the communications between these attorneys" and the defendants "[t]o counter such an inference."  [A.296].  The court ordered the defendants to provide notice by the date of their required pretrial disclosures whether they were going to make such a defense.  To avoid delaying the trial, the court said the government could in the meantime subpoena Strong & Hanni for defendants' communications with "Strong & Hanni [] related to the subject matter of the opinion letters," and those documents would be held under seal by the court.  [A.297-98].

### 2. Chin and Humad's Motion for Reconsideration and the Court's February 18 Order

On July 29, 2024, Chin and Humad (without SpineFrontier) moved for reconsideration.  [A.299-313].  Along with repeating their prior arguments, they

5

argued that the court could not imply a waiver based on their defense because they, as individuals, lacked the power to "waive SpineFrontier's privilege" or "force [the company] to give up that protection." [A.306-08].

On August 12, 2024, the government opposed reconsideration. The government argued that Chin and Humad's new claim that they lacked the ability to waive SpineFrontier's privilege was untenable given that the Massachusetts Secretary of State website's "Business Entity Summary" for SpineFrontier showed Chin and Humad occupying *every single officer and director position* at the company. [A.318-20 (citing A.435-36)].

On October 10, 2024, Strong & Hanni responded to the government's subpoena and the documents were placed under seal with the court. [A.351-52].

On January 21, 2025, on the government's motion, the court dismissed SpineFrontier as a defendant. [A.353-57].

On February 17, 2025, SpineFrontier (now no longer a defendant) filed a notice that it objected to "any finding of waiver of SpineFrontier's privilege as a result of actions by the remaining individual defendants" and said that, if necessary, it would seek leave to intervene to protect its privilege.[6] [A.358-59].

---

[6] A non-party may intervene in a criminal matter to protect a colorable claim of privilege. *See In re Grand Jury Subpoena (Newparent, Inc.),* 274 F.3d 563, 570 (1st Cir. 2001).

On February 18, 2025, the court partially granted and partially denied Chin and Humad's motion for reconsideration. [A.361-71]. The court clarified that there were certain arguments that would not trigger a waiver[7] but reiterated that it would find a waiver "[i]f [Chin and Humad] point out to the jury the presence of lawyers 'in the room' to draw [] an exculpatory inference . . . as to Defendants' mens rea." [A.371]. Citing the "Business Entity Summary," the court rejected the idea that Chin and Humad, SpineFrontier's "controlling officers," lacked the ability to waive SpineFrontier's privilege (the "February 18 order"). [A.368 (citing A.435-36)].

### 3.    Chin and Humad's Notices of their Intended Defenses at Trial and the Government's Response

On March 3, 2025, the date pretrial disclosures were due for Chin and Humad's joint trial scheduled to begin in two weeks [D.197], Chin and Humad filed near-simultaneous notices of their planned defenses at trial.

Humad's notice said he intended to make the involvement-of-counsel defense, and further stated that Humad "recognize[d] that the attorney-client privilege at issue belongs to SpineFrontier, which is no longer a party to this case; that as an individual

---

[7] For example, the court said the defendants were free to argue exculpatory inferences about their mens rea based on the presence of other people in the room without regard to their professions or the presence of lawyers in the room with whom they were not "asserting an attorney-client privilege." [A.365]. The court also distinguished a situation where a defendant merely mentions the presence of his lawyers in the room as a fact but does not argue to the jury that the presence of those lawyers (as lawyers) supports an exculpatory inference regarding his mens rea. [A.366].

defendant, *who had no ownership interest in or ultimate control over SpineFrontier*, he cannot waive the corporate privilege for his personal benefit; and that SpineFrontier maintains its privilege and its objection to the finding of any waiver." [A.374-75 (emphasis added)].

Chin's notice said he did not intend to make the defense. However, he then similarly recited his understanding that "the attorney-client privilege concerning SpineFrontier's communications with its lawyers belongs to SpineFrontier, which is no longer a party to this case," and "SpineFrontier has maintained its privilege and its objection to finding any waiver" [A.376-77]—a statement that served no apparent purpose in the context of Chin's notice alone, as Chin was disavowing the defense.

The following day, the government filed a "Response to Defendants' Separate, But Simultaneous Notices Concerning Reliance on the Attorney-Client Privilege." The government observed that Chin and Humad had "obviously coordinated" their positions to try to circumvent the court's February 18 order, as their notices were clearly meant to be read together to suggest the court should allow the defense (which would benefit both defendants at their joint trial) without implying a waiver because SpineFrontier was the alter ego of Chin (SpineFrontier's principal owner) whereas only Humad (who "had no ownership interest" and was Chin's subordinate) would be making the defense. [A.379-82]. The government asked the court to sever Chin and Humad's trials as a response to this

"gamesmanship" and also requested immediate production of the privileged materials for Humad's trial, as per the court's earlier orders.  [A.381].

### 4.    The Court's Ruling that Humad's Involvement-of-Counsel Defense Requires a Waiver (the "March 5 Fairness Order")

On March 5, 2025, the court issued an order confirming its earlier reasoning that, as a matter of fairness, Humad's involvement-of-counsel defense requires a waiver over any "communications between Defendant Humad and SpineFrontier's counsel" about the consulting program.  [A.387].

The court then directed SpineFrontier, "[t]o the extent [it] claims that Humad is barred from raising this defense (with the resultant waiver)" because he lacks the ability to waive SpineFrontier's privilege to "provide any authority for that position."  [A.388].  The court did not solicit SpineFrontier's views regarding the already-issued fairness order.

### 5.    The Court's Ruling that Humad Has the Ability to Waive SpineFrontier's Privilege (the "March 7 Discovery Order")

SpineFrontier responded to the court's query on March 6, 2025.  SpineFrontier stated its position that "Humad lacks the power/authority to reveal SpineFrontier's privileged information or to waive SpineFrontier's privilege," but cited only one relevant case and offered no developed argument.  [A.395-97].  *See infra* p. 30. SpineFrontier did not identify any management changes or suggest the court was

incorrect when it called Humad a "controlling officer" of the corporation in the February 18 order.

On March 7, 2025, the court issued the following order (the "March 7 discovery order"):

> The court finds no basis to bar Humad from raising [his] defense and, as previously explained [*i.e.*, in the March 5 fairness order], finds that Humad's raising of this defense waives the privilege as to his communications with Strong & Hanni PC. Accordingly, the documents produced by Strong & Hanni PC will be reviewed by the court *in camera*, and the communications between Humad and Strong & Hanni PC attorneys will be produced to the government.

[A.399-401]. The court stayed this order to permit SpineFrontier to file this interlocutory appeal. [A.401, 405].

### 6. *The Last-Minute Severance of Chin and Humad's Trials and Chin's Failed Attempt to Join this Appeal*

The court also severed and rescheduled Chin and Humad's trials, with Chin to be tried first (as his case raised no privilege issues), and Humad second, after the resolution of this appeal. [D.299].

Chin then attempted to file his own interlocutory appeal to be consolidated with this one, but the Court dismissed that appeal on jurisdictional grounds. Shortly before his solo trial was scheduled to begin, Chin pled guilty to a superseding information. [D.305, D.337, D.380; A.421-30; Appeal No. 25-1283].

Humad's trial is currently scheduled to begin on January 12, 2026. [A.431].

## SUMMARY OF ARGUMENT

The district court's determination that Humad's involvement-of-counsel defense requires a privilege waiver over Humad's communications with counsel was a correct and appropriate application of the "fairness" principles that govern waivers by implication. Accordingly, though it is unclear if the Court has jurisdiction to review that ruling, the Court may bypass the jurisdictional question and affirm the ruling on the merits.

The district court did not abuse its discretion in concluding that Humad has the ability to waive SpineFrontier's privilege, either. As SpineFrontier is a closely held corporation with Chin and Humad as its sole controlling officers, Humad's conduct in this criminal proceeding should be imputed to SpineFrontier as an implied waiver of the corporation's privilege. If, however, the Court disagrees with that determination, the Court may affirm the district court's discovery order on the alternative ground that Humad's right to present a defense supersedes SpineFrontier's privilege.

## ARGUMENT

## I.   THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN ENTERING THE DISCOVERY ORDER

SpineFrontier argues for reversal on two grounds: first, because Humad's involvement-of-counsel defense should not require a privilege waiver, which is a challenge to the district court's March 5 fairness order [Br.26-42]; and second,

11

because Humad cannot "unilaterally waive SpineFrontier's privilege" through his defense, which is a challenge to the court's March 7 discovery order. [Br.21-26]. Neither claim withstands scrutiny.

### A.    Standard of Review

For issues concerning the attorney-client privilege, the Court reviews questions of law de novo, factual findings for clear error, and discretionary judgments for abuse of discretion. *See Gorski*, 807 F.3d at 459-60.

Unpreserved claims are reviewed for plain error, which requires the appellant to show "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected [his] substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." *United States v. Taylor*, 284 F.3d 95, 100 (1st Cir. 2002) (cleaned up).

### B.    Legal Framework: The Attorney-Client Privilege

The attorney-client privilege "protects communications made in confidence by a client to his attorney," *In re Grand Jury Subpoena*, 274 F.3d at 571, and is "one of the oldest recognized privileges for confidential communications." *Swidler & Berlin v. United States*, 524 U.S. 399, 403 (1998). The policy rationale for the privilege is the idea that future protection against disclosure will "encourage[] full and free discussion" between the client and counsel, thus "better enabling the client to conform his conduct to the dictates of the law and to present legitimate claims and

12

defenses if litigation ensues." *In re Keeper of the Records (Grand Jury Subpoena Addressed to XYZ Corp*.) (hereinafter "*XYZ Corp.*"), 348 F.3d 16, 22 (1st Cir. 2003); *see Fisher v. United States,* 425 U.S. 391, 403 (1976) ("[I]f the client knows that damaging information could . . . be obtained from the attorney following disclosure . . . the client would be reluctant to confide in his lawyer and it would be difficult to obtain fully informed legal advice[.]").

"[S]ince the attorney-client privilege stands in derogation of the public's right to every man's evidence," however, "it ought to be strictly confined within the narrowest possible limits consistent with the logic of its principle." *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 119 F.3d 210, 214 (2d Cir. 1997) (cleaned up)); *accord XYZ Corp.*, 348 F.3d at 22 (stating that the privilege "comes with substantial costs and stands as an obstacle of sorts to the search for truth" so courts should apply it "only to the extent necessary to achieve its underlying goals"). The application of the attorney-client privilege in federal court is governed by federal common law. *See XYZ Corp.*, 348 F.3d at 22.

An attorney-client communication must meet several requirements to qualify for the privilege, and there are certain exceptions even where those requirements are met. *See, e.g., F.D.I.C. v. Ogden Corp.*, 202 F.3d 454, 461 (1st Cir. 2000) (joint-client exception); *United States v. Reeder*, 170 F.3d 93, 106 (1st Cir. 1999) (crime-fraud exception).

13

Where a communication is privileged ab initio, the privilege may also be waived, and the protection lost. *See United States v. Mass. Inst. of Tech.*, 129 F.3d 681, 684 (1st Cir. 1997). Such a waiver may be explicit, or it may be implied based on conduct. *See XYZ Corp.*, 348 F.3d at 22. Implied waivers are "almost invariably premised on fairness concerns." *Id.* Courts will imply a waiver, for example, when a litigant places privileged information "at issue" in a manner that would make it "unfair to the opposing party" to "allow the privilege to protect against [its] disclosure"—or, in colloquial terms, where the litigant improperly tries to "us[e] the attorney-client privilege as both a sword and a shield." *Id.* at 23-24 ("Were the law otherwise, the client could selectively disclose fragments helpful to its cause, entomb other (unhelpful) fragments, and in that way kidnap the truth-seeking process."). "[T]he party who invokes the privilege bears the burden of establishing that privilege applies to the communications at issue and that it has not been waived." *Id.* at 22.

Where the client is a corporation, the corporation holds the privilege. *See Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348 (1985). Nevertheless, courts have long-recognized that "the administration of the attorney-client privilege in the case of corporations . . . presents special problems." *Id.* Because a corporation is an inanimate entity that "must act through [human] agents," as a practical matter, some person(s) at a corporation must have the ability to waive for the corporation. *Id.* In deciding whether a waiver has occurred, then, the court

14

must ask "which corporate actors are [thus] empowered." *Id.* With respect to explicit waivers, "the power to waive . . . rests with the corporation's management and is normally exercised by its officers and directors." *Id.* However, like individuals, corporations are also subject to implied waivers based on fairness concerns. *See XYZ Corp.*, 348 F.3d at 23-24.

## C.    The March 5 Fairness Order Was Not an Abuse of Discretion

SpineFrontier asks the Court to reverse the district court's determination, embodied in the March 5 fairness order, that Humad's involvement-of-counsel defense requires a waiver over his relevant communications with counsel. [Br.26-42]. SpineFrontier has not established the Court's jurisdiction over the March 5 fairness order and has not identified any error in the order.

### 1.    *SpineFrontier Has Not Met Its Burden of Establishing the Court's Jurisdiction Over the March 5 Fairness Order*

The appellant bears "[t]he burden of establishing [the Court's] jurisdiction" over his claims on appeal. *Green Earth Energy Photovoltaic Corp. v. KeyBank Nat'l Ass'n*, 51 F.4th 383, 390 (1st Cir. 2022) (cleaned up). This requires having a basis for appellate jurisdiction as well as properly invoking that jurisdiction through a compliant notice of appeal. *See Gonzalez v. Thaler*, 565 U.S. 134, 147 (2012) ("content requirements for notices of appeal" are jurisdictional).

SpineFrontier claims the Court's jurisdiction under the *Perlman* exception to the final judgment rule. [Br.1-2]. In most cases, a privilege-holder who wishes to

appeal a "discovery order" over allegedly privileged materials must defy the order, be held in contempt, and pursue a contempt appeal. *See Gorski*, 807 F.3d at 459. Under *Perlman*, however, a non-party privilege-holder may immediately appeal a discovery order for allegedly privileged materials if the order is "addressed to" a custodian who cannot reasonably be expected to "allow itself to be held in contempt to obtain appellate review on behalf of the privilege-holder." *Id.*

The clerk of the court (who is presently holding the material that Strong & Hanni produced under seal) was the custodian targeted by the March 7 discovery order. As the clerk cannot be expected to defy the order to permit SpineFrontier to pursue a contempt appeal, the Court clearly has jurisdiction under *Perlman* to review the March 7 discovery order, and SpineFrontier invoked that jurisdiction by designating the order in its notice of appeal. [A.405 (SpineFrontier noticing an appeal "from the Memorandum and Order entered on March 7, 2025 (Doc.#297) by the Hon. Indira Talwani")]. *See Perlman*, 247 U.S. at 9 (allowing jurisdiction over discovery order for materials held under seal by the clerk of the court).

What is not clear is whether the Court's jurisdiction over the March 7 discovery order extends to the March 5 fairness order. Based on the separation of the orders, the wording of each order, and the fact that the district court asked SpineFrontier to weigh in on only the second one, it is apparent the district court understood the two orders to be resolving independent questions: first, whether

16

Humad's defense *requires* a waiver and he thus must forgo the defense absent a waiver, which the court answered in the affirmative (the March 5 fairness order); and second, whether Humad can waive SpineFrontier's privilege and thus may make that defense, which the court also found to be true (the March 7 discovery order). [*See, e.g.*, A.401].

As noted above, *Perlman* allows non-party privilege-holders to appeal "discovery orders." *See Gorski*, 807 F.3d at 459. The March 5 fairness order is independent of the March 7 discovery order and also completely bound up in "the merits of the action" between the parties to the proceeding: the government and Humad. *United States v. Joseph*, 26 F.4th 528, 532 (1st Cir. 2022) (discussing the limits of the collateral order doctrine discussed in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546 (1949)). Applying *Perlman* jurisdiction to that order would thus be in tension with the Court's otherwise strict limitations on interlocutory appeals, and it would also create practical problems. For example, if the Court were to rely on SpineFrontier's representations about the nature of Humad's defense in deciding this appeal, could Humad be bound by those representations at his trial, even though he is not a party to the appeal?[8]

---

[8] Though the Court has previously suggested that the jurisdiction available under *Perlman* is broader than that available under the collateral order doctrine, the distinction discussed in that case was between allowing review of factual and mixed issues versus limiting review to pure issues of law and not about *which rulings* should be considered part of the appealable order. *See Ogden Corp.*, 202 F.3d at

In addition, even if the Court assumes *Perlman* jurisdiction could apply to the March 5 fairness order, there remains the question of whether SpineFrontier appropriately invoked that jurisdiction when it chose not to designate that order in its notice of appeal. A notice of appeal covers the orders designated therein and any other orders that "merge into" them for purposes of appeal, which is an issue governed by case law. Fed. R. App. P. 3(c)(4); *Gonpo v. Sonam's Stonewalls & Art, LLC*, 41 F.4th 1, 10 (1st Cir. 2022) (stating Rule 3(c)(4) does not "codify the merger principle but instead leaves its details to case law"). With respect to appeals premised on *Perlman* jurisdiction, the Fourth Circuit has said that "prior orders" will merge into the appealable "discovery order" if the orders are "inextricably intertwined." *In re Grand Jury 2021 Subpoenas*, 87 F.4th 229, 248 n.9 (4th Cir. 2023) (prior orders denying privilege-holder's motion to quash and requiring the preparation of privilege logs were "inextricably intertwined" with the appealable discovery order). As explained above, the March 5 fairness order and the March 7 discovery order are not "inextricably intertwined" in any logical sense, because whether an officer can waive the corporation's privilege (the March 7 discovery

---

460 n.3 ("[T]he *Perlman* rule arguably contains no limitation on the scope of review, while review under the collateral order doctrine arguably is limited to 'clear-cut legal error' as opposed to challenges that seek to test either factual determinations or the application of a settled legal rule to the particular facts[.]").

order) is distinct from whether his defense by its nature requires a waiver (the March 5 fairness order).[9]

As the jurisdictional question concerning the March 5 fairness order does not involve the Court's Article III jurisdiction, however, the Court may bypass the question if it determines the merits of the claim in the government's favor, as discussed in Section I.C.2, *infra*.  *See Caribbean Mgmt. Grp., Inc. v. Erikon LLC*, 966 F.3d 35, 41 (1st Cir. 2020) ("When an appeal raises an enigmatic question of statutory jurisdiction and the merits are easily resolved in favor of the party who would benefit from a finding that jurisdiction is wanting, we may bypass the jurisdictional inquiry and proceed directly to the merits"); *United States v. Woods*, 210 F.3d 70, 74 (1st Cir. 2000) ("[B]ecause the merits of the appeal favor the appellee, we will bypass the [Rule 4] jurisdictional issue.").

### 2.    *The March 5 Fairness Order Correctly Found that Humad's Involvement-of-Counsel Defense Requires a Waiver*

The district court's ruling that Humad's involvement-of-counsel defense requires a waiver was an appropriate application of the "fairness" principles that

---

[9] SpineFrontier has not claimed that Humad's alleged inability to waive is due to the precise nature of his defense—*e.g.*, that if he were instead to make a "traditional" advice-of-counsel defense, *then* he could waive SpineFrontier's privilege.  Its position is that Humad cannot waive SpineFrontier's privilege through his conduct in this case, period.

govern all waivers by implication. These principles are not limited to the traditional advice-of-counsel defense.

A traditional advice-of-counsel defense is just a "species of good-faith defense"—*i.e.*, a defense that tends to "negate[] the mental state required for the crime"—that must meet certain requirements. *United States v. Greenspan*, 923 F.3d 138, 146-47 (3d Cir. 2019) ("Because [the advice-of-counsel defense] goes to whether the defendant had the requisite mental state, it is not an affirmative defense."); *see United States v. Wenger*, 427 F.3d 840, 853 (10th Cir. 2005) (advice-of-counsel defense requires "(1) a request for advice of counsel on the legality of a proposed action, (2) full disclosure of the relevant facts to counsel, (3) receipt of advice from counsel that the action to be taken will be legal, and (4) reliance in good faith on counsel's advice"). It is well-settled that making an advice-of-counsel defense impliedly waives the privilege over all communications concerning the "subject matter" of counsel's advice. *XYZ Corp.*, 348 F.3d at 24.

Some courts have said that a defendant may assert a different good-faith defense based on the "involvement of counsel" without meeting the requirements of the advice-of-counsel defense.[10] However, as with any other situation where a

---

[10] *See, e.g.*, *United States v. Gorski*, 36 F. Supp. 3d 256, 268 (D. Mass. 2014) (accepting a "broader, somewhat more colloquial, meaning" of "advice of counsel" where "a criminal defendant seeks to introduce evidence, or argue to the jury, that the advice or involvement of a lawyer tended to negate his mens rea, even if the defendant could not establish all the elements of the formal defense"); *United States*

litigant places counsel's role at issue, the court must then make a fact-specific determination whether fairness to the opposing party requires implying a waiver. *See XYZ Corp.*, 348 F.3d at 23-24 (stating that the advice-of-counsel waiver rule is just "[a] paradigmatic example of th[e] phenomenon" of implying a waiver and noting that fairness may require implying a waiver not only when a litigant "asserts reliance on an attorney's advice" but also when he "place[s] the attorney-client relationship itself at issue" (citing *Sedco Int'l, S.A. v. Cory*, 683 F.2d 1201, 1206 (8th Cir. 1982)).

Indeed, the very district court case SpineFrontier highlights as having recognized an involvement-of-counsel defense like Humad's [Br.27-30] also recognized that the defense may require a waiver. *See Gorski*, 36 F. Supp. 3d at 268

---

*v. Liberty*, No. 19-cr-00030, 2020 WL 6386388, at *3 (D. Me. Oct. 30, 2020) (similar).

Other courts, however, have deemed this lesser cousin of the advice-of-counsel defense inherently misleading. *See United States v. Householder*, 137 F.4th 454, 488 (6th Cir. 2025) ("[T]he court was right to be concerned about a pseudo-advice of counsel defense. Borges never made a complete disclosure of all pertinent facts to the lawyers, nor did he act in good-faith reliance on the advice of counsel. Thus, any attempt to introduce evidence about the attorney meetings would only confuse the jury."); *United States v. Bankman-Fried*, No. 22-cr-0673, 2024 WL 477043, at *3 (S.D.N.Y. Feb. 7, 2024) ("[T]he involvement of attorneys in matters only tangentially related to charged conduct. . . would have threatened to confuse the jury by suggesting, incorrectly, that the involvement of attorneys in those collateral activities . . . provided a reasonable basis for defendant believing [his conduct] was permissible.").

This Court has yet to address the issue, but it need not do so to resolve this appeal. The government assumes for present purposes that Humad's asserted defense is permissible.

("The touchstone is fairness; a defendant cannot put his attorney's advice *or involvement* at issue in a case and then claim a privilege as to the details of that advice *or involvement*." (emphasis added)).  Other district courts that have accepted this type of defense have said the same thing.  *See Liberty*, 2020 WL 6386388, at *3 ("Defendants suggest that, at trial, they can thread the needle by making an involvement-of-counsel argument without disclosing any confidential communications and thereby avoid an implied waiver. . . . In the Court's view, Defendants propose to use the mere involvement of specialized securities counsel as a[n] inferential sword with respect to intent.  To counter such an inference, the Government is entitled to probe the communications between these attorneys and Defendants."); *S.E.C. v. Mapp*, No. 4:16-CV-00246, 2017 WL 8780604, at *2 (E.D. Tex. Dec. 4, 2017) (declining to allow a defendant "all the essential benefits of an inference that [his] actions were consistent with the advice he received from counsel, while at the same time prohibiting the SEC from combatting that inference").

Here, the court engaged in a case-specific "sifting of the facts and [] careful weighing of the circumstances," *XYZ Corp.*, 348 F.3d at 23, and made the reasonable determination that it would be unfair to allow Humad to argue an exculpatory inference about his mens rea from the fact of counsel being "in the room" regarding the consulting program unless the government could probe what Humad and counsel *said to each other in that proverbial room* regarding the consulting program.

22

[A.365-67].  This was not an abuse of discretion.  As the court had explained earlier

in denying the defendants' motion for reconsideration:

> Defendants again argue that the presence of counsel could be
> exculpatory . . .  because "lay people [on a jury] would naturally expect
> that a lawyer would be more likely to spot potential legal misconduct
> and may be more inclined to stop it or report it."    But . . . without
> permitting cross-examination about the communications between the
> Defendants and those lawyers,  there is a very real risk that the jury will
> make exactly the inference Defendants request, when the true facts may
> be that the lawyers' failure to spot potential misconduct was the result
> of inaccurate or incomplete information provided by the
> Defendants . . . or [] some similar reason.

[A.365-66].  In other words, the court decided that Humad would not be permitted

to "us[e] an assertion of fact to influence the decisionmaker while denying [his]

adversary access to privileged material potentially capable of rebutting the

assertion."  *In re Cnty. of Erie*, 546 F.3d 222, 229 (2d Cir. 2008), or, as this Court

has put it, to "selectively disclose fragments helpful to [his] cause" (here, the fact of

counsel's presence) while "entomb[ing]" what may be "unhelpful" (here, what he

and counsel said to each other).  *XYZ Corp.*, 348 F.3d at 23-24; *see also Bittaker v.

Woodford*, 331 F.3d 715, 719 (9th Cir. 2003) ("In practical terms, [waiver by

implication] means that parties in litigation may not abuse the privilege by asserting

claims the opposing party cannot adequately dispute unless it has access to the

privileged materials.").  *Cf. United States v. Bilzerian*, 926 F.2d 1285, 1293 (2d Cir.

1991) ("Courts cannot sanction the use of the privilege to prevent effective cross-

examination on matters reasonably related to those introduced in direct examination.").

SpineFrontier's counterarguments lack force.

First, its arguments for the viability of the involvement-of-counsel defense are misdirected.  [Br.27-33].  *See United States v. Weinstein*, No. 24-128, 2025 U.S. Dist. LEXIS 22905, at *26 (D.N.J. Feb. 9, 2025) (discussing counsel-based arguments short of an advice-of-counsel defense but not the question of waiver); *In re Customs & Tax Admin. of the Kingdom of Denmark (Skat) Tax Refund Litig.*, No. 18-md-2865, 2024 U.S. Dist. LEXIS 202726, at *14 (S.D.N.Y. Nov. 6, 2024) (similar); *Ap-Fonden v. GE*, No. 17-CV-8457, 2024 U.S. Dist. LEXIS 168886, at *6 (S.D.N.Y. Sep. 18, 2024) (similar).  The government has never contested the allowability of the defense in this case.  *See supra* note 10.  It has argued only that the defense should not be allowed without a waiver.

Second, the two cases SpineFrontier cites where the court found no waiver are easily distinguished.  [Br.28-30].  *S.E.C. v. Present* concerned the corporation's motion to quash an individual defendant's subpoena for privileged materials; it did not concern a dispute between the parties to the litigation about whether the defendant should be permitted to make a counsel-based defense at trial without a waiver.  *See* Civ. No. 14-14692-LTS, 2015 WL 9294164 (D. Mass. Dec. 21, 2015).  And *United States v. White* merely held that "putting the government to its proof on

the issue of his criminal intent" does not constitute a waiver.  887 F.2d 267, 270 (D.C. Cir. 1989).  Significantly, the defendant in *White* only mentioned that lawyers were present for a particular conversation; he did not argue that this fact tended to negate his mens rea.  *See id.*  Humad, on the other hand, intends to ask the jury to draw an exculpatory inference from counsel's presence precisely because a "lawyer would be more likely to spot potential legal misconduct and may be more inclined to stop it or report it."  [A.366-37, 369 (explaining that Humad could "reference attorneys in the room [without a waiver] so long as" he, like the defendant in *White*, "do[es] not seek to draw an exculpatory inference based only on the[] lawyers' presence or involvement")].  That argument is a far cry from just "putting the government to its proof" on his mens rea.

Third, SpineFrontier claims the district court "refus[ed] to acknowledge the difference between proof of the reliance on advice of counsel and drawing an inference from the presence or involvement of counsel" and therefore improperly required a "blanket waiver."  [Br.7, 33, 35].  The record belies this claim.  The court not only recognized the difference between Humad's defense and a traditional advice-of-counsel defense but also tailored the fairness order accordingly.  That is why the court did not condition the defense on a waiver over all of SpineFrontier's communications with counsel about the consulting program (the "subject matter waiver" that would have been required for an advice-of-counsel defense, *XYZ Corp.*,

348 F.3d at 24) but only on a waiver over *Humad's communications* with counsel on the subject, because Humad's defense focuses on his personal state of mind. Moreover, the fact that Humad himself does not intend to disclose what he and counsel said to each other does not undercut the court's reasoning [Br.33], as there is no rule that limits implied waivers to affirmative disclosures. *See XYZ Corp.*, 348 F.3d at 23-24 ("It is well accepted that waivers by implication can sometimes extend beyond the matter actually revealed.").

Fourth, the final section of SpineFrontier's brief offers several arguments against the fairness order that SpineFrontier never made below. [Br.35-43]. These arguments are therefore unpreserved and reviewable only for plain error. *See United States v. Facteau*, 89 F.4th 1, 27 (1st Cir. 2023) ("[A] party is not at liberty to articulate specific arguments for the first time on appeal simply because the general issue was before the district court." (cleaned up)); *United States v. Mercado*, 412 F.3d 243, 247 (1st Cir. 2005) ("[A]n objection on one ground does not preserve appellate review of a different ground[.]"). SpineFrontier's failure to address the applicable plain-error standard on appeal should be deemed a waiver. *See United States v. Pabon*, 819 F.3d 26, 33 (1st Cir. 2016) (claims waived where defendant failed to address elements of plain-error review in briefing).

Should the Court consider these new arguments, however, SpineFrontier has not even come close to showing plain error. *See United States v. Rabb*, 5 F.4th 95,

101 (1st Cir. 2021) (to be "clear or obvious," an error "must be indisputable in light of controlling law" (cleaned up)).  SpineFrontier suggests the court should have addressed its fairness concerns through, for example, a limiting instruction rather than an implied waiver.  [Br.36-38].  But the only limiting instruction that could adequately address the prejudice to the government of being unable to cross-examine Humad's defense would be an instruction to the jury to disregard the defense, and the court did offer that option in lieu of implying a waiver.  [A.366-67 (stating that if the defense is made, "then depending on the exact circumstances, the government should be able to inquire into potentially inculpatory attorney-client communications or, at a minimum, the court will instruct the jury that no exculpatory inference may be drawn from the fact that those individuals were lawyers.")].

SpineFrontier also cites several cases about a defendant's Sixth Amendment right to present a defense, arguing that they show the district court erred in not taking a "more careful, measured approach[]" to deciding the scope of the required disclosure, such as waiting for the "actual evidence at trial."  [Br.20, 39-41]. SpineFrontier is conflating two different paths to disclosure and arguing about the wrong one.  As explained below, where, as here, the district court finds a waiver, the disclosure is controlled by the doctrines that govern waivers.  *See infra* Section I.D.1. The defendant's Sixth Amendment right, as discussed in the cited cases, becomes relevant only if the district court does *not* find a waiver and thus those doctrines are

inapplicable.  *See infra* Section I.D.2.  This is why, as SpineFrontier notes, none of the cases it cites in this section "talk about the implied waiver of the corporate privilege" [Br.41]—because those cases were specifically premised on non-waiver.[11]

SpineFrontier additionally complains that the court failed to consider the option of a non-waiver order, which is an order that states that any disclosure in the instant case does not constitute a "waiver," thus minimizing the prejudice to the privilege-holder from such a disclosure.  [Br.41-42].  *See* Fed. R. Evid. 502(d) ("A federal court may order that the privilege or protection is not waived by disclosure connected with the litigation pending before the court—in which event the disclosure is also not a waiver in any other federal or state proceeding.").  But SpineFrontier never asked the court for such an order nor indicated it would be satisfied with one.  The court did not plainly err in failing to grant a form of relief SpineFrontier declined to seek.

---

[11]  Though the cases would become pertinent if the Court were to reject the district court's waiver determination and thus reach the question of whether a defendant's Sixth Amendment right can supersede a third-party's privilege, as discussed in Section I.D.2, *infra*, none of the cases provide that a court must wait until trial to decide that issue, either.  [Br.39-42].  The non-waiver order in *United States v. Mix*, No. CRIM.A. 12-171, 2012 WL 2420016, at *3 (E.D. La. June 26, 2012), expressly allowed for pre-trial disclosure of the privileged information to counsel for the government, and the court in *United States v. Moore*, No. 5:21-CR-23, 2024 WL 4993388, at *5 (W.D. Va. Dec. 5, 2024), indicated that it would review the contested documents *in camera* and decide the issue before trial.  [Br.41-42].

In sum, none of SpineFrontier's new arguments establishes any reversible error in the court's fairness ruling either.  It should therefore be upheld.

### D.    The March 7 Discovery Order Was Not an Abuse of Discretion

As noted above, the district court entered the March 7 discovery order based on a determination that Humad, as a controlling officer of SpineFrontier, has the ability to waive SpineFrontier's privilege.  That conclusion was correct, and the Court should affirm the order on that basis.  If, however, the Court finds otherwise, it may affirm the order on the alternative ground that Humad's right to present a defense supersedes SpineFrontier's privilege.

#### 1.    The March 7 Discovery Order Correctly Found that Humad, as a Controlling Officer, Has the Ability to Waive SpineFrontier's Privilege

This Court has yet to decide when the conduct of a corporate officer—such as the officer's choice to make a particular defense—may be deemed an implied waiver of privilege by the corporation.  *Cf. XYZ Corp.*, 348 F.3d at 23 (noting that the Court has "yet to develop" much jurisprudence on the subject of "implied waivers").

Other circuits, however, have held that "a corporation may impliedly waive its privilege through the [conduct] of one of its officers" even if the corporation *qua* corporation has expressly asserted the privilege.  *In Re Grand Jury Proc.*, 219 F.3d 175, 186, 189 (2d Cir. 2000) (discussing when a waiver should be implied where the "corporation [] has asserted its privilege[ and] has not deliberately disclosed . . . any

29

privileged material" but its "officer" has engaged in conduct that, if imputed to the corporation, would constitute a waiver); *Velsicol Chem. Corp. v. Parsons*, 561 F.2d 671, 675 (7th Cir. 1977) (finding over corporation's objection that in-house counsel's grand jury testimony waived corporation's privilege); *Weil v. Investment/Indicators, Research and Management, Inc.,* 647 F.2d 18, 23-25 (9th Cir. 1981) (assuming that officer's deposition testimony waived corporation's privilege). *Cf. Moskowitz v. Lopp*, 128 F.R.D. 624, 638 (E.D. Pa. 1989) ("Although in theory the privilege belongs to the corporation, fairness dictates that it be waived where a corporate officer asserts the reliance on counsel defense.  Plaintiffs cannot be stonewalled by the simultaneous assertion of the defense and the privilege.").

The Second Circuit's opinion in *In re Grand Jury*—which was the only relevant case SpineFrontier cited to the district court [A.396]—is instructive.  In that case, the corporation, which was under investigation by the government, had explicitly asserted its attorney-client privilege.  *See* 219 F.3d at 185.  Nevertheless, when called to testify before the grand jury, its chief executive officer discussed counsel's advice, purportedly "in contravention of the corporation's instructions," and the government claimed waiver.  *Id.*  The Second Circuit held that an officer's waiver conduct may be imputed to the corporation as an implied waiver of the corporation's privilege, but that it depends on whether such imputation would be "fair[]" under the circumstances.  *Id.* at 186, 189 (stating that trial courts must

30

"carefully weigh the circumstances surrounding the [officer's conduct] in deciding whether, in fairness, that [conduct] affected waiver of [the corporation's] privilege").

The court then identified several factors that bear on the fairness question: the officer's role at the corporation, *id.* at 185; *see Velsicol*, 561 F.2d at 674 ("Despite the protestations of Velsicol that [the officer] lacked authority to waive [], we are not persuaded his authority was so limited."); whether the officer's conduct is purposeful or inadvertent, *In re Grand Jury*, 219 F.3d at 187-88; whether he is in the proceeding in his corporate or individual capacity, *id.* at 189; whether there is evidence the officer has let his personal interests override his "fidelity to the corporation," *id.* at 185; and the potential for prejudice to the government if a waiver is not implied, *id.* at 188-90.

Notably, *In re Grand Jury* made clear this multi-factor test is premised on the assumption that the officer and corporation are acting as separate parties with independent interests, because that separation is all that distinguishes the situation from the ordinary case where a single litigant is trying to use the privilege as both a sword and a shield. *See* 219 F.3d at 184, 186-87 (assuming the officer was acting against the corporation's instructions as that would mean the corporation "did not *itself* take any affirmative steps to inject privileged materials into the litigation," unlike the typical sword/shield case). If the separation is illusory and the facts instead show the officer and corporation are using the corporate form for the very

31

purpose of prejudicing the government, then the case becomes indistinguishable from any other sword/shield case, and fairness requires implying a waiver. *See id.* at 187-89 (stating that if the officer's waiver conduct was not against instructions but instead "a deliberate attempt *on the part of the corporation to exculpate itself*," then that would "constitute[] [the corporation's own] use of the attorney's advice as a sword") (emphasis added)). *Cf. XYZ Corp.*, 348 F.3d at 24 (implied waivers exist to "disable litigants from using the attorney-client privilege as both a sword and a shield").

Under the foregoing principles, the imputation analysis in this case was straightforward. As the district court observed, SpineFrontier is a closely held corporation in which just two people hold all the officer and director positions: Chin and Humad.[12] [A.368]. Thus, in contrast to the situation in *In re Grand Jury*, where the Second Circuit noted that the corporation could not be deemed the officer's "alter ego" because it was "publicly held" and had "a board of directors, numerous shareholders, and a large number of employees," 219 F.3d at 185, in terms of decision-making, Chin and Humad effectively *are* SpineFrontier, and SpineFrontier is them. [A.368]. *See Weintraub*, 471 U.S. at 348 (power to waive the corporation's privilege rests with management).

---

[12] The information available to the government also shows that Chin owns more than 98% of SpineFrontier, making him the only shareholder of note. [D.320 at 4].

This alter-ego determination simultaneously establishes that SpineFrontier and its officers cannot rationally be treated as separate parties pursuing independent interests *and* resolves every factor in the *In re Grand Jury* multi-factor test in favor of imputation. The officers' roles in the corporation, the purposeful nature of the counsel-based defense, and the obvious risk of prejudice to the government all clearly support imputation. *See In re Grand Jury*, 219 F.3d at 185, 187-90. And where, as here, the corporation and its officers have an identity of interest, there is no possibility of the officers letting their self-interest "override [their] fidelity to the corporation," and it should make no difference whether the officers are in the proceeding in their individual rather than their corporate capacities. *Id.* at 185, 189.

Though Chin and Humad tried to alter this calculus by having Chin file his notice (nominally) disavowing the involvement-of-counsel defense, that notice did not change any material facts because it did not reflect any new conflict between Chin and Humad's interests. Rather, as the government pointed out, because each notice was clearly one-half of a joint effort by the defendants to get around the court's February 18 order, the notices instead confirmed that Chin and Humad's interests were *aligned*, just as they had been when both defendants were suggesting they would make the counsel-based defense. [A.379-82 ("Each Defendant is reliant on the other to achieve their improper ends of evading the Court's ruling on waiver surrounding the presence of counsel. Moreover, their choices are no coincidence;

33

each is dependent on the other agreeing to this *exact* strategy to succeed.")]. Accordingly, at the time of the February 18 order and at the time of the March 7 discovery order, it was apparent that Chin and Humad were trying to "use the corporate form" of their alter ego, SpineFrontier, for the very purpose of prejudicing the government through a sword/shield maneuver, so fairness required imputation, and SpineFrontier's privilege claim was "no basis to bar Humad from raising [a] defense" that required a privilege waiver. [A.368, 401].

SpineFrontier's challenges to the court's reasoning are unpersuasive.

First, SpineFrontier claims the court erred in finding as a factual matter, based solely on the Massachusetts Secretary of State website's "Business Entity Summary," that Humad is a "controlling officer" of SpineFrontier (a position that ordinarily would convey sufficient authority to waive). [Br.22-23]. But SpineFrontier never claimed to the district court, much less provided evidence to show, that the "Business Entity Summary" is incorrect or that Humad is *not* a "controlling officer"—despite being on notice from the February 18 order that the court was relying on those facts. SpineFrontier similarly never bothered to provide the court with any "bylaws or operating agreements" that it now complains the court erred in failing to consider. *Cf. Velsicol*, 561 F.2d at 675 ("Velsicol has never produced any corporate resolution or written document purporting to formalize its purported limited waiver of the privilege with regard to its own lawyers or outside

34

counsel."). SpineFrontier bore the burden of establishing non-waiver, not the other way around. *See XYZ Corp.*, 348 F.3d at 22. Any dearth of information in the record about SpineFrontier's inner workings (information that was peculiarly within SpineFrontier's control, but SpineFrontier chose not to provide) thus supports affirmance, not reversal. *See United States v. 15 Bosworth St.*, 236 F.3d 50, 55 (1st Cir. 2001) ("[I]t is a bedrock rule that when there is insufficient evidence on a particular issue, that issue must be resolved against the party who bears the burden of proof.").[13]

Second, SpineFrontier claims it "makes no sense" to say Humad can waive for SpineFrontier because "the company has already spoken for itself through its counsel." [Br.23-24]. That was exactly the argument the corporation made, and the Second Circuit rejected, in *In re Grand Jury*. The corporation argued there that an officer's conduct cannot waive the corporation's privilege where the corporation itself has expressly asserted the privilege, but the court rejected such a per se rule as overbroad and incompatible with the "fairness" principles underlying the doctrine of implied waiver. *See* 219 F.3d at 184 ("[That] per se rule would likely fail to

---

[13]    Although SpineFrontier's brief quotes the proposition that only a corporation's "current management" can waive the privilege [Br.22 n.5], SpineFrontier has never indicated that Humad has left SpineFrontier or its related companies.

anticipate circumstances where disclosures by a corporate agent [] would, in fairness, require a finding of waiver by the corporation.").

SpineFrontier cites some cases concerning the fact pattern where the officer seeks to assert the privilege over the corporation's waiver, in which the Court has held that the corporation's decision controls over the officer's. [Br.23-25 (arguing that officers are not "independent actors" because "they owe fiduciary duties to the corporation" over their own interests)]. *See In re Grand Jury Proc.*, 469 F.3d 24, 26 (1st Cir. 2006) (officer can assert the corporation's privilege only when acting in his "corporate capacity" and not his individual capacity); *In re Grand Jury Subpoena*, 274 F.3d at 573 ("[W]e hold that a corporation may unilaterally waive the attorney-client privilege with respect to any communications made by a corporate officer in his corporate capacity[.]"). Those cases are not germane because (a) they involved explicit waivers rather than implied waivers,[14] and (b) allowing a corporate waiver over an officer's assertion (unlike the mirror-image situation SpineFrontier is

---

[14] Implied waivers are fundamentally different from explicit waivers. Explicit waivers are tied more closely to corporate law principles, whereas implied waivers are driven by fairness principles. *Compare Weintraub*, 471 U.S. at 348-49 (noting that when it comes to explicit waivers, "the managers, of course, must exercise the privilege in a manner consistent with their fiduciary duty to act in the best interests of the corporation and not of themselves as individuals"), *with In re Grand Jury*, 219 F.3d at 184-85 (distinguishing explicit waivers and noting that the officer's breach of his "fidelity" to the corporation may be a factor in deciding whether an implied waiver should be imputed to the corporation, but not dispositive).

advocating for here) poses no risk of unfairness to the opposing party, because where the waiver prevails, no information is being hidden.

Third, SpineFrontier's claim that Humad's defense "would serve only his own interests, not SpineFrontier's corporate interests" and that their positions are "incompatible" [Br.24-26] runs directly contrary to the district court's determination regarding their identity of interest. *See supra* pp. 32-34. That determination is underscored by certain aspects of this case that would be hard to explain if SpineFrontier and Humad were truly separate parties pursuing independent interests, such as (a) Humad's statement of SpineFrontier's position regarding the privilege in his March 3 notice, though SpineFrontier as an intervenor presumably could have spoken for itself [A.375]; (b) the fact that Humad has never suggested his constitutional right to present a defense could supersede SpineFrontier's privilege [A.307], *see infra* Section I.D.2; (c) SpineFrontier's failure to ask the district court for a non-waiver order, despite its awareness that such a mechanism would have allowed for disclosure in this case with minimal prejudice to SpineFrontier, thereby obviating the need for this appeal [Br.41-42]; and (d) SpineFrontier's argument on appeal that the district court should have resolved its concerns about unfairness "without finding a waiver of SpineFrontier's privilege [] *or* limiting Humad's ability to present his defense," even though the latter point would seem to be outside SpineFrontier's interest as a mere privilege-holder. [Br.38 (emphasis added)].

37

Fourth, the cases SpineFrontier cites about "the sword and shield [being] wielded by different parties" [Br.25-26] are also off-point due to the court's finding of a lack of separation between Humad and SpineFrontier. Those cases simply make the point the Second Circuit made in *In re Grand Jury*, 219 F.3d at 186-87, that the sword/shield analogy is inapt "where . . . separate parties *pursuing their own interests* take incompatible positions resulting in the same problem," because "the need to prohibit tactical behavior is absent." *United States v. W.R. Grace*, 439 F. Supp. 2d 1125, 1144 (D. Mont. 2006) (emphasis added). What the district court saw happening in this case, by contrast, was exactly the type of non-independent, "tactical behavior" that the sword/shield analogy was created to describe.

### 2. *Should the Court Disagree with the Above, It May Affirm the Order on the Alternative Ground that Humad's Right to Present a Defense Supersedes SpineFrontier's Privilege*

If, on the other hand, the Court determines the district court abused its discretion in finding an identity of interest between SpineFrontier and Humad, then the fact pattern in this case instead reflects a conflict between Humad's interest, on the one hand, and SpineFrontier's attorney-client privilege, on the other. [*Cf.* Br.39-42]. That would then implicate the question the Supreme Court left open in *Swidler & Berlin* whether a criminal defendant's constitutional right to present a defense can overcome a third party's privilege claim.

In *Swidler & Berlin*, the Supreme Court held that the attorney-client privilege survives the client's death even if the government seeks the information for a criminal investigation, and observed that "[b]alancing *ex post* the importance of the information against client interests" is problematic because it "introduces substantial uncertainty into the privilege's application," which, in turn, undermines its effectiveness in encouraging candid communication with counsel. 524 U.S. at 407, 409. The Court stated, however, that it would leave for another day the question whether "exceptional circumstances implicating a criminal defendant's constitutional rights might warrant breaching the privilege" where it applies and has not been waived. *Id.* at 409 n.3 ("We do not, however, need to reach this issue, since such exceptional circumstances clearly are not presented here."). *Cf. Newton v. Kemna*, 354 F.3d 776, 781 (8th Cir. 2004) (stating that *Swidler & Berlin* "expressly left open the question of whether a criminal defendant's constitutional rights might overcome the attorney-client privilege"); *Murdoch v. Castro*, 609 F.3d 983, 995 (9th Cir. 2010) (en banc) (similar).

"[T]he Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense," *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (cleaned up), but that right is "subject to reasonable restrictions," such as the rules of evidence and evidentiary privileges. *United States v. Centeno-González*, 989 F.3d 36, 53 (1st Cir. 2021) (cleaned up); *Santiago v. O'Brien*, 628 F.3d 30, 34 (1st Cir.

2010) ("The Constitution ultimately demands a *fair* opportunity to present a defense, and it is generally fair to force a defendant to comply with established rules of procedure and evidence[.]").  Evidentiary restrictions may be deemed unreasonable (and thus forced to yield to the defendant's constitutional right) where they are "arbitrary or disproportionate to the purposes they are designed to serve," *United States v. Acevedo-Hernández*, 898 F.3d 150, 169 (1st Cir. 2018) (cleaned up), and their application "significantly undermine[s] fundamental elements of the defendant's defense." *United States v. Scheffer*, 523 U.S. 303, 315 (1998).

Courts have applied this "reasonable restriction[]" test to multiple common-law evidentiary privileges, such as the marital privilege, *United States v. Brown*, 634 F.2d 819, 824 n.2 (5th Cir. 1981); the presidential privilege, *United States v. Nixon*, 418 U.S. 683 (1974); the psychotherapist-patient privilege, *United States v. Lindstrom*, 698 F.2d 1154, 1167 (11th Cir. 1983); the state secrets privilege, *United States v. Abu-Jihaad*, 630 F.3d 102, 141 (2d Cir. 2010); and the informant privilege, *United States v. Perez*, 299 F.3d 1, 3-4 (1st Cir. 2002).  The question *Swidler & Berlin* identified but declined to resolve is whether the test also applies to the attorney-client privilege, or if, instead, that privilege is absolute.[15]

---

[15]  A witness's privilege against self-incrimination, for example, which arises from the Constitution rather than from the common law, is considered inviolate and not subject to balancing.  *See Acevedo-Hernández*, 898 F.3d at 169 (stating that "a witness may invoke the Fifth Amendment if testifying might incriminate him on

To the extent the Court views this case as pitting Humad's right to present a defense against SpineFrontier's incompatible privilege interest, the government urges the Court to hold that the attorney-client privilege—like other common law privileges—is subject to the "reasonable restriction[]" test, as several other circuits have indicated (though without deciding the issue).[16] *See United States v. Rainone,* 32 F.3d 1203, 1206 (7th Cir. 1994) ("Even the attorney-client privilege, [] hallowed as it is, yet not found in the Constitution, might have to yield in a particular case if the right of confrontation, whether in its aspect as the right of cross-examination or in some other aspect, would be violated by enforcing the privilege."); *United States ex rel. Blackwell v. Franzen,* 688 F.2d 496, 501 (7th Cir. 1982) (similar); *Murdoch v. Castro,* 365 F.3d 699, 706 (9th Cir. 2004) ("[W]ithout the [privileged] letter, we are unable to determine in the first instance whether, in this case, the attorney-client privilege must fall before the right of petitioner to seek out the truth in the process of defending himself." (cleaned up)), *vacated and decided en banc on different*

---

direct or cross-examination" regardless of "a defendant's Sixth Amendment interests in presenting that testimony" (cleaned up)).

[16] Multiple district courts that have confronted the issue have held that the balancing test applies. *See United States v. Herrell,* No. 6:21-CR-00013-GFVT, 2024 WL 2954408, at *4 (E.D. Ky. June 12, 2024) ("[T]his Court finds that the attorney client privilege may be pierced if a criminal defendant's interest in his Sixth Amendment rights outweighs the privilege-holder's interest in maintaining the privilege."); *accord Moore,* 2024 WL 4993388; *Mix,* 2012 WL 2420016; *United States v. Renzi,* No. CR08-212 TUC DCB BPV, 2010 WL 582100 (D. Ariz. Feb. 18, 2010); *W.R. Grace,* 439 F. Supp. 2d at 1142.

*grounds*, 609 F.3d 983 (9th Cir. 2010). *Cf. Valdez v. Winans*, 738 F.2d 1087, 1089 (10th Cir. 1984) (noting that "the Sixth Amendment *usually* has been forced to yield when a testimonial privilege is asserted" and agreeing on habeas review with state court's decision that the attorney-client privilege should not yield *in that case* (emphasis added)).[17]

Moreover, as the critical facts (discussed below) are undisputed, the government would further urge the Court to find that, as applied in this case, SpineFrontier's privilege is not a "reasonable restriction[]" on Humad's right to present a defense and thus must yield. *See United States v. George*, 886 F.3d 31, 39 (1st Cir. 2018) ("[The Court is] at liberty to affirm a district court's judgment on any ground made manifest by the record, whether or not that particular ground was raised below.").

The court has made clear that Humad may present his counsel-based defense only if the government has access to his communications with corporate counsel. At the same time, where the privilege is being asserted by a corporation against its own officer, the rationale for the privilege is at its lowest ebb. The purpose of the

---

[17] The Sixth Circuit has said the attorney-client privilege cannot be pierced for a civil defendant but has not spoken on the issue for a criminal defendant. *See Ross v. City of Memphis,* 423 F.3d 596, 603-04 (6th Cir. 2005) (rejecting the argument that City's attorney-client privilege should be balanced against municipal official's ability to make advice-of-counsel defense because it would render the City's privilege "intolerably uncertain" if it were "dependent on *ex post* litigation choices made by its employees").

privilege is to "encourag[e]" clients to engage in "full and free discussion[s]" with counsel.  *XYZ Corp.*, 348 F.3d at 22.  Because corporations can seek and receive counsel only through their agents, though, *see Weintraub*, 471 U.S. at 348, when it comes to corporate clients, this requires encouraging corporate *officers* to consult with counsel.  *Swidler & Berlin* expressed skepticism of *ex post* balancing tests as regards the privilege on the theory that any "uncertainty" in the secrecy provided by the privilege would discourage clients from consulting counsel, thus undercutting the whole point of the privilege.  524 U.S. at 407, 409.  As a matter of logic, however, a corporate privilege that is strong but can be pierced if the corporate officer needs disclosure to protect himself from criminal liability would not discourage officers from consulting with corporate counsel; on the contrary, such a privilege would provide an even greater incentive toward consultation than an absolute privilege.  This fact pattern thus presents the less common situation where *Swidler & Berlin*'s concern about *ex post* balancing is misplaced.

It is for this reason that a leading privilege treatise has said it would be "perverse" to allow a corporation "to use the privilege to conceal communications that could establish the innocence of the officers who spoke to counsel on the corporation's behalf":

> The corporation should not be permitted to benefit from the officer's actions . . .  and then stand in the way of the officer's ability to establish h[is] innocence when personal charges result from that conduct.  The rationale of the corporate attorney-client privilege is, at best, strained

in this context because the directors, officers, and employees who must be encouraged to communicate with counsel are not the ones who are protected by the privilege, and the corporate client that is protected cannot respond to the privilege's encouragement because it is a legal fiction.

Paul R. Rice, *Attorney-Client Privilege in the United States* § 9:6 (2024-2025 ed.) (available on Westlaw at "ACPRIV-FED § 9:6"). *Cf. Present*, 2015 WL 9294164, at *3 (observing the inherent tension "arising from legal rules that encourage corporate officials to seek legal advice about their actions on behalf of the corporation, and protect those communications from disclosure, but, as here, prevent the corporate official from defending himself personally based (possibly) on the very advice he received when the corporation and the official differ on whether to waive the privilege").

The facts here being such that even the rationale for the privilege favors disclosure, the Court may reasonably find that the privilege, as applied, is "arbitrary or disproportionate to the purpose[]" it is "designed to serve" and should yield to Humad's asserted defense. *Acevedo-Hernández*, 898 F.3d at 169; *see XYZ Corp.*, 348 F.3d at 22 ("[C]ourts must take care to apply [the attorney-client privilege] only to the extent necessary to achieve its underlying goals."). Any prejudice to SpineFrontier from disclosure could be minimized through the entry of a non-waiver order, *see supra* p. 28, which the company could seek on remand.

## **CONCLUSION**

For the foregoing reasons, the government respectfully requests affirmance.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

By:    /s/ *Karen L. Eisenstadt*
Karen L. Eisenstadt
Assistant U.S. Attorney

45

**CERTIFICATE OF COMPLIANCE WITH**
**Rule 32(a)**

**Certificate of Compliance with Type-Volume Limit,**
**Typeface Requirements, and Type-Style Requirements**

1.      This brief complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because this brief contains 10,871 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Times New Roman 14 point, in Microsoft Word version 2019.

　　　　　　　　　　　　　　　 /s/ *Karen L. Eisenstadt*
　　　　　　　　　　　　　　　Karen L. Eisenstadt
　　　　　　　　　　　　　　　Assistant U.S. Attorney

　　　　　　　　　　　　　　　Dated:  August 8, 2025

**CERTIFICATE OF SERVICE**

I, Karen L. Eisenstadt, Assistant U.S. Attorney, hereby certify that on August 8, 2025, I electronically served a copy of the foregoing document on the following registered participant of the CM/ECF system:

Robert L. Peabody
Husch Blackwell LLP
One Congress Street, Suite 3102
Boston, MA 02108p

/s/ *Karen L. Eisenstadt*
Karen L. Eisenstadt
Assistant U.S. Attorney