No. 25-1251

_____

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

_____

UNITED STATES,
*Appellee,*

v.

SPINEFRONTIER, INC.,
*Interested Party-Appellant.*

ADITYA HUMAD,
*Defendant.*

_____

On Appeal from the United States District Court
for the District of Massachusetts (Talwani, J.)

_____

**REPLY OF INTERESTED PARTY-APPELLANT**

_____

Robert L. Peabody (#45090)
Husch Blackwell LLP
One Congress Street, Suite 3102
Boston, MA  02108
(617) 733-1376
robert.peabody@huschblackwell.com

*Counsel for SpineFrontier, Inc.*

# TABLE OF CONTENTS

Table of Authorities.......................................................................ii

Introduction.................................................................................ii

Argument......................................................................................2

I.     This Court has jurisdiction. ............................................................2

II.    Humad's role as a corporate officer does not authorize him to waive SpineFrontier's privilege over the company's objection and for his own personal benefit. ...................................................................12

III.   Humad's defense, which does not involve the disclosure of SpineFrontier's confidential legal communications with its counsel, does not impliedly waive SpineFrontier's privilege. .....................19

IV.    Fairness to the government does not require finding an implied waiver of SpineFrontier's privilege over all communications between SpineFrontier's counsel and Humad.............................28

V.     This Court should reject the government's misguided suggestion to hold, as a constitutional matter of first impression, that Humad's right to present his defense supersedes SpineFrontier's privilege. ...................................................................................30

Conclusion .................................................................................33

Certificate of Compliance....................................................34

Certificate of Service ..........................................................35

i

# TABLE OF AUTHORITIES

## Cases

*Bittaker v. Woodford,*
    331 F.3d 715 (9th Cir. 2003) ........................................................... 30

*Camreta v. Greene,*
    563 U.S. 692 (2011) ...................................................................... 31

*Gonpo v. Sonam's Stonewalls & Art, LLC,*
    41 F.4th 1 (1st Cir. 2022) ......................................................... 10, 12

*In re Grand Jury 2021 Subpoenas,*
    87 F.4th 229 (4th Cir. 2023) ......................................................... 8, 9

*In re Grand Jury Proceedings,*
    219 F.3d 175 (2d Cir. 2000) .......................................... 15, 16, 17, 24

*In re Grand Jury Proceedings,*
    469 F.3d 24 (1st Cir. 2006) ........................................................ 12, 14

*In re Lott,*
    424 F.3d 446 (6th Cir. 2005) ........................................................... 30

*James v. Norfolk Southern Railway Co.,*
    2025 U.S. App. LEXIS 18426 (6th Cir. July 22, 2025) ................. 11

*Limone v. Condon,*
    372 F.3d 39 (1st Cir. 2004) ............................................................... 9

*Lyng v. Northwest Indian Cemetery Protective Association,*
    485 U.S. 439 (1988) ...................................................................... 31

*Osborne v. Belton,*
    131 F.4th 262 (5th Cir. 2025) ........................................................ 10

*Puerto Rico Ports Authority v. Barge Katy-B,*
      427 F.3d 93 (1st Cir. 2005) ............................................................. 9

*Savoy v. Richard A. Carrier Trucking,*
      178 F.R.D. 346 (D. Mass. 1998) ................................................... 23

*S.E.C. v. Present,*
      2015 U.S. Dist. LEXIS 170245 (D. Mass. Dec. 21, 2015) ........ 25, 26

*S.E.C. v. Present,*
      2017 U.S. Dist. LEXIS 120351 (D. Mass. July 31, 2017) ........ 25, 26

*Sedco International, S.A. v. Cory,*
      683 F.2d 1201 (8th Cir. 1982) ...................................................... 22

*Swidler v. Berlin,*
      524 U.S. 399, 403 (1998) .............................................................. 31

*Swint v. Chambers County Commission,*
      514 U.S. 35 (1995) ..................................................................... 9, 10

*Tasby v. United States,*
      504 F.2d 332 (8th Cir. 1974) ........................................................ 22

*United States v. Gorski,*
      36 F. Supp. 3d 256 (D. Mass. 2014) ........................................ 20, 24

*United States v. Joseph,*
      26 F.4th 528 (1st Cir. 2022) .......................................................... 12

*United States v. W.R. Grace,*
      439 F. Supp. 2d 1125 (D. Mont. 2006) .......................................... 32

*United States v. White,*
      887 F.2d 267 (D.C. Cir. 1989).................................................. 27, 28

*Velsicol Chemical Corp. v. Parsons,*
      561 F.2d 671 (7th Cir. 1977) .................................................. 16, 17

*Victim Rights Law Center v. Rosenfelt*,
    988 F.3d 556 (1st Cir. 2021) ........................................................... 31

*XYZ Corp. v. United States*,
    348 F.3d 16 (1st Cir. 2003) .................................................... *passim*

*Zabin v. Picciotto*,
    73 Mass. App. Ct. 141 (2008) ........................................................ 22

## **<u>Rules</u>**

Fed. R. App. P. 3 ...................................................................................... 10

## INTRODUCTION

Interested Party-Appellant SpineFrontier, Inc., a medical device company, has an attorney-client privilege that protects its confidential legal communications with corporate counsel, including Strong & Hanni PC, the law firm which advised SpineFrontier about the legality of its consulting program and provided opinion letters that its consulting contracts complied with the Anti-Kickback Statute ("AKS"). At the same time, Defendant Aditya Humad, CFO of SpineFrontier, has a constitutional right to defend himself against the pending criminal charges that he willfully violated the AKS by paying illegal bribes, which were allegedly disguised as consulting payments, to induce surgeon-consultants to use SpineFrontier's products. At trial, Humad intends to introduce evidence that SpineFrontier's attorneys were actively involved in the consulting program and to ask the jury to draw an exculpatory inference about his *mens rea* from the presence of corporate counsel.

Humad's personal defense, which does not depend on his disclosure of any advice or communications between SpineFrontier and its counsel, should not impliedly waive the company's attorney-client privilege. Fairness to the government does not dictate that extraordinary and

unprecedented result. Indeed, Humad lacks the authority to waive SpineFrontier's privilege over the company's objection and for his own personal benefit, and he has made clear that he does not seek to trigger any waiver by presenting a formal "advice of counsel" defense.

Thus, the District Court erred in ruling Humad's "presence of counsel" defense necessarily waives SpineFrontier's privilege and in ordering the disclosure to the government of privileged communications between SpineFrontier's counsel and Humad. This Court should vacate that order so the prosecution of Humad can proceed to a fair trial. It certainly should not accept the government's suggestion to affirm the District Court's order by deciding, as a constitutional issue of first impression, that Humad's right to present his defense (which no party to this appeal disputes) empowers him to trump SpineFrontier's privilege.

## ARGUMENT

### I.    This Court has jurisdiction.

All agree that this Court has jurisdiction over SpineFrontier's appeal from the District Court's March 7, 2025 Order. *See* A399-401, A405; *see also* GB16 ("the Court clearly has jurisdiction"). Nevertheless, the government muses about whether "the Court's jurisdiction over the

March 7 discovery order extends to the March 5 fairness order." GB16 (claiming jurisdiction "is not clear"). It does, and the government's half-hearted attempt to cast doubt over this Court's authority fails.

The government tries to distinguish what happened on March 5 from what happened two days later on March 7. It even gives those orders different names ("fairness order" and "discovery order"), which the District Court never used. But the record speaks for itself, and it confirms this Court's appellate jurisdiction over the legal issues that underpin the various rulings that culminated with the March 7, 2025 Order.

The privilege issue first arose on January 26, 2024, when the government moved for a pre-trial finding that SpineFrontier, which was then a defendant in the criminal case, had impliedly waived its attorney-client privilege by sharing with surgeon consultants (and their attorneys) opinion letters from Strong & Hanni about the legality of SpineFrontier's consulting program. A119. SpineFrontier, Chin, and Humad all opposed that motion, A186, and on June 7, 2024, the District Court denied it, ruling the extrajudicial disclosure of opinion letters did not waive the company's privilege. A292 ("June 7, 2024 Order").

The issue then resurfaced repeatedly: on July 29, 2024, Defendants moved for reconsideration of one aspect of the District Court's June 7, 2024 Order, A299; on August 12, 2024, the government opposed reconsideration, A314, and on February 18, 2025, the District Court issued another order, clarifying its prior one. A361 ("February 18, 2025 Order"). While the reconsideration motion was pending, the government issued a trial subpoena to Strong & Hanni, A334, and the law firm produced under seal to the Clerk its privileged communications with SpineFrontier, A351.

The privilege issue neared its climax on March 3, 2025. With trial then scheduled to start in about two weeks, and pursuant to the June 7, 2024 and February 18, 2025 Orders, Chin and Humad filed their required notices about their anticipated defenses. A374, A376. The government responded on March 4, 2025, accusing Chin and Humad of "a thinly-veiled strategic attempt to disrupt the trial by taking irreconcilable positions," and it asked the District Court to sever the trials. A379-81. That led to a flurry of activity over the following days.

Later that same day, the District Court ordered Humad to "promptly clarify whether he contends his communications with counsel

4

for SpineFrontier, Inc. are protected by the attorney-client privilege."

A383. Humad responded: "his confidential communications, as a

corporate officer of SpineFrontier, Inc., with counsel for SpineFrontier,

Inc., are protected by SpineFrontier, Inc.'s attorney-client privilege."

A385. He also confirmed, again, that for his anticipated defense, he did

"not intend to disclose any of his confidential communications with

SpineFrontier's counsel." *Id.*

On the following day, March 5, 2025, the District Court issued a

tentative ruling by electronic order, stating:

> As this court has previously held, "[i]f Defendants
> point out to the jury the presence of lawyers 'in the
> room' to draw [ ] an exculpatory inference then,
> depending on the circumstances, either the jury
> will be instructed that no exculpatory inference
> may be drawn as to the Defendants' mens rea from
> the fact that those individuals were lawyers, or the
> attorney-client privilege will be deemed waived."
> Mem. & Order at 10-11 [247]. Accordingly, the
> court intends to allow inquiry at Humad's trial
> into communications between Defendant Humad
> and SpineFrontier's counsel and, following in
> camera review, to provide the United States with
> documents produced to the court by Strong &
> Hanni PC that constitute communications
> between Defendant Humad and counsel.

A387 (quoting Feb. 18, 2025 Order).

Then, on March 7, 2025, after hearing from Chin and Humad about severance, A391, A393, and receiving a further notice from SpineFrontier about its privilege, A395, the District Court made its final ruling, A399.

In a Memorandum and Order, the District Court recited the procedural history of the privilege issue, starting with the government's unsuccessful motion for a waiver finding, A399, and continuing with the government's subpoena to Strong & Hanni, the law firm's production, and the District Court's June 7, 2024 and February 18, 2025 Orders.

The District Court then recounted what had occurred over the previous few days:

> On review of these filings [*i.e.*, submissions on March 3 and 4], the court advised the parties that it intended to allow inquiry at Humad's trial into communications between Humad and SpineFrontier's counsel and that, following *in camera* review, the court would provide the United States with documents produced by Strong & Hanni PC that constitute communications between Defendant Humad and counsel. *See* Elec. Order [Doc. No. 290]. The court also provided notice to SpineFrontier that "[t]o the extent that SpineFrontier claims that Humad is barred from raising this defense (with the resultant waiver), it shall . . . provide any authority for that position." *Id.*

A401 (noting that SpineFrontier filed its response on March 6).

Finally, the District Court issued its order:

> *The court finds* no basis to bar Humad from raising this defense and, as previously stated [*i.e.*, in its June 7, 2024, February 18, 2025, and March 5, 2025 Orders], *finds* that Humad's raising of this defense *waives* the privilege as to his communications with Strong & Hanni PC. Accordingly, the documents produced by Strong & Hanni PC *will be reviewed* by the court *in camera*, and the communications between Humad and Strong & Hanni PC *will be produced* to the government.

A401 (emphases added).

Understanding that SpineFrontier "sought to preserve its objections" and to take "an immediate interlocutory appeal," the District Court stayed its order "to accommodate review of *the privilege issue*." A401 (emphasis added). The District Court did not limit its stay or its broad reference to "the privilege issue" to the March 7, 2025 Order. The government did not oppose the stay or suggest an interlocutory appeal must be limited to only specific aspects of "the privilege issue."

As the District Court's final ruling makes clear, all of these events— and the District Court's various rulings along the way—were closely related parts of an integrated whole: the March 5, 2025 Order followed and quoted from the February 18, 2025 Order, and in turn, the March 7,

2025 Order followed and quoted from both of the earlier orders. Moreover, the District Court used tentative language in its interim Electronic Order on March 5, 2025 Order (stating "the court intends . . ." and ordering further submissions), but definitive language in final Memorandum and Order on March 7, 2025 ("The court finds"; documents "will be reviewed by the court"; and communications "will be produced to the government").

This tightly knitted procedural history parallels the multiple discovery orders at issue in *In re Grand Jury 2021 Subpoenas*, 87 F.4th 229 (4th Cir. 2023), on which the government mistakenly relies. GB18. In that case, the Fourth Circuit confirmed, "the *Perlman* doctrine remains crucial to the vindication of third-party rights," and for that reason, "retain[ed] jurisdiction" over the non-parties' challenges to interlocutory rulings on privilege issues. *Id.* at 248. In their statement of appellate jurisdiction, the non-parties referenced only "the district court's May 31, 2022, order compelling production, and not . . . prior orders denying [the parties'] motions to quash and mandating preparation of privilege logs." *Id.* at 248 n.9. Seizing on that procedural detail, the government argued the appeals court could "only review the order compelling disclosure" and nothing else. The Fourth Circuit rejected that

8

cramped view of appellate authority: "Although Appellants expressly appealed only the May 31 order, it cannot reasonably be said that the prior orders are not inextricably intertwined with that disclosure order." *Id.* The same is true here about the District Court's orders on "the privilege issue." A401.

Meanwhile, this case contrasts sharply with classic "pendant jurisdiction" decisions. *Compare Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35 (1995) (allowing interlocutory appeal for officers from denial of qualified immunity but not for commission from denial of summary judgment); *P.R. Ports Auth. v. Barge Katy-B*, 427 F.3d 93 (1st Cir. 2005) (allowing interlocutory appeal from order vacating *in rem* arrest of barge by PRPA but not order awarding attorney's fees as sanction on PRPA, which was "ancillary to an ancillary issue"); and *Limone v. Condon*, 372 F.3d 39 (1st Cir. 2004) (allowing interlocutory appeal from denial of qualified immunity but not denial of "favorable termination defense," which was "unrelated issue" and "cannot be fairly described as intertwined, let alone inextricably intertwined"). Here, the District Court's orders were all integrated into the final ruling, so this Court need not invoke its "pendant jurisdiction." Regardless, this case plainly passes

the *Swint* test, because the orders concerning Humad's defense and its implications for SpineFrontier's privilege were "inextricably intertwined." *Swint*, 514 U.S. at 51.

Finally, the government's attempt to nit-pick at SpineFrontier's notice of appeal fails to raise any serious doubt about this Court's jurisdiction. GB18-19. In its notice, SpineFrontier cited the March 7, 2025 Order, because it was the final order on the long-running privilege dispute. A405. That notice sufficed to capture "the privilege issue," as the District Court described it. A401.

The government's argument about *Gonpo v. Sonam's Stonewalls & Art, LLC*, 41 F.4th 1 (1st Cir. 2022), focuses on the wrong subpart of Fed. R. App. P. 3 (subsection (c)(4) rather than (c)(6)) and misconstrues this Court's decision. GB18. As amended in 2021, Rule 3(c)(6) provides:

> An appellant may designate only part of a judgment or appealable order by *expressly stating that the notice is so limited*. Without such an express statement, specific designations do not limit the scope of the notice of appeal.

Fed. R. App. P. 3(c)(6) (emphasis added); *see Osborne v. Belton*, 131 F.4th 262, 267 (5th Cir. 2025) (discussing amended rule and explaining it "intimates that the default rule is that related orders are within the scope

of the notice of appeal"); *James v. Norfolk S. Ry. Co.*, No. 24-3275, 2025 U.S. App. LEXIS 18426, *16-17 (6th Cir. July 22, 2025) (explaining "absent an express statement, the specific designations of [three] orders should not limit the scope of the notice of appeal"). Here, SpineFrontier did not "expressly stat[e]" that it is interlocutory appeal was "limited" to the March 7, 2025 Order to the exclusion of all other pre-trial orders concerning the same privilege issue.

Indeed, *Gonpo* flatly rejected the erroneous argument that the government makes to challenge SpineFrontier's notice.

> Applying the newly minted Rule 3(c)(6), we conclude Lama's notice of appeal – specifying both the final judgment and some interlocutory orders – does not prohibit him from challenging other interlocutory orders not specifically enumerated in the notice of appeal. Had he wished to "so limit" his notice, Lama would have been required to state expressly "that the notice of appeal was [so] limited." . . . Yet nothing in Lama's notice reflects an "express statement" limiting the notice of appeal to these orders[.]

*Id.* (citations omitted). So too for SpineFrontier's notice. Thus, this Court has appellate jurisdiction to review the District Court's orders concerning Humad's implied waiver of SpineFrontier's attorney-client privilege.[1]

---

[1] The government's citation to *United States v. Joseph*, 26 F.4th 528 (1st Cir. 2022), is perplexing. *Joseph* was an interlocutory appeal about

II. **Humad's role as a corporate officer does not authorize him to waive SpineFrontier's privilege over the company's objection and for his own personal benefit.**

The government incorrectly argues SpineFrontier failed to prove Humad cannot waive the company's attorney-client privilege. GB34-35. That contention ignores the record, which is replete with evidence that Humad cannot unilaterally choose, for his own benefit, to waive SpineFrontier's privilege and to disclose the company's confidential legal communications with its counsel. *Cf. In re Grand Jury Proceedings*, 469 F.3d 24, 25 (1st Cir. 2006) (holding corporate officer acting in his individual capacity lacks authority to assert company's privilege)

SpineFrontier repeatedly told the District Court that as a corporate officer, Humad lacks the authority to waive the company's privilege. A396 ("SpineFrontier's position is that . . . Humad lacks the power/authority to reveal SpineFrontier's privileged information or to waive SpineFrontier's privilege."); *see also* A358 ("SpineFrontier maintains its objection to any finding of waiver of SpineFrontier's privilege as a result of actions by the remaining defendants [*i.e.*, Chin

---

judicial immunity. It did not involve privilege issues or the *Perlman* exception, which the government concedes applies here. GB1, 16.

and Humad] . . .”). Humad similarly told the District Court that he had no such authority. A375 (“Mr. Humad recognizes that the attorney-client privilege at issue belongs to SpineFrontier . . . [and] that as an individual defendant, who had no ownership interest in or ultimate control over SpineFrontier, he cannot waive the privilege for his own benefit.”). And Chin, who owned SpineFrontier and outranked Humad as a corporate officer, told the District Court that he did seek any waiver. A376-77. These consistent representations by all the involved parties— SpineFrontier, Chin, and Humad—in their filings to the District Court constitute compelling evidence, and the government cannot simply disregard them.

Despite this clear evidence, the government argues a “Business Entity Summary,” an online corporate filing which lists Chin and Humad as SpineFrontier’s corporate officers, establishes Humad can, in fact, unilaterally waive the company’s privilege, even over the company’s objection. That contention is remarkable given that, as the government concedes, “this Court has yet to decide when the conduct of a corporate officer . . . may be deemed an implied waiver of privilege by the corporation.” GB29 (citing *XYZ Corp. v. United States*, 348 F.3d 16, 23

(1st Cir. 2003)). SpineFrontier's Summary merely lists Humad as an officer, not the only officer or the most senior one. And there is no dispute that Chin, the CEO, owned almost all of equity in SpineFrontier, while Humad owned none. Given these facts, neither the Summary nor Humad's status as CFO endows him with the corporate authority to waive SpineFrontier's privilege over the company's objection.

The government also contends Humad can waive SpineFrontier's privilege for his own benefit, because according to the government, his interests and the company's are the same. *See* GB37-38 (asserting SpineFrontier, Chin, and Humad all share an "identity of interests"). Legally, that argument makes no sense, given how the government has opted to proceed in this case. *See In re Grand Jury Proceedings*, 469 F.3d at 25 (holding it would "invite an intolerable conflict" to permit an officer to decide whether to assert or waive privilege because "[t]he interests of the corporation and the interests of the individual corporate officer frequently diverge where, as here, both are under investigation").

The government dismissed all charges against SpineFrontier. A353. It then dismissed all the AKS charges against Chin as part of a plea agreement that it reached with him. A425. At this point, Humad is

the only defendant in the criminal case, and neither SpineFrontier nor Chin have any legal "interest" in the outcome of his case. Humad's defense to the charges against him are plainly not "a deliberate attempt on the part of [SpineFrontier] to exculpate itself." *In re Grand Jury Proceedings*, 219 F.3d 175, 185 (2d Cir. 2000).[2]

Factually, the government is also incorrect that SpineFrontier, Chin, and Humad are all the same person (or entity). The evidence does not show Humad was the alter ego of SpineFrontier; indeed, it refutes that incorrect claim. Chin served as the CEO and owned almost all of the equity, while Humad was the CFO and never owned any equity. As the visionary spine surgeon, Chin founded, owned, and led the company, which developed, marketed, and sold innovative products for spine surgery. Humad, who has a business degree and is not an MD, focused on finance and administration and, ultimately, answered to Chin.

Cases like *Velsicol Chemical Corp. v. Parsons*, 561 F.2d 671 (7th Cir. 1977), on which the government mistakenly relies, GB31-34, are not to the contrary. *See In re Grand Jury Proceeding*, 219 F.3d at 186 ("While

---

[2] As the criminal case unfolded, the government also reached separate civil settlements with SpineFrontier, Chin, and Humad, each of whom has its or his own financial and other obligations.

these cases [*e.g.*, *Velsicol*] may illustrate that in some circumstances, a corporation can impliedly waive its privilege through the testimony of one of its officers, they hardly stand for the proposition that this must always be the case."). Velsicol faced a criminal investigation into fraudulent submissions to the EPA about pesticides. Its in-house counsel, Mitchell, who was also a target, received a grand jury subpoena. Against the advice of outside counsel, who jointly represented the company, Mitchell, and other executives, he testified and disclosed confidential legal communications between Velsicol and its prior counsel, who had advised on the submissions. The Seventh Circuit ruled Mitchell's testimony waived Velsicol's privilege. 561 F.2d at 674-76. The court emphasized Mitchell was in-house counsel, had legal training, was actively involved in the company's defense, understood the implications of his deliberate choice to testify about privileged communications, and made disclosures to exculpate the company and himself. *See id.*

None of those things about Mitchell can be said about Humad, who was SpineFrontier's CFO, has no legal training, does not seek to disclose any confidential legal communications between SpineFrontier and its counsel, and is only trying to exculpate himself, not the company (which

no longer faces any charges). Further, despite its objections, Velsicol had never "formally notified the government of its intention to preserve the privilege." *In re Grand Jury Proceedings*, 219 F.3d at 186. SpineFrontier, in contrast, has provided formal notice that it seeks to maintain its privilege and objects to any waiver. A358, A395.

Contrary to the government's claim, the District Court never made any "determination" that SpineFrontier, Chin, and Humad shared an "identity of interests" or were each alter egos of the others. GB37; *see also* GB38 (referencing "the court's finding of a lack of separation between Humad and SpineFrontier"); GB38 (asserting "the district court saw . . . 'tactical behavior'" by SpineFrontier, Chin and Humad). In support of that erroneous claim about the record below, the government primarily cites its own submission to the District Court. G33 (citing A379-82).

For its part, the District Court initially raised the question, without ruling, "whether the controlling officers of SpineFrontier, Defendants Chin and Humad, can waive that privilege." A368. Later, it ordered Humad to "clarify whether he contends his communications with counsel for SpineFrontier, Inc., are protected by attorney-client privilege." A383. Finally, it ruled Humad's defense would impliedly waive SpineFrontier's

privilege, notwithstanding the company's objection. *See* A399-401; *see also* A387. At no time, however, did the District Court ever find "Chin and Humad effectively *are* SpineFrontier, and SpineFrontier is them," as the government erroneously asserts. GB32 (emphasis in original).

The government has concocted a conspiracy theory that, after all charges against SpineFrontier were dismissed, the company, along with Chin and Humad, orchestrated inconsistent positions about the company's privilege to frustrate the criminal prosecution of Chin and Humad and to manufacture the legal issue now before this Court. That fiction has no foundation; the only evidence the government cites in support is its own equally baseless filing in the District Court. GB8-9 (citing A378-82), GB33-35 (same). It is also nonsensical, because after Chin and Humad filed their respective notices, the government got exactly what it wanted. The District Court allowed the government's request to sever the defendants and set prompt trial dates.

Finally, the government's unsupported accusation is irrelevant. Any disputed facts about why Humad and Chin, who had different relationships to and played different roles for SpineFrontier, may have wanted to present different defenses have no bearing on the pertinent

legal questions: (1) whether Humad can waive SpineFrontier's privilege over the company's objection and for his own personal benefit and (2) whether his presence-of-counsel defense does so automatically. Humad's motivation, which the appellate record does not reveal, makes no difference. If his corporate authority is limited or his trial defense does not implicate any waiver, that is the end of the matter.

## III.  Humad's defense, which does not involve the disclosure of SpineFrontier's confidential legal communications with its counsel, does not impliedly waive SpineFrontier's privilege.

All agree that (1) a formal advice-of-counsel defense typically waives the attorney-client privilege as to communications concerning the relevant advice, *see, e.g.*, *XYZ Corp.*, 348 F.3d at 24 (explaining that, "when [an advice of counsel] defense is raised, the pleader puts the nature of its lawyer's advice squarely in issue, and thus, communications embodying the subject matter of the advice typically lose protection"); (2) Humad does not plan to present such a defense at trial, *see* A374 ("Mr. Humad does not intend to disclose any specific advice from counsel for SpineFrontier or to make argument about such legal advice."); A385 ("Mr. Humad does not intend to disclose any of his confidential communication's with SpineFrontier, Inc.'s counsel"); and (3) instead,

Humad only intends to rely on the presence or involvement of SpineFrontier's counsel to "negate his *mens rea*"—that is, to rebut the government's allegation that he willfully violated the AKS or conspired with Chin to do so, *United States v. Gorski*, 36 F. Supp. 3d 256, 268 (D. Mass. 2014) (recognizing "a criminal defendant [may] seek[] to introduce evidence, or argue to the jury, that the advice or involvement of a lawyer tended to negate his *mens rea*, even if the defendant could not establish all the elements of the formal defense").

Thus, Humad's anticipated "defense" does not impliedly waive SpineFrontier's privilege, because it does not depend on Humad's disclosure of the company's confidential legal communications. *Cf. XYZ Corp.*, 348 F.3d at 24 ("once a litigant chooses to put *privileged communications* at issue, only the revelation of all related exchanges will allow the truth-seeking process to function unimpeded") (emphasis added). On that critical issue, the government incorrectly argues whenever "a litigant places counsel's role at issue," fairness requires an implied waiver of the attorney-client privilege. GB21. In support, it cites *XYZ Corp.*, which says no such thing.

In *XYZ Corp.*, this Court vacated a disclosure order, holding that the corporate appellant had not impliedly waived its attorney-client privilege. *See id.* at 29. The government argued XYZ's counsel forfeited the company's privilege when he advocated XYZ's legal position during a conference call with XYZ's co-venturer. *See id.* at 23. This Court concluded the call itself (which included the co-venturer) was not privileged, so the discussion did not waive privilege "beyond that which was actually disclosed." *Id.* at 23. That decision does not help the government here, because it does not address the key question whether a corporate officer can waive a company's attorney-client privilege over the company's objection.

Moreover, the government mischaracterizes this Court decision in *XYZ*. In its parenthetical, the government incorrectly contends this Court broadly held a party impliedly waives privilege if it "place[s] the attorney-client relationship at issue." *Id.* (quoting *XYZ Corp.*, 348 F.3d at 23-24 (quoting *Sedco Int'l, S.A. v. Cory*, 683 F.2d 1201, 1206 (8th Cir. 1982))). But in *Sedco*, the Eighth Circuit did not hold that merely pointing to the presence of counsel puts the attorney-client relationship "at issue" and, thus, impliedly waives privilege. Rather the court merely said that

21

"waiver by implication" may occur "when a client testifies concerning portions of *the attorney-client communications*," *id.* (emphasis added), or "places the attorney-client relationship directly at issue." *Id.*

As an example of the latter "relationship" scenario, *Sedco* cited *Tasby v. United States*, 504 F.2d 332 (8th Cir. 1974)). That criminal case followed a § 2255 proceeding, in which the defendant "attacked the representation of his attorney, thereby putting into question the substance of [the attorney's] communications with [the defendant]." *Id.* at 336. Not surprisingly, the court held, "privilege is waived when a client attacks his attorney's competence in giving legal advice, puts in issue that advice and . . . raises the specter of ineffectiveness or incompetence." *Id.* SpineFrontier does not dispute that sensible proposition, *see, e.g.*, *Zabin v. Picciotto*, 73 Mass. App. Ct. 141, 157 (2008) (holding malpractice claim against attorney waives privilege); *Savoy v. Richard A. Carrier Trucking*, 178 F.R.D. 346, 350 (D. Mass. 1998) (same), but it has no relevance here.

No one has claimed Strong & Hanni provided incompetent advice to SpineFrontier about its consulting program or otherwise engaged in malpractice. Humad has not put at issue any specific advice from Strong

& Hanni; to the contrary, Humad has repeatedly stated he does *not* intend to disclose any confidential legal communications between Strong & Hanni and SpineFrontier. A374, A393

The cases about malpractice claims, which the government cites, do not support the erroneous argument that referring to an attorney's presence or involvement in any relevant conduct or event, without disclosing the attorney's advice, puts "the attorney-client relationship itself at issue" and, thus, necessarily triggers an implied waiver. Other cases, like *Gorski*, which the government fails to distinguish, recognize that evidence about the presence or involvement of counsel may bear on a defendant's *mens rea*, even when defendant does not (or cannot) advance a formal advice of counsel defense.

First, the government misreads *Gorski* in two respects. *Gorski* correctly recognized there is a "more basic lack-of-*mens-rea* defense," which may be supported by evidence of an attorney's presence or involvement in the defendant's alleged conduct, and a "formal advice-of-counsel-defense," which necessarily depends on the attorney's advice to the defendant. 36 F. Supp. 3d at 268. The two defenses are different, and

to the extent the District Court rejected (or minimized) that difference, it erred as a matter of law.

*Gorski* suggested that, in the "more basic" scenario, a privilege waiver *might* occur, "depend[ing] on the facts and circumstances of the case." *Id.* (citing *In re Grand Jury Proceedings*, 219 F.3d at 187-90). As illustrations, *Gorski* noted "a defendant might testify that he negligently, but not intentionally, failed to provide a complete set of facts to the lawyer, or that he received accurate advice but innocently misinterpreted it." *Id.* To state the obvious, both situations involve evidence (typically, a defendant's testimony) about confidential legal communications between an attorney and the defendant.

Here, however, Humad does *not* intend to disclose his communications with SpineFrontier's counsel about the consulting program. Nothing in *Gorski* suggests that where, as in this case, the "more basic" defense would simply ask the jury to draw an inference from the presence of counsel, not the reliance on communications with counsel, fairness still mandates a broad privilege waiver. To the contrary, *Gorski* recognized that "[n]ot every passing reference to counsel will . . . trigger a waiver of privilege." *Id.*

24

Second, the government unsuccessfully seeks to distinguish *SEC v. Present*, No. 14-cv-14692-LTS (D. Mass.). That case involved two relevant pre-trial rulings:  the first allowed a third-party's motion to quash, GB24 (citing 2015 U.S. Dist. LEXIS 170245 (D. Mass. Dec. 21, 2015)), and the second denied the government's motion in limine, SB30, 38 (citing 2017 U.S. Dist. LEXIS 120351 (D. Mass. July 31, 2017). The government focuses on the wrong one.

The court initially quashed a subpoena to F-Squared by Present, the former CEO. Present sought privileged documents to prove he followed advice from the company's counsel. But the court ruled that Present had no right to demand privileged materials and that fairness did not require disclosure, even under a protective order, which would "necessarily divest[] F-Squared from control over its privilege information and expose[] it to the SEC and, ultimately, at trial to a variety of others contrary to the fundamental purposes of the privilege." 2015 U.S. Dist. LEXIS 170245, at *9-10. Then, 18 months later, the court denied the government's motion in limine to exclude evidence or argument that "lawyers reviewed and approved F-Squared's advertising and marketing material," or "blessed . . . Present's disclosure" of certain

information, "unless Present can make out the elements of an advice of counsel defense." 2017 U.S. Dist. LEXIS 120351, at *2.

Like Humad, Present did *not* intend to advance a formal advice-of-counsel defense, but only "to present evidence that he engaged top counsel to ensure compliance with legal requirements," including the marketing materials that were supposedly misleading. *Id.* In denying the government's motion, the court held "such evidence is admissible to the extent it is relevant to whether [Present] acted in good faith and/or with due care in making the alleged misrepresentations." *Id.* at *2-3; *see id.* at *4 (ruling evidence of "lawyer's review of . . . marketing material" is "relevant to whether Defendant acted with scienter or negligence").

By discussing only the earlier ruling in *Present* and ignoring the later one, the government misses the core legal principles. In allowing F-Squared's motion to quash, the court ruled that the company had a valid privilege and that, in his own defense, Present could not waive it. In denying the government's motion to exclude Present's evidence of counsel's involvement in the challenged marketing, the court ruled, notwithstanding the valid corporate privilege, the evidence was relevant and admissible. Although it would not establish a formal advice-of-

counsel defense, the evidence might rebut the allegation that Present committed fraud with scienter and show his good faith. Similarly, evidence that SpineFrontier's attorneys were actively involved in creating and implementing the consulting program is relevant and admissible to rebut the charge that Humad willfully violated the AKS.

Finally, the government misreads *United States v. White*, 887 F.2d 267 (D.C. Cir. 1989). Although the government asserts White did "not argue" his lawyer's presence during critical conversations, concerning the alleged contract fraud, "tended to negate his mens rea," then-Judge Ginsburg's decision does not say that. Instead, the decision focuses on the important difference between evidence "that one's attorney was present" when an alleged fraud was conceived or committed, on the one hand, and "affirmative reliance on his advice that one's action is legal." *Id.* at 270.

*White* could not have been more clear: "An averment that lawyers have looked into a matter does not imply an intent to reveal the substance of a lawyer's advice." *Id.* at 271. Thus, a defendant can present evidence that his lawyer was present during or involved with an alleged fraud and ask the jury to draw exculpatory inferences from such evidence without

presenting a formal advice-of-counsel defense or, critically, waiving the attorney-client privilege.

*Gorski*, *Present*, and *White* all held that when a defendant seeks to rebut an allegation of criminal intent by pointing to the presence or involvement of counsel, but without disclosing confidential legal communications, fairness does not necessarily dictate a privilege waiver, especially where the privilege belongs to a third-party that is agnostic about the defendant's ability to defend himself. The government, like the District Court below, endorses an unprecedented categorical rule that, if a defendant so much as a mentions a "lawyer" (as opposed to disclosing communications or legal advice), a waiver is automatically required. It is not surprising that the government cannot cite any court that has adopted such a dangerous and unnecessary rule, and this Court should not be the first.

## IV. Fairness to the government does not require finding an implied waiver of SpineFrontier's privilege over all communications between SpineFrontier's counsel and Humad.

The District Court ruled that, as a matter of fairness, an implied waiver of privilege over all communications between SpineFrontier's attorneys and Humad was necessary to prevent the jury from being

confused or misled by evidence that SpineFrontier's attorneys were actively involved in the company's consulting program. That decision was erroneous, and SpineFrontier has appealed from it. In doing so, SpineFrontier has identified, as examples, other possible ways of minimizing the risk of jury confusion without sacrificing the company's privilege. *See* SB35-42.

In response, the government mistakenly contends SpineFrontier cannot make that argument, because it did not expressly request any specific alternatives to an implied waiver. GB26-28. But SpineFrontier, which objected below to any implied waiver, had no obligation to propose any "lesser included" outcome.

Rather the District Court's failure to consider (and if necessary, implement) alternative measures to better balance SpineFrontier's privilege with Humad's rights demonstrates its legal error. In ruling any evidence or argument by Humad that the presence or involvement of SpineFrontier's counsel tends to negate his *mens rea* impliedly waives the company's privilege, the District Court misapplied this Court's precedents, which recognize implied waivers should be rare and must be narrow. *See XYZ Corp.*, 348 F.3d at 23; *see also In re Lott*, 424 F.3d 446,

29

453 (6th Cir. 2005) ("Implied waivers are consistently construed narrowly."); *Bittaker v. Woodford*, 331 F.3d 715, 722 (9th Cir. 2003) (warning broad waivers "would no doubt inhibit the kind of frank attorney-client communications and vigorous investigation of all possible defenses that the attorney-client privilege [is] designed to promote").

Indeed, the District Court should not have found any implied waiver at all, given the limited scope of Humad's anticipated defense, which focuses narrowly on the presence of SpineFrontier's counsel, not the disclosure of their legal advice.

## V.    This Court should reject the government's misguided suggestion to hold, as a constitutional matter of first impression, that Humad's right to present his defense supersedes SpineFrontier's privilege.

As a fallback position, the government suggests this Court can affirm the District Court's order by holding, as a constitutional matter of first impression, that Humad's right to present his presence-of-counsel defense "supersedes" SpineFrontier's attorney-client privilege. GB38-44. To be clear, no one disputes Humad's right to present his presence-of-counsel defense at trial to rebut the government's charge that he willfully violated the AKS. The issue is the implication of that defense: whether Humad's defense impliedly waives SpineFrontier's privilege.

In proposing an alternative basis for affirming the District Court's order, the government concedes neither the Supreme Court nor this Court have ever held "a criminal defendant's constitutional right to present a defense can overcome a third-party's privilege claim." GB38 (citing *Swidler v. Berlin*, 524 U.S. 399, 403 (1998)). The question remains open, and this Court should not answer it in this case.

It is a "longstanding principle of judicial restraint" that courts should "avoid reaching constitutional questions in advance of the necessity of deciding them." *Camreta v. Greene*, 563 U.S. 692, 705 (2011) (quoting *Lyng v. N.W. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988)). Accordingly, "courts"—including this Court—"are obliged to avoid rulings on constitutional questions when non-constitutional grounds will suffice to resolve any issue." *Victim Rights Law Ctr. v. Rosenfelt*, 988 F.3d 556, 563 (1st Cir. 2021).

Those considerations apply with particular force where an issue is of considerable public importance, such as resolving a conflict between a criminal defendant's constitutional right to present his defense and another party's common-law right to protect its attorney-client privilege.

Such an issue should be decided only when necessary, in a case that squarely presents it, and with the benefit of full briefing by the parties.

Here, the government has argued Humad's constitutional rights "trump" SpineFrontier's rights as "the privilege holder." A381 (citing *United States v. W.R. Grace*, 439 F. Supp. 2d 1125, 1147 (D. Mont. 2006)). SpineFrontier never claimed that it can "limit Humad's efforts to defend himself with non-privileged facts." A396. And the District Court "f[ound] no basis to bar Humad from raising this defense." A401. Moreover, Humad has stated that he lacks the authority to waive SpineFrontier's privilege and, regardless, has no intention of waiving it. A374-75, A385.

Given that record, it would be improper for this Court to resolve a novel and significant constitutional question that the parties have not directly addressed. If accepted, the government's suggestion would only raise other difficult questions, such as whether any employee (not only a corporate officer) can impliedly waive an employer's privilege in order to present his own defense to criminal charges and whether such an individual necessarily affects a waiver by merely pointing to the presence or involvement of company counsel, even when he expressly disclaims

any intent to waive privilege and carefully avoids disclosing any confidential legal communications.

## CONCLUSION

For the foregoing reasons, Interested Party-Appellant SpineFrontier, Inc., respectfully requests that this Court vacate the District Court's March 7, 2025 Order and remand for further proceedings.

Respectfully submitted,

**SPINEFRONTIER, INC**

By its attorney,

*/s/ Robert L. Peabody*
Robert L. Peabody (#45090)
Husch Blackwell LLP
One Congress Street, Suite 3102
Boston, MA  02108
(617) 733-1376
robert.peabody@huschblackwell.com

*Counsel for Interested Party-Appellant SpineFrontier, Inc.*

Dated: September 12, 2025

**CERTIFICATE OF COMPLIANCE**

I, Robert L. Peabody, Esq., counsel for Interested Party-Appellant SpineFrontier, Inc., certify that this Brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts exempted by Fed. R. App. 32(f), it contains 6,336 words and, also, with the type-face and type-style requirements of Fed. R. App. P. 32(a)(5)-(6), because it has been prepared in a proportionally spaced type-face using 14-point Century Schoolbook in Microsoft Word 2016.

_/s/ Robert L. Peabody_
Robert L. Peabody

## CERTIFICATE OF SERVICE

I, Robert L. Peabody, counsel for Interested Party-Appellant SpineFrontier, Inc., certify that, on September 12, 2025, I caused this Reply to be served electronically through the ECF system on the registered participants as identified on the Notice of Electronic Filing.

*/s/ Robert L. Peabody*
Robert L. Peabody